IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

PERRY HOPMAN                                                                    PLAINTIFF

v.                              Case No. 4:18-cv-00074-KGB

UNION PACIFIC RAILROAD                                               DEFENDANT

## ORDER

Plaintiff Perry Hopman alleges that Union Pacific Railroad ("Union Pacific") discriminated against him due to his disability and failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. § 794, *et seq*.  Mr. Hopman asks the Court, *via* email to the opposing counsel and Court staff, to compel Union Pacific to produce certain documents. *See* Email from Kathy Butler, attached hereto as Exhibit A ("Exhibit A").  Union Pacific filed a response in opposition, and Mr. Hopman replied (Dkt. Nos. 43, 45).  To the extent discussed below, the Court grants, in part, and denies, in part, Mr. Hopman's motion (Exhibit A).

### I.      Overview

The parties have been before the Court previously on a discovery dispute.  On September 6, 2018, Mr. Hopman filed a motion to compel, which Union Pacific opposed (Dkt. Nos. 14, 15). The parties were able to resolve several of the discovery disputes while that motion to compel was under advisement, and the Court ordered Union Pacific to supplement its responses to an interrogatory, a request for admission, and a request for production (Dkt. No. 24).  As relevant here, the Court ordered Union Pacific "to produce all non-privileged, responsive information that identifies all conductors with disabilities who have been accommodated by Union Pacific from 2013 to the present and to describe the accommodation Union Pacific agreed to extend to each of

these conductors . . . ." (*Id.*, at 7).  After the Court entered its Order, Union Pacific filed a motion for reconsideration but later withdrew that motion and agreed "to produce the conductor disability documents" by February 25, 2019 (Dkt. No. 36).

According to Mr. Hopman, he served Union Pacific with a Federal Rule of Civil Procedure 30(b)(6) notice, which included 28 topics for the deposition and accompanying document requests (the "Rule 30(b)(6) Notice") (Dkt. No. 45-1).  Mr. Hopman asserts that Union Pacific did not respond to that Rule 30(b)(6) Notice until December 18, 2018 (Dkt. No. 45, at 2).  On December 18, 2018, Union Pacific sent to Mr. Hopman a letter with responses to the document requests accompanying the Rule 30(b)(6) Notice (Dkt. No. 45-2).

Mr. Hopman explains that, in regard to the document requests, in December 18, 2018, Union Pacific raised certain issues as to some requests and represented that, if Mr. Hopman did not revise his Rule 30(b)(6) Notice, Union Pacific would file a motion for protective order (Dkt. No. 45, at 2).  Mr. Hopman represents that he issued an amended Rule 30(b)(6) Notice on December 18. 2018, but only changed the date and location of the deposition; he "did not revise the substance of the topics or the documents requests." (*Id.*).  The Rule 30(b)(6) deposition proceeded as scheduled on February 5, 2019, with Union Pacific lodging no objection to the topics or document requests accompanying the Rule 30(b)(6) Notice (*Id.*).  At no point has Union Pacific filed a motion for protective order regarding the document requests accompanying the Rule 30(b)(6) Notice.

The parties continued to confer regarding outstanding discovery, and on February 20, 2019, counsel for Mr. Hopman sent a chart (the "Chart") to Union Pacific's counsel with a description of ongoing discovery disputes between the parties (Dkt. No. 43-1).  On March 7, 2019, counsel

for Union Pacific responded to the Chart by email, providing a line by line statement of Union Pacific's position regarding each item in the Chart (Dkt. No. 43-2, at 2-3).

On March 13, 2019, Mr. Hopman's counsel emailed the Court's staff with a list of ongoing discovery disputes between the parties (Exhibit A).  In that email, Mr. Hopman's counsel stated that the disputes arise out of "document requests in connection with a Rule 30(b)(6) deposition notice." (Exhibit A).  Mr. Hopman took the position that Union Pacific did not object to the document requests accompanying the Rule 30(b)(6) Notice either before or at the time of the deposition (Exhibit A).  Mr. Hopman's counsel identified six specific document requests from the Rule 30(b)(6) Notice that are at issue and described the requested documents as falling into two general categories:  (1) "accommodations sought by UP's engineer[s] and conductors" and (2) "Union Pacific's practices and experience with dogs." (Exhibit A).

Mr. Hopman's counsel also explained that, prior to the Rule 30(b)(6) deposition, Mr. Hopman learned that Paul Birchfield, an engineer with Union Pacific, "had actually utilized the services of his dog for a period of years." (Exhibit A).  According to Mr. Hopman's counsel, to date, Union Pacific has only produced two documents relating to Mr. Birchfield:  (1) Mr. Birchfield's charge filed with the Equal Employment Opportunity Commission ("EEOC") and (2) Union Pacific's position statement submitted to the EEOC in response to Mr. Birchfield's charge (*Id.*).  Furthermore, according to Mr. Hopman's counsel, Rod Doerr, Union Pacific's Director of Safety, testified "from memory" that Union Pacific investigated Mr. Birchfield's situation, and Mr. Hopman's counsel contends that any records of such an investigation fall within the document requests made in connection with the Rule 30(b)(6) Notice (Exhibit A).  Mr. Hopman also seeks documents related to job accommodations requested by engineers and conductors (*Id.*).  To date, Union Pacific has produced records for conductors but has not produced similar records for

engineers, according to Mr. Hopman (*Id.*).  Finally, Mr. Hopman asserts that the parties cannot agree on whether a document prepared by Kathleen A. Hughes, a Union Pacific employee, is subject to attorney-client privilege (*Id.*).  The Court treats the email from Mr. Hopman's counsel as a motion to compel (*Id.*).

With the Court's leave, Union Pacific filed a formal response (Dkt. No. 43).  As an initial matter, Union Pacific asserts that the current discovery dispute does not relate to the document requests that accompanied the Rule 30(b)(6) Notice (*Id.*, at 1).  Union Pacific asserts that discovery disputes before the Court arise from a document titled "Discovery Action Item Chart-1" or the Chart (*Id.*, at 2).  Union Pacific further asserts that Mr. Hopman sent the Chart to Union Pacific's counsel on February 20, 2019, and that on March 7, 2019, Union Pacific provided an informal response (*Id.*).  Union Pacific argues that Mr. Hopman has not explained the relationship between the Chart and his document requests attached to the Rule 30(b)(6) Notice.  Therefore, Union Pacific maintains that Mr. Hopman's present request for documents does not comply with Federal Rule of Civil Procedure 34.

Union Pacific next argues that, even if the current discovery dispute relates to document requests that accompanied the Rule 30(b)(6) Notice, Union Pacific did not waive its objections to those requests (*Id.*).  Union Pacific also lodges new objections to the document requests included in the Chart (*Id.*, at 5-7).

Furthermore, Union Pacific argues that, even if Mr. Hopman is permitted to move to compel based on his Chart, Union Pacific has produced the relevant documents or that the documents that Mr. Hopman now seeks are not relevant to this lawsuit (*Id.*, at 1).  Union Pacific takes the position that, besides Mr. Hopman and Mr. Birchfield, "there are no other relevant engineer accommodation requests" and that, therefore, the Court should not force Union Pacific

to undergo significant expense to conduct a search for engineer-related accommodation requests (*Id.*, at 9).  In addition, Union Pacific argues that the following documents sought by Mr. Hopman are irrelevant:  (1) documents related to "safety breaches and records of engineer/conduct incapacitation" and (2) the entire medical file, or "EHealthSafe" records, for Mr. Birchfield.

In reply, Mr. Hopman points out that Union Pacific was served with the Rule 30(b)(6) Notice and accompanying document requests on September 25, 2018, and that Union Pacific did not object to the Rule 30(b)(6) Notice or accompanying document requests until December 18, 2018 (Dkt. No. 45, at 2).  Further, Mr. Hopman asserts that the Chart was developed in the process of conferring about the parties' discovery obligations and that Union Pacific's counsel responded to the Chart on March 7, 2019 (*Id.*, at 3).  Mr. Hopman argues that Union Pacific "is estopped from narrowing its response concerning the noticed topics." (*Id.*, at 4).

Mr. Hopman also argues that his requests for information regarding engineer accommodations and for Union Pacific's experience with dogs are relevant to the claims and defenses in this case (*Id.*, at 6).  Mr. Hopman points out that Mr. Doerr testified that Union Pacific keeps safety records and investigated Mr. Birchfield's request for a dog-related accommodation (*Id.*, at 7).  He defers on the issue of Mr. Birchfield's medical file (*Id.*, at 4).  Finally, Mr. Hopman seeks more details regarding what documents Union Pacific has yet to produce and the timeline for when such documents will be produced (*Id.*, at 8).

## II.    Legal Standard

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

In resisting otherwise relevant discovery, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost . . . . If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause . . . ." Fed. R. Civ. P. 26(b)(2). When weighing the proportionality of the discovery to the needs of the case, courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

### III.    Discussion

The Court first addresses the arguments regarding whether the discovery requests before the Court are valid requests under Rule 34 of the Federal Rules of Civil Procedure. The Court concludes that—whether Mr. Hopman is seeking to compel documents pursuant to requests that accompanied the Rule 30(b)(6) Notice or the Chart—those document requests are valid under Rule 34 and may properly be the subject of a motion to compel. For the following reasons, the Court concludes that it will compel Union Pacific to produce documents in response to certain document requests included with the Rule 30(b)(6) Notice and in the Chart as set forth in this Order.

### A.    Form Of Discovery Requests

In his email to the Court, Mr. Hopman seeks to compel responses to six specific document requests which were attached to his prior Rule 30(b)(6) Notice (Exhibit A). Mr. Hopman describes these specific document requests as seeking generally two categories of documents: (1) "accommodations sought by UP's engineers and conductors" and (2) "Union Pacific's practices

and experiences with dogs." (*Id*.).  Mr. Hopman's email then elaborates on the documents he believes he is entitled to receive (*Id*.).  In response, Union Pacific first takes the position that the document requests accompanying the Rule 30(b)(6) Notice failed to comply with Rule 34 in some respect (Dkt. No. 43, at 5).  Union Pacific then argues that "Hopman now claims that the documents contained in the informal chart relate to previously propounded document requests." (*Id*., at 1).  Union Pacific further argues that the documents identified in the Chart are not proper Rule 34 document requests and that, even if they are, there are valid objections to those document requests (*Id*.).

First, the Court concludes that the document requests attached to Mr. Hopman's Rule 30(b)(6) Notice are proper under the Federal Rules of Civil Procedure.  Per Rule 30(b)(2), "[t]he notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at the deposition."  Rule 34, in turn, provides that the party to whom a document request is directed "must respond in writing within 30 days after being served."  Fed. R. Civ. P. 34(b)(2)(A).  Mr. Hopman asserts that he served Union Pacific with the Rule 30(b)(6) Notice and accompanying document requests on September 25, 2018, and Union Pacific responded on December 18, 2018 (Dkt. Nos. 45, at 2; 45-2, at 1).  Union Pacific cites no specific deficiency with the document requests accompanying the Rule 30(b)(6) Notice to support its argument that these requests failed to meet some standard set by Rule 34.  The Court rejects Union Pacific's argument on this point.  Clearly, more than 30 days elapsed between the alleged date of service of the document requests and Union Pacific's response.

Union Pacific side-steps this fact by arguing that the Chart seeks documents unrelated to the document requests attached to the Rule 30(b)(6) Notice.  The Court disagrees.  The document requests described in Mr. Hopman's email motion are taken verbatim from the document requests

attached to the Rule 30(b)(6) Notice.  Further, contrary to Union Pacific's arguments, many of the categories of documents requested in the Chart appear to fall within the document requests attached to the Rule 30(b)(6) Notice.  For example, the Chart seeks "accommodation records of engineers" and documents relating to Mr. Birchfield (Dkt. No. 43-1).  Document Request No. 9 attached to the Rule 30(b)(6) Notice seeks "any and all documents that describe or document any job accommodations requested by conductors or engineers in the last five years . . . as well as documents documenting whether and why those accommodations were granted or denied." (Dkt. No. 45-1, at 5).  Clearly, the Chart's request for "accommodations records of engineers" falls within the scope of Request No. 9 accompanying the Rule 30(b)(6) Notice.  Furthermore, the documents relating to Mr. Birchfield likely fall within the document requests relating to Union Pacific's experience with dogs.

To the extent any of the requests in the Chart fall outside of the scope of the document requests attached to the Rule 30(b)(6) Notice, the Court finds that the document requests contained in the Chart are valid requests under Rule 34 of the Federal Rules of Civil Procedure.  Rule 34 contemplates formal service of requests for production of documents, and normally informal discovery requests are not recognized as appropriate discovery requests sufficient to justify granting a motion to compel.  *See Lindholm v. BMW of N.A., LLC*, Case No. 3:15-cv-03003-RAL, 2016 WL 164832, at *4 (D. S.D. Apr. 25, 2016) (compiling cases that discuss whether informal document requests are sufficient to justify granting a motion to compel).

Here, however, counsel for Mr. Hopman sent the Chart to counsel for Union Pacific on February 20, 2019 (Dkt. No. 43-1).  On March 7, 2019, counsel for Union Pacific responded, describing the Chart as an "informal production request" and producing certain documents (Dkt. No. 43-2, at 2).  Also attached to the email sent by Union Pacific's counsel was a revised version

of the Chart, with Union Pacific's position as to each request in the Chart (*Id.*, at 3). Union Pacific objected to certain document requests in the Chart and also agreed to produce certain documents in response to certain document requests in the Chart (*Id.*). Mr. Hopman could have reasonably believed, based upon Union Pacific's conduct and response, that documents responsive to requests in the Chart would be forthcoming within 30 days and that Union Pacific was treating the document requests in the Chart as document requests under Rule 34. Accordingly, the Court treats the document requests in the Chart as valid under Rule 34. Finally, the Court notes that this holding does not prejudice Union Pacific, given that Union Pacific has lodged formal objections to the document requests in the Chart which the Court will consider (Dkt. No. 43, at 6-8).

### B.    Document Requests Attached To The Rule 30(b)(6) Notice

On September 25, 2018, Mr. Hopman served Union Pacific with a Rule 30(b)(6) Notice and accompanying document requests (Dkt. No. 45-1). There were 28 document requests attached to the Rule 30(b)(6) Notice, and Union Pacific did not respond regarding these requests until December 18, 2018 (Dkt. No. 45-2). In his March 2019 email motion, Mr. Hopman cites six of these specific document requests, each of which he believes are relevant to his present motion:

1.    [A]ll documents that describe or document any job accommodations requested by conductors or engineers in the last five years, whether disability related or not, as well as documents documenting whether and why those accommodations were granted or denied.

2.    [A]ll documents that describe or document the company permitting dogs in its rail yards and on its trains, including what role they play, how they have been of use to UP, and any policies that govern when UP will and will not allow dogs in its rail yards and on its trains.

3.    [A]ll documents that describe or document the company's experience with workers who have allergies to dogs.

4.    [A]ll documents that describe or document the company's efforts to identify any potential adverse effects of dogs being utilized on railroad property and

trains prior to authorizing such dogs to work with UP Special Agents on and around UP's trains.

5.      [A]ll documents that describe or document the company's experience, both positive and negative, with the use of dogs working with employees on and around UP's trains.

6.      [A]ll documents that describe or document the company's negative experiences that UP claims have occurred as a result of any dog on or around its trains.

(Exhibit A).

The Court will not compel production in response to the second through sixth of these document requests, as the second through sixth of these document requests are temporally unlimited.  While the documents Mr. Hopman seeks through these requests may be relevant to the claims and defenses in this case, because these requests are temporally unlimited, the document requests are overbroad.   Mr. Hopman takes the position that Union Pacific has waived any objection to these requests that accompanied the Rule 30(b)(6) Notice.  On the record before it, the Court declines to find waiver and determines that, as written, the document requests are not "proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  The Court understands from the telephone hearing conducted with counsel that counsel may have discussed certain time limitations with respect to several of these requests.  However, Mr. Hopman has not formally limited in writing the time period for these requests, and the Court will not do that for Mr. Hopman at this point.

The first document request cited above, however, is limited to the last five years and seeks "all documents that describe or document any job accommodations requested by conductors or engineers," regardless of whether or why the accommodation request was granted or denied (Exhibit A).  Mr. Hopman reiterated his request for such documents in his Chart (Dkt. No. 43-1, at 2).  Since Mr. Hopman's latest request for such documents is found in the Chart, the Court will

address whether to compel production of such documents specifically in response to Mr. Hopman's requests in the Chart.

### C.      Chart Document Requests

The Court will compel Union Pacific to turn over certain documents that were requested in the Chart.  In the Chart, counsel for Mr. Hopman listed categories of documents he seeks through discovery.  According to the briefing before the Court, the parties have reached an agreement on some of the documents requested in the Chart, and some of the documents have already been produced by Union Pacific.[1]  The Court's ruling on each of the remaining requests follows here.

### 1.      Safety Breaches And Incapacitation Records

In the Chart, Mr. Hopman seeks "[d]ocuments (safety breaches and records of engineer/conductor incapacitation)." (Dkt. No. 43-1, at 2).  The Chart notes that "UP is looking into this." (*Id.*).  In response to this request, Union Pacific stated, "If we track this information and we can locate it we do not object to production."  In its response to Mr. Hopman's email motion, however, Union Pacific objects to this document request claiming that it is "overly broad, unduly burdensome, and disproportionate to the needs of this case." (Dkt. No. 43, at 6).  At the telephonic hearing on March 21, 2019, counsel for Mr. Hopman argued that records of safety breaches and incapacitation are relevant to Union Pacific's affirmative defenses because the records will show other instances of unsafe activity on Union Pacific's trains.

---

[1]  In its response, Union Pacific represents that it "has already produced, or will produce" all relevant documents in response to the following requests by Mr. Hopman:  "Documents (EHealthSafe records of Hopman);" "Documents (Hopman entire personal file);" and "Documents (K9 dogs FFD records for all dogs currently in service as well as all documents relating to each dog [like training certifications, education[,] etc])]." (Dkt. No. 43, at 7 (alterations in original)).  Additionally, in his reply, Mr. Hopman states that he "is willing to defer production of Mr. Birchfield's medical file until after his deposition . . . ." (Dkt. No. 45, at 4).  The Court assumes that the parties will continue to work together on these document requests and inform the Court if a ruling from the Court becomes necessary on any of these or any other issues.

The Court denies Mr. Hopman's request for documents relating to safety breaches and records of engineer and conductor incapacitation as written (Dkt. No. 43-1). Union Pacific objects to this request, arguing that that it is overly broad, unduly burdensome, and disproportionate to the needs of this case (Dkt. No. 43, at 6). Specifically, Union Pacific argues that it would take a significant amount of time to search for such documents and that this request is not likely to lead to the production of relevant documents (*Id.*). Further, Union Pacific states that the request for "safety breaches" is vague and ambiguous (*Id.*). While the Court concedes that some of the documents sought by this request may be relevant to the claims and defenses in this case, the Court also notes that this request is temporally unlimited and therefore overbroad. Furthermore, the request is not worded in a manner that is specific enough for Union Pacific to know which documents the request seeks. Mr. Hopman, in his reply, concedes that Union Pacific "has a code of specific rules about incidents that implicate safety . . . ." (Dkt. No. 45, at 7). Mr. Hopman gained this knowledge by deposing Mr. Doerr (*Id.*). Based upon this, it appears to the Court that Mr. Hopman has knowledge that may permit him to propound a temporally limited, more targeted request for production. Accordingly, the request for production of documents as written is denied.

## 2.    Accommodation Requests By Engineers

As mentioned above, in the Chart, Mr. Hopman also requests "[d]ocuments (accommodation records of engineers)." (Dkt. No. 43-1, at 2). The Chart includes a notation by this request: "Defer until conductor records produced on Feb. 22." (*Id.*). In response, Union Pacific objected, claiming that it had already "produced system conductor information" and that it "only provided the Birchfield information because he requested a dog." (Dkt. No. 43-2, at 3). Furthermore, in its latest response, Union Pacific objects to this request, asserting that it is "overly broad, unduly burdensome, and disproportionate to the needs of this case." (*Id.*, at 6).

The Court grants Mr. Hopman's request for the production of documents related to accommodation records for engineers, to the extent limited here.  The Court previously directed Union Pacific to turn over similar information relating to conductors (Dkt. No. 24, at 7 ("The Court therefore directs Union Pacific . . . to produce all non-privileged, responsive information that identifies all conductors with disabilities who have been accommodated by Union Pacific from 2013 to the present and to describe the accommodation Union Pacific agreed to extend to each of these conductors . . . .")).  In his deposition, Mr. Doerr answered in the affirmative when asked if there is no difference between engineers and conductors with respect to "reviewing a request to utilize a service dog as an accommodation." (Dkt. No. 45-5, at 13).  In other words, Mr. Doerr affirmed that Union Pacific treats the accommodation requests the same and analyzes them the same.  Furthermore, during the telephonic hearing on the prior motion to compel, counsel for Union Pacific represented that Union Pacific would have found information and documents responsive for engineers by virtue of pulling information and documents responsive for conductors because engineers are also licensed as conductors.  As a result of this prior representation by counsel for Union Pacific, the Court fails to understand the basis for Union Pacific's current objection.

Further, Union Pacific again takes the position that, because Mr. Doerr only testified regarding Mr. Birchfield and Mr. Hopman, those are the only relevant engineer accommodation requests.  Specifically, Union Pacific states: "Doerr testified under oath that there were only two employees—Hopman and Birchfield—who were 'train [or] engine men [or] yard men' who requested to 'bring a dog to work . . . .'" (Dkt. No. 43, at 9).  The Court already ruled on and rejected Union Pacific's attempt to limit accommodation requests to documents related to requests for dogs.  The Court again rejects this portion of Union Pacific's objection.  Likewise, the Court

ruled on and rejected Union Pacific's attempt to limit discovery responses to certain regions. Instead, the Court ruled a nationwide scope of discovery is appropriate.  The Court sees no reason to reconsider these specific rulings.

Based upon these representations, the Court concludes, as it did regarding conductor accommodations, that information regarding accommodations for engineers unrelated to service dogs is relevant to the claims and defenses in this case.  Additionally, based upon the representations made by Union Pacific's counsel and the current record before it, the Court overrules any proportionality objection made to the request for engineer accommodation requests. Although proportionality was raised by Union Pacific during the telephone hearing on these discovery matters, Union Pacific has not supplemented the record with support for its proportionality objection specific to the present document requests.  Further, it is unclear to the Court to what extent the proof presented and arguments raised by Union Pacific in the previously filed and withdrawn motion to reconsider on the basis of proportionality are applicable, if at all, to the present document requests.  Accordingly, the Court directs Union Pacific to produce all non-privileged documents that describe or document any job accommodations requested by conductors or engineers in the last five years, whether disability related or not, as well as documents documenting whether and why those accommodations were granted or denied.

### 3.     Birchfield Documents

In the Chart, Mr. Hopman requests the following documents related to Mr. Birchfield:

Birchfield log records for the last ten years, his personnel file, records of discipline for the same period, documents supplied to UP by Birchfield regarding his dog, and all of UP's documents generated during UP's investigation and actions taken after Doerr learned that supervisors had been allowing him to utilize his dog on the trains and in the yard.

(Dkt. No. 43-1, at 2).   Union Pacific objected to producing this information, and in its latest response, it elaborated that the request is "vague and ambiguous." (Dkt. No. 43, at 7).   Specifically, Union Pacific objects that the phrase "log records" is unclear, and it also objects to "ten years" of "log records" because "only documents related to the time period that Birchfield used a dog on the train would be relevant." (*Id.*).

The Court concludes that this request seeks documents that are relevant to the claims and defenses at issue in this case and that the request is proportional to the needs of the case. Accordingly, the Court orders Union Pacific to produce records relating to Mr. Birchfield's log records and discipline records for the last ten years,[2] Mr. Birchfield's personnel file, documents supplied by Mr. Birchfield to Union Pacific regarding his dog, and documents generated by Union Pacific during its investigation of Mr. Birchfield's dog.   To the extent the parties disagree about the meaning of "log records" or other documents referred to in this Order, the Court reminds the parties of their duty to meet and confer in good faith before bringing such disputes before the Court.

### 4.      Internal Guidance By Kathy Hughes

In his Chart, Mr. Hopman also requests "[d]ocuments (Kathy Hughes['] guidance to UP employers about [the] duty of accommodation)." (Dkt. No. 43-1, at 2).   Union Pacific responded that it would produce this information unless it determined that it is subject to attorney-client privilege (Dkt. No. 43-2, at 3).   In its latest response, Union Pacific objects to this request on the

---

[2]   Based upon the Court's review of Union Pacific's position statement provided to the EEOC regarding Mr. Birchfield, it appears that Mr. Birchfield may have utilized a dog on Union Pacific's property beginning at least in 2013 (Dkt. No. 45-7, at 4).   Further, in Mr. Hopman's reply, he argues that Mr. Birchfield brought his dog with him when he worked on trains "[o]ver the course of 3-4 years between 2011 and 2015." (Dkt. No. 45, at 3 n.2).   Given the record evidence before the Court at this point, the Court will allow discovery on this issue for a ten year period.

grounds that the request seeks documents protected by attorney-client privilege (Dkt. No. 43, at

7).  Union Pacific has filed, under seal, the document prepared by Kathy Hughes, and the Court

has reviewed it *in camera*.  The Court refers to this document as "Exhibit H."

Rule 501 of the Federal Rules of Evidence governs evidentiary privileges asserted in

federal court.  Per Rule 501:

> The common law—as interpreted by United States courts in the light of reason and
> experience—governs a claim of privilege unless any of the following provides
> otherwise:
>
> •   the United States Constitution;
> •   a federal statute; or
> •   rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for
> which state law supplies the rule of decision.

Fed. R. Civ. P. 501.  In this case, the Court will look to federal common law given that the claim

of privilege at issue relates to claims arising under federal law.  The Eighth Circuit Court of

Appeals has held that attorney-client privilege is a "long established rule that confidential

communications between an attorney and his client are absolutely privileged from disclosure

against the will of the client."  *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir.

1977) (en banc).  Further, client communications "intended to keep the attorney apprised of

business matters may be privileged if they embody an implied request for legal advice."  *Simon v.

G.D. Searle Co.*, 816 F.2d 397, 404 (8th Cir. 1987) (quotations omitted); *see In re Zurn Pex

Plumbing Products Liability Litig.*, MDL No. 08-1958 ADM/RLE, 2009 WL 1178588, at *2 (D.

Minn. May 1, 2009) (holding that communications by in-house counsel were protected by

attorney-client privilege).  The Eighth Circuit has set forth a five-factor test to determine if

attorney-client privilege is applicable to a corporate employee's communication:

16

(1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994) (citing *Diversified Indus. Inc.*, 572 F.2d at 609).

Exhibit H was drafted by Kathleen Hughes, who is a licensed attorney and currently an employee of Union Pacific (Dkt. No. 43-7, at 2). She is a member of the Union Pacific in-house legal team, and in 2017, one of her job duties was to provide legal advice to vocational case managers (*Id.*). Ms. Hughes avers that, "[i]n December 2017[,] [she] provided legal advice and counsel to the vocational case managers . . . on the Americans with Disabilities Act . . . and the concept of reasonable accommodation under the ADA and its amendments." (*Id.*). Additionally, Ms. Hughes advised "the counselors that they could transmit the memorandum I prepared to management members like our superintendents who are involved in responding to accommodation requests . . . ." (*Id.*). Exhibit H itself provides guidance about Union Pacific's obligations under the ADA regarding accommodations.

Here, the Court finds that Union Pacific has met its burden to show a factual basis for its assertion of attorney-client privilege regarding Exhibit H. Ms. Hughes' sworn statement is that she is a licensed attorney who works for Union Pacific and provides legal advice in her role (Dkt. No. 43-7, at 2). She states that she drafted Exhibit H to provide legal advice to other Union Pacific employees (*Id.*). The Court notes, however, that Exhibit H is not marked as "attorney-client privileged" and that Ms. Hughes avers that she intended Exhibit H to be retransmitted by the recipients of Exhibit H (*Id.*). Mr. Hughes also avers that she intended the recipients of Exhibit H to be "management members like our superintendents who are involved in responding to

accommodation requests . . . ." (Dkt. No. 43-7, at 2).  Given the uncontested record evidence before the Court that Ms. Hughes was an attorney for Union Pacific and that Exhibit H contains legal advice directed at Union Pacific employees who needed such information, the Court concludes that Union Pacific has met its burden to demonstrate that Exhibit H is covered by attorney-client privilege.

**IV.     Conclusion**

Consistent with the terms of this Order, the Court grants, in part, and denies, in part, Mr. Hopman's motion to compel discovery responses of Union Pacific (Exhibit A).

So ordered this 15th day of May, 2019.

Kristine G. Baker
United States District Judge

Exhibit A



**Hopman v. Union Pacific**

<span style="color:orange">Kathy Butler</span>  to:  Jacob_White@ared.uscourts.gov                    03/13/2019 11:50 AM
                      "LSchoonmaker@seyfarth.com -- Schoonmaker, Linda"        , "Torry
Cc:  N. Garland (TNGARLAN@UP.COM)"        , "Wadsworth, Brian
                      (bawadsworth@seyfarth.com)"   , "John Griffin (jwg@lawmgk.com)",

To the Honorable Kristine Baker:

       I know that I can speak for both parties in one respect.  We appreciate your willingness
to consider our discovery dispute on an expedited basis, since there are seven depositions
occurring in the next five weeks, beginning with Mr. Hopman on March 25.

       The issues that divide the parties relate to two categories of documents that are the
subject of several document requests in connection with a Rule 30(b)(6) deposition notice.
Union Pacific lodged no objections to these document requests either before or at the
deposition, but now objects to producing these documents.  The document requests are the
following:

1.  all documents that describe or document any job accommodations requested by conductors
or engineers in the last five years, whether disability related or not, as well as documents
documenting whether and why those accommodations were granted or denied.

2.  all documents that describe or document the company permitting dogs in its rail yards and
on its trains, including what role they play, how they have been of use to UP, and any policies
that govern when UP will and will not allow dogs in its rail yards and on its trains.

3.  all documents that describe or document the company's experience with workers who have
allergies to dogs.

4.  all documents that describe or document the company's efforts to identify any potential
adverse effects of dogs being utilized on railroad property and trains prior to authorizing such
dogs to work with UP Special Agents on and around UP's trains.

5.  all documents that describe or document the company's experience, both positive and
negative, with the use of dogs working with employees on and around UP's trains.

6.  all documents that describe or document the company's negative experiences that UP
claims have occurred as a result of any dog on or around its trains.

       As the Court can see, the categories are accommodations sought by UP's engineer and
conductors, and the other category relates to Union Pacific's practices and experience with
dogs.  The Court will recall that Union Pacific had represented, during a telephonic hearing,

that there were no records of dogs being utilized aboard its trains.

Shortly before the Rule 30(b)(6) deposition, Union Pacific's counsel informed us that it had discovered that one of its engineers with PTSD (Mr. Paul Birchfield) had actually utilized the services of his dog for a period of years.  However, Union Pacific produced only two documents regarding that experience: (1) the engineer's EEOC charge; and (2) Union Pacific's position statement to the EEOC.  Mr. Birchfield is to be deposed on April 3, 2019, in Bakersfield, California.  Rod Doerr, Union Pacific's Director of Safety, has testified about this situation, and confirmed that Union Pacific has the records concerning this engineer.  He has testified from memory, but Union Pacific has not produced the records.  For example, Union Pacific's Position Statement to the EEOC admits that its managers knew about the dog for years and did not try to stop the engineer from utilizing the dog, yet Mr. Doerr claims that this lasted only weeks or months.  He says the company conducted an investigation.  He says that allergies were an issue. The company's records of its investigation, and Mr. Birchfield's request for an accommodation and related paperwork are clearly within the plainly worded document requests quoted above, and are necessary in order to fully examine Mr. Birchfield, a Union Pacific employee.

In addition, we seek documents that describe and document job accommodations requested by engineers and conductors.  This Court previously ordered that the conductor records be produced, and Union Pacific complied,, but it still has not produced similar records for its engineers.  As stated above, no objection was lodged to the document request, and its Rule 30(b)(6) witness, Mr. Doerr, testified that the analysis of an accommodation request would be identical for engineers as conductors. Mr. Doerr also confirmed that both engineers and conductors work in the locomotive, and that the conductor is the "boss of the train,"but the engineer operates the train and is higher paid than the conductor, an interesting situation.

The document requests are at the heart of two key issues in this case: (1) whether the proposed accommodation was reasonable; and (2) whether Union Pacific's affirmative defense of undue hardship has merit.

The parties have conferred in good faith. They did so after the 30(b)(6) deposition, and again this week.  We have shared the types of records we think that Union Pacific has in its files: (1) accommodation requests by engineers in the past five years and related information like it has already  produced for conductors; (2) log and attendance records for past 10 years for Mr. Birchfield, the engineer; (3) all records regarding his discipline; (4) documents supplied to Union Pacific about him and his dog; (5) the documents regarding Union Pacific's investigation of Mr. Birchfield's use of his dog; (6) documentation of decisions Union Pacific made after Mr. Doerr learned that supervisors had been allowing him to utilize his dog on the trains and in the yards; and (7) its documentation of any experiences with dogs, positive and negative, as are described in document requests listed above.

There is one final issue, which involves a claim of attorney client privilege for a single document. Pauline Weatherford, a Union Pacific employee, testified that Union Pacific has written guidance to Union Pacific personnel on the issue of the duty to accommodate and how

Exhibit A

to analyze such claims, and that its decision maker in this case relied on that guidance.  She testified that the author of the guidance is an in house Union Pacific lawyer. Union Pacific has claimed it is covered by attorney-client privilege, while we submit that such guidance was not legal advice or subject to the privilege. To our knowledge, the document itself does not assert that it is subject to the privilege.  In any event, the decision-maker's deposition will be taken in April, and we seek to examine this witness with this guidance.

Thank you again for your consideration, and we would be pleased to participate in a telephonic conference if the Court finds that helpful.

Katherine L. Butler
**Butler & Harris**
1007 Heights Blvd.
Houston, Texas 77008
(713) 526-5677
(888) 370-5038 (fax)
kathy@butlerharris.com
www.butlerharris.com



**Confidentiality Notice:** The information contained in this electronic mail message and any attachments is confidential and may contain proprietary information or be legally privileged. This information is intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

This email has been scanned by the Symantec Email Security.cloud service.
For more information please visit http://www.symanteccloud.com