# EXHIBIT K



# Transcript of Jay Everett

**Date:** April 2, 2019
**Case:** Hopman -v- Union Pacific Railroad

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

1            UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF ARKANSAS

3

4   PERRY HOPMAN,

5        Plaintiff,          Civil Action Number:

6        vs.                 4:18-cv-74-KGB

7   UNION PACIFIC RAILROAD,

8        Defendants.

9   _____

10

11

12        VIDEOTAPED DEPOSITION OF JAY EVERETT

13             April 2, 2019

14              12:55 p.m.

15

16     2710 Gateway Oaks Drive, Suite 300 South

17             Sacramento, California

18

19

20

21

22

23   REPORTED BY:

24   MARYANN H. VALENOTI

25   CSR #11266, RPR, CRR

1             A P P E A R A N C E S

2

3    FOR THE PLAINTIFF:

4             MAREK, GRIFFIN & KNAUPP

5             JOHN W. GRIFFIN, JR., ESQ.

6             203 N. LIBERTY STREET

7             VICTORIA, TEXAS 77901

8             361.573.5500

9             jwg@lawmgk.com

10   FOR THE DEFENDANTS:

11            SEYFARTH SHAW, LLP

12            LINDA C.SCHOONMAKER, ESQ.

13            700 MILAM STREET, SUITE 1400

14            HOUSTON, TEXAS  77002

15            713.225.2300

16            lschoonmaker@seyfarth.com

17   ALSO PRESENT:

18            JENNIFER SAELEE, VIDEOGRAPHER

19

20

21

22

23

24

25

Transcript of Jay Everett
Conducted on April 2, 2019                          22

| | | |
|---|---|---|
| 1 | In what form did that communication come to | 13:16:18 |
| 2 | you? | 13:16:21 |
| 3 | A.   I believe it probably came in e-mail form. | 13:16:22 |
| 4 | That's -- you know, I -- I've had several from her. | 13:16:23 |
| 5 | They're -- most accommodation from her are somebody | 13:16:30 |
| 6 | that, you know, has had some type of injury at home, | 13:16:33 |
| 7 | they can only lift 30 pounds for the next two weeks, or | 13:16:36 |
| 8 | something like that.  But it probably came in paper | 13:16:38 |
| 9 | form from her via e-mail. | 13:16:41 |
| 10 | Q.   Thank you for that. | 13:16:43 |
| 11 | And what was your next step after you received | 13:16:44 |
| 12 | an e-mail from Ms. Weatherford? | 13:16:47 |
| 13 | A.   I reviewed it.  At some point in time I | 13:16:48 |
| 14 | reached out to counsel.  At some point in time I | 13:16:52 |
| 15 | reached out to our safety department to try to | 13:16:55 |
| 16 | understand how we could reasonably accommodate this | 13:17:01 |
| 17 | request. | 13:17:04 |
| 18 | Q.   When you say "counsel," are you talking about | 13:17:05 |
| 19 | lawyers? | 13:17:07 |
| 20 | A.   Yes. | 13:17:07 |
| 21 | Q.   Okay.  Why did you ask for lawyers? | 13:17:08 |
| 22 | A.   Because I'm familiar with the American with | 13:17:10 |
| 23 | Disabilities Act, and when I saw this request, I knew I | 13:17:15 |
| 24 | needed to try to do what I could to be reasonable | 13:17:20 |
| 25 | and -- and -- and maybe fulfill this reasonable | 13:17:25 |

| | | |
|---|---|---|
| 1 | request, try to understand it, what -- what -- what we | 13:17:27 |
| 2 | could do as a company to help this employee. | 13:17:29 |
| 3 |     Q.  But as I understand it, you don't routinely | 13:17:32 |
| 4 | get lawyer's advice when you're trying to decide | 13:17:35 |
| 5 | whether to accommodate a worker, do you? | 13:17:38 |
| 6 |     A.  Absolutely. | 13:17:40 |
| 7 |     Q.  In every case? | 13:17:41 |
| 8 |     A.  No, not every case. | 13:17:42 |
| 9 |     Q.  Okay.  That's what I'm asking.  You don't do | 13:17:44 |
| 10 | that in every case? | 13:17:45 |
| 11 |     A.  Not in every case, but in a lot of cases I do. | 13:17:46 |
| 12 |     Q.  But not in every case? | 13:17:50 |
| 13 |     A.  Okay. | 13:17:51 |
| 14 |     Q.  Why do you ask for counsel in some cases and | 13:17:51 |
| 15 | not others? | 13:17:56 |
| 16 |     A.  Some are -- some are a much -- more black and | 13:17:57 |
| 17 | white, much clearer, much easier to accommodate.  You | 13:18:03 |
| 18 | know, if someone says they -- they come to me with | 13:18:06 |
| 19 | accommodation, I can't lift a hundred pounds above my | 13:18:08 |
| 20 | shoulders, I can accommodate that. | 13:18:11 |
| 21 |     Q.  Okay.  I appreciate that. | 13:18:15 |
| 22 |     And let me ask you -- | 13:18:16 |
| 23 |     A.  That's pretty easy. | 13:18:16 |
| 24 |     Q.  -- you mentioned when you were describing your | 13:18:17 |
| 25 | role that there has to be a signator and a name | 13:18:20 |

| | | |
|---|---|---|
| 1 | decision. | 13:29:35 |
| 2 | Q.   I'm talking about after the final decision. | 13:29:35 |
| 3 | A.   Not to my knowledge.  There could be a review | 13:29:38 |
| 4 | that I don't know about. | 13:29:39 |
| 5 | Q.   Well, let me just ask you in an open-ended | 13:29:40 |
| 6 | way:  Who made the final decision to -- to -- to reject | 13:29:45 |
| 7 | Perry Hopman's request that he be allowed to be | 13:29:54 |
| 8 | accompanied by his certified service dog at work? | 13:29:57 |
| 9 | A.   That would be me.  I talked with counsel in | 13:30:03 |
| 10 | our safety department, but that final decision came | 13:30:08 |
| 11 | from me. | 13:30:10 |
| 12 | Q.   And in terms of the -- the management at Union | 13:30:13 |
| 13 | Pacific, what is Mr. Doerr's title? | 13:30:17 |
| 14 | A.   Chief safety officer maybe, something along | 13:30:27 |
| 15 | those lines.  He is the highest safety officer within | 13:30:30 |
| 16 | our organization. | 13:30:35 |
| 17 | Q.   And is that a higher position than that of | 13:30:37 |
| 18 | general superintendent? | 13:30:41 |
| 19 | A.   Yes, it is. | 13:30:42 |
| 20 | Q.   Did you -- let me just ask you this:  Are | 13:30:45 |
| 21 | there any policies at Union Pacific that delegate to | 13:30:49 |
| 22 | general superintendents the authority to make decisions | 13:30:54 |
| 23 | about workers' requests for accommodations for | 13:31:01 |
| 24 | disabilities?  Is that documented anywhere? | 13:31:05 |
| 25 | A.   I don't know. | 13:31:08 |

Transcript of Jay Everett
Conducted on April 2, 2019                                    40

```
1              MR. GRIFFIN:  Let me object as nonresponsive.    13:37:20
2   BY MR. GRIFFIN:
3       Q.   Please let me finish.                               13:37:22
4            So the only workers that you can recollect          13:37:24
5   having any involvement in communicating with them are       13:37:27
6   those workers who -- who happen to come seek you out;        13:37:31
7   right?                                                       13:37:35
8       A.   Correct.                                            13:37:36
9       Q.   Okay.  And I would like you, if you don't           13:37:37
10  mind, share with us all of the human beings at UP that       13:37:45
11  you consulted with or got their approval before you          13:37:53
12  signed off on the rejection of Perry Hopman's                13:37:57
13  accommodation request.                                       13:38:02
14      A.   I'm going to do my best.  Kathleen Hughes was       13:38:08
15  an attorney that I spoke with.                               13:38:11
16      Q.   Okay.                                               13:38:13
17      A.   I had at least one conversation with Rod            13:38:16
18  Doerr, of course Pauline Weatherford.                        13:38:18
19      Q.   Uh-huh.                                             13:38:23
20      A.   I probably spoke to my boss, which was Chad         13:38:23
21  Wilbourn at the time.  I don't remember that                 13:38:30
22  conversation, but that would have been normal for me to      13:38:32
23  let him know that I was working through this.                13:38:37
24      Q.   Uh-huh.                                             13:38:39
25      A.   During this time period, I had service unit        13:38:41
```

Transcript of Jay Everett
Conducted on April 2, 2019                                41

| | | |
|---|---|---|
| 1 | attorneys that are assigned to me that are my own | 13:38:45 |
| 2 | attorney, and I had some changes during that time -- | 13:38:47 |
| 3 | during this time period.  Had Doris Beutel at one point | 13:38:50 |
| 4 | in time.  Had a gentleman -- I couldn't even tell you | 13:38:53 |
| 5 | his name.  He was in Chicago for a short stint, and | 13:38:57 |
| 6 | he's no longer with the company.  I had an attorney -- | 13:39:00 |
| 7 | Elizabeth, out of Houston, for a short stint.  I don't | 13:39:09 |
| 8 | know if she was my attorney at this point in time, but | 13:39:14 |
| 9 | had she been, I would have consulted with her.  I just | 13:39:17 |
| 10 | don't remember the conversation, if I had one with her. | 13:39:19 |
| 11 | Q.   Uh-huh. | 13:39:23 |
| 12 | A.   And I believe that's the extent.  Maybe Torry | 13:39:24 |
| 13 | Garland. | 13:39:27 |
| 14 | Q.   Okay.  And he's another lawyer? | 13:39:27 |
| 15 | A.   He is another lawyer. | 13:39:30 |
| 16 | Q.   Okay.  If you don't mind, turn to the page in | 13:39:34 |
| 17 | the exhibit that we've been referring to, which has | 13:39:40 |
| 18 | been previously marked as Doerr Exhibit Number 11 to | 13:39:43 |
| 19 | the Bates Stamp 266.  And after you are there and your | 13:39:47 |
| 20 | counsel's looked at it, just let me know. | 13:39:51 |
| 21 | A.   I am on the page that my counsel's handed me. | 13:40:05 |
| 22 | What are you asking me to look at here? | 13:40:07 |
| 23 | Q.   Just asking if you've seen Union Pacific's | 13:40:09 |
| 24 | synopsis of the Hopman service dog request, at least | 13:40:12 |
| 25 | the 2016 request. | 13:40:17 |

Transcript of Jay Everett
Conducted on April 2, 2019                          42

| 1  | A.   I don't know.  I don't know if I've seen it or | 13:40:20 |
| 2  | not. | 13:40:24 |
| 3  | Q.   You have not reviewed it in preparation for | 13:40:24 |
| 4  | your deposition, though, have you? | 13:40:26 |
| 5  | A.   I don't -- I don't know.  Can I ask my | 13:40:28 |
| 6  | counsel?  I mean, if I would have reviewed it in -- | 13:40:33 |
| 7  | in -- in -- in preparation today, she would know. | 13:40:34 |
| 8  | Q.   I appreciate you volunteering that, but I | 13:40:38 |
| 9  | don't think that -- no, I don't need you to ask your | 13:40:41 |
| 10 | lawyer -- | 13:40:44 |
| 11 | A.   Okay.  I don't know. | 13:40:44 |
| 12 | Q.   -- for me.  I -- I appreciate your courtesy in | 13:40:45 |
| 13 | that regard, but no.  No need in doing that.  If you | 13:40:47 |
| 14 | don't remember, that's okay. | 13:40:50 |
| 15 | A.   Okay. | 13:40:51 |
| 16 | Q.   Because I just -- there is a statement made in | 13:40:52 |
| 17 | the third paragraph of this synopsis -- | 13:40:55 |
| 18 | A.   Okay. | 13:40:57 |
| 19 | Q.   -- that says, "After discussing the matter | 13:40:59 |
| 20 | with Mr. Hopman and considering the position of field | 13:41:03 |
| 21 | leadership, it was determined that the accommodation | 13:41:07 |
| 22 | requested could result in a direct threat to health or | 13:41:11 |
| 23 | safety."  Do you see that? | 13:41:14 |
| 24 | A.   Yes. | 13:41:16 |
| 25 | Q.   Okay.  Determined by whom?  Who was it | 13:41:17 |

1    determined by that the service dog would result in a          13:41:22

2    direct threat to health or safety?                            13:41:25

3        A.   It was probably determined by conversations          13:41:26

4    between myself and Mr. Doerr, and that's an assumption         13:41:31

5    made on my part.                                               13:41:34

6        Q.   Who is field leadership?                              13:41:36

7        A.   I would be -- field leadership would be               13:41:38

8    referring to me.  I'm a leader in the field.  It could         13:41:40

9    be -- I don't know who all she talked to, but she could       13:41:45

10   have been me.                                                  13:41:48

11       Q.   Well, but if it says here after discussing the       13:41:51

12   matter with Mr. Hopman and considering your position,         13:41:53

13   Mr. Everett, it was determined.  So who was doing the         13:42:01

14   determining after getting input from you?                     13:42:05

15       A.   I don't know.  You ask the question for Terry        13:42:10

16   Owens.                                                         13:42:12

17       Q.   Okay.  All right.  You mentioned the signature      13:42:24

18   of your signature on the rejection of Perry Hopman's          13:42:25

19   accommodation request, but were there any other               13:42:29

20   signatures that you know of, of any other people, with       13:42:33

21   respect to that -- Mr. Hopman's request?                      13:42:36

22       A.   Not that I know of, but I don't know of a --         13:42:39

23   if there was a -- you called it a rejection.  I can          13:42:44

24   remember, as I was working through the accommodation          13:42:48

25   process, there may have been a signature where                13:42:51

Transcript of Jay Everett
Conducted on April 2, 2019                    44

| | | |
|---|---|---|
| 1 | accommodations were made.  They just weren't exactly | 13:42:54 |
| 2 | what he asked for. | 13:42:57 |
| 3 |      MR. GRIFFIN:  Let me object to the | 13:42:58 |
| 4 | nonresponsive part of the answer. | 13:42:59 |
| 5 | BY MR. GRIFFIN: | |
| 6 |    Q.  I'm -- I'm just asking:  You mentioned that | 13:43:01 |
| 7 | you signed something, and I'm -- | 13:43:03 |
| 8 |    A.  I'm -- I'm -- | 13:43:05 |
| 9 |    Q.  Stay with me, please -- that you signed some | 13:43:05 |
| 10 | kind of disposition of the accommodation request.  Did | 13:43:09 |
| 11 | anyone else other than you sign any paperwork regarding | 13:43:12 |
| 12 | those requests? | 13:43:16 |
| 13 |    A.  I don't know, and I don't know that I did. | 13:43:17 |
| 14 |    Q.  I thought you said you did.  That's how we got | 13:43:20 |
| 15 | started on this, that there had to be a signature and a | 13:43:22 |
| 16 | name. | 13:43:24 |
| 17 |    A.  There does.  In -- through this process, there | 13:43:24 |
| 18 | does, but that doesn't mean there was in this case.  I | 13:43:27 |
| 19 | don't remember. | 13:43:29 |
| 20 |    Q.  Well, when do you -- why did you tell me | 13:43:31 |
| 21 | before that there had to be a signature -- | 13:43:35 |
| 22 |    A.  There does.  There is supposed to be, on every | 13:43:37 |
| 23 | one of them. | 13:43:39 |
| 24 |    Q.  All right.  Okay. | 13:43:39 |
| 25 |    A.  I've -- I've -- I've probably handled 30 of | 13:43:41 |

Transcript of Jay Everett
Conducted on April 2, 2019                          45

| | | |
|---|---|---|
| 1 | them in the last year, and there's supposed to be a | 13:43:43 |
| 2 | signature.  And that's the process. | 13:43:45 |
| 3 | Q.   And it's supposed to be your signature? | 13:43:46 |
| 4 | A.   And it's supposed to be my signature, yeah. | 13:43:48 |
| 5 | Q.   Okay.  Got you. | 13:43:49 |
| 6 | A.   Yeah. | 13:43:50 |
| 7 | MS. SCHOONMAKER:  When you get to a good | 13:44:02 |
| 8 | stopping point, I would like to take a break. | 13:44:03 |
| 9 | MR. GRIFFIN:  How long we need?  Five minutes | 13:44:05 |
| 10 | good? | 13:44:06 |
| 11 | MS. SCHOONMAKER:  Yes. | 13:44:06 |
| 12 | MR. GRIFFIN:  Perfectly fine. | 13:44:07 |
| 13 | MS. SCHOONMAKER:  Probably seven minutes. | 13:44:08 |
| 14 | MR. GRIFFIN:  Seven minutes fine, too. | 13:44:09 |
| 15 | THE VIDEOGRAPHER:  The time is 1:44 p.m.  We | 13:44:10 |
| 16 | are going off the record. | 13:44:16 |
| 17 | (Recess taken.) | |
| 18 | THE VIDEOGRAPHER:  We are going on the record. | 13:55:09 |
| 19 | The time is 1:55 p.m. | 13:55:18 |
| 20 | BY MR. GRIFFIN: | |
| 21 | Q.   Mr. Everett, do you have any notes or a file | 13:55:22 |
| 22 | or any records that document your role in Union | 13:55:29 |
| 23 | Pacific's decision not to grant Mr. Hopman's request | 13:55:35 |
| 24 | for an accommodation? | 13:55:42 |
| 25 | A.   No. | 13:55:43 |

Transcript of Jay Everett
Conducted on April 2, 2019                              46

| | | |
|---|---|---|
| 1 | Q.   Okay.  To the extent that Union Pacific has | 13:55:46 |
| 2 | any such records, where would they be? | 13:55:49 |
| 3 | A.   Pauline Weatherford would probably have them. | 13:55:54 |
| 4 | Q.   Okay.  And I'm going to ask about some | 13:55:57 |
| 5 | categories of information from Ms. Weatherford at UP, | 13:56:01 |
| 6 | and share with me whether or not she gave you any | 13:56:05 |
| 7 | information on any of these things. | 13:56:08 |
| 8 | First about Mr. Hopman's dog, his -- his | 13:56:11 |
| 9 | service dog:  Were you given any information about the | 13:56:16 |
| 10 | dog's capabilities, its trainings, its certifications? | 13:56:19 |
| 11 | A.   No. | 13:56:23 |
| 12 | Q.   Were you given any information on how the dog | 13:56:24 |
| 13 | works with Mr. Hopman, insofar as managing the symptoms | 13:56:28 |
| 14 | of his PTSD? | 13:56:33 |
| 15 | A.   I was told that the dog was trained to wake | 13:56:35 |
| 16 | him up if he was having nightmares. | 13:56:38 |
| 17 | Q.   And that's all you were told? | 13:56:41 |
| 18 | A.   Yeah.  Yes. | 13:56:42 |
| 19 | Q.   Okay. | 13:56:44 |
| 20 | A.   I don't know the breed.  I don't -- I wasn't | 13:56:45 |
| 21 | told the breed, the -- it was to wake him up when he | 13:56:47 |
| 22 | was having nightmares -- | 13:56:52 |
| 23 | Q.   Right.  I'm just making sure that I'm | 13:56:54 |
| 24 | understanding.  The only thing you can recollect here | 13:56:55 |
| 25 | in April of 2019 is Ms. Weatherford telling you that | 13:56:59 |

Transcript of Jay Everett
Conducted on April 2, 2019                         47

| | | |
|---|---|---|
| 1 | she thought the dog was helping him by helping him wake | 13:57:04 |
| 2 | up? | 13:57:07 |
| 3 |     A.   Correct. | 13:57:09 |
| 4 |     Q.   Nothing about how the dog intervenes to | 13:57:10 |
| 5 | prevent flashbacks -- flashbacks and the pain that they | 13:57:13 |
| 6 | cause? | 13:57:19 |
| 7 |     A.   No -- | 13:57:20 |
| 8 |     Q.   Okay. | 13:57:20 |
| 9 |     A.   -- unless that would be considered a | 13:57:20 |
| 10 | nightmare. | 13:57:21 |
| 11 |     Q.   Okay.  But a nightmare you think of something | 13:57:23 |
| 12 | as being when you are asleep -- | 13:57:25 |
| 13 |     A.   Correct. | 13:57:26 |
| 14 |     Q.   -- not -- | 13:57:26 |
| 15 |     A.   That's -- that's -- that's the way I | 13:57:27 |
| 16 | understood the dog was -- originally the dog -- I don't | 13:57:28 |
| 17 | know what role it would play, but originally -- the | 13:57:31 |
| 18 | original request came in the dog would be with him | 13:57:35 |
| 19 | while he was on the ground, performing all his duties, | 13:57:37 |
| 20 | in the locomotive with him.  And once I, you know, | 13:57:38 |
| 21 | challenged, if you will, or asked could he do the job | 13:57:44 |
| 22 | safely without the dog, and he said he could, then the | 13:57:46 |
| 23 | request came back to me that he needed it to wake him | 13:57:49 |
| 24 | up from nightmares. | 13:57:53 |
| 25 |     Q.   And all of that is what Ms. Weatherford told | 13:57:55 |

Transcript of Jay Everett
Conducted on April 2, 2019                              48

| | | |
|---|---|---|
| 1 | you? | 13:57:57 |
| 2 | A.    Correct.  That's all from Ms. Weatherford. | 13:57:58 |
| 3 | Q.    On the phone? | 13:57:59 |
| 4 | A.    Yes, on the phone. | 13:58:00 |
| 5 | Q.    And did -- did Ms. Weatherford or anyone else | 13:58:02 |
| 6 | give you any input from experts in PTSD? | 13:58:07 |
| 7 | A.    No. | 13:58:14 |
| 8 | Q.    Okay.  Or experts in the benefits of service | 13:58:15 |
| 9 | dogs for -- for people with PTSD? | 13:58:18 |
| 10 | A.    No. | 13:58:21 |
| 11 | Q.    Is that something you consider yourself to be | 13:58:22 |
| 12 | an expert in? | 13:58:24 |
| 13 | A.    No.  I'm an expert in railroading. | 13:58:26 |
| 14 | MR. GRIFFIN:  Let me object to the | 13:58:28 |
| 15 | nonresponsive portion of your answer. | 13:58:29 |
| 16 | BY MR. GRIFFIN: | |
| 17 | Q.    I appreciate your self-confidence in that, but | 13:58:31 |
| 18 | I'm talking about in a narrow field here, as the person | 13:58:34 |
| 19 | who signed this decision and placed their name on it, I | 13:58:38 |
| 20 | just want to make sure -- | 13:58:42 |
| 21 | A.    Am I an expert -- ask me the question again. | 13:58:43 |
| 22 | Q.    What I was asking you was that as the | 13:58:55 |
| 23 | decision-maker whose -- whose signature appeared on a | 13:58:57 |
| 24 | document concerning Mr. Hopman's request, there was | 13:59:01 |
| 25 | no -- no expertise in PTSD in that decision-making, was | 13:59:06 |

Transcript of Jay Everett
Conducted on April 2, 2019                    49

| | | |
|---|---|---|
| 1 | there? | 13:59:11 |
| 2 | MS. SCHOONMAKER:  Objection, form. | 13:59:12 |
| 3 | THE WITNESS:  No. | 13:59:16 |
| 4 | BY MR. GRIFFIN: | |
| 5 | Q.   Okay.  And there was no expertise in the area | 13:59:17 |
| 6 | of service dogs, either, was there? | 13:59:20 |
| 7 | A.   Not to my knowledge. | 13:59:24 |
| 8 | Q.   Okay.  All right.  And I think you've | 13:59:25 |
| 9 | confirmed, but I want to make sure.  You signed off on | 13:59:32 |
| 10 | a document that denied him the accommodation he | 13:59:36 |
| 11 | requested without having met, discussed, e-mailed, or | 13:59:42 |
| 12 | communicated with Mr. Hopman in any way; correct? | 13:59:47 |
| 13 | MS. SCHOONMAKER:  Objection, form, asked and | 13:59:50 |
| 14 | answered three times. | 13:59:51 |
| 15 | THE WITNESS:  You've asked me this before, and | 13:59:54 |
| 16 | I told you I don't know.  That's common practice for me | 13:59:56 |
| 17 | to sign off, one way or the other, to make the | 13:59:59 |
| 18 | accommodation.  But in this case I don't know if I | 14:00:01 |
| 19 | signed that document or not. | 14:00:04 |
| 20 | MR. GRIFFIN:  And I'm not fussing at you.  Let | 14:00:06 |
| 21 | me object as nonresponsive. | 14:00:07 |
| 22 | BY MR. GRIFFIN: | |
| 23 | Q.   My question wasn't about the signature.  My | 14:00:09 |
| 24 | question was -- | 14:00:12 |
| 25 | THE WITNESS:  Can you read the question back? | 14:00:13 |

Transcript of Jay Everett
Conducted on April 2, 2019                                      50

| | | |
|---|---|---|
| 1 | MS. REPORTER:  Do you want me to read the | 14:00:13 |
| 2 | question back? | 14:00:13 |
| 3 | MR. GRIFFIN:  No.  I think that would take too | 14:00:21 |
| 4 | long. | 14:00:22 |
| 5 | BY MR. GRIFFIN: | |
| 6 | Q.  I want to ask you again, though.  You made | 14:00:24 |
| 7 | your decision such that it was without having met, | 14:00:26 |
| 8 | discussed, e-mailed, or communicated with Mr. Hopman in | 14:00:30 |
| 9 | any way; isn't that correct? | 14:00:34 |
| 10 | A.  That is correct. | 14:00:35 |
| 11 | MS. SCHOONMAKER:  Objection, form. | 14:00:36 |
| 12 | BY MR. GRIFFIN: | |
| 13 | Q.  Okay.  And I apologize if I've asked -- if | 14:00:36 |
| 14 | I've asked it more than once. | 14:00:38 |
| 15 | Now, back to the question.  How do you think | 14:00:40 |
| 16 | you documented your decision? | 14:00:46 |
| 17 | A.  I don't remember, but it may be documented on | 14:00:51 |
| 18 | the standard form that does require my signature.  I | 14:00:54 |
| 19 | just don't remember whether it was there or not. | 14:00:56 |
| 20 | Q.  What is that form? | 14:00:58 |
| 21 | A.  It's a Reasonable Accommodation Form, I | 14:01:00 |
| 22 | believe is even what it's called. | 14:01:03 |
| 23 | Q.  Does it have a number? | 14:01:04 |
| 24 | A.  It probably does.  Most of our forms do.  But | 14:01:06 |
| 25 | I don't know it. | 14:01:11 |

| | | |
|---|---|---|
| 1 | like for me to just go through them?  Is that what | 14:04:06 |
| 2 | you're asking me? | 14:04:08 |
| 3 | Q.  All of them. | 14:04:09 |
| 4 | A.  Okay.  The job of a conductor is many times he | 14:04:10 |
| 5 | has to get out and walk trains, walk a mile, one | 14:04:14 |
| 6 | direction -- trains are a mile long.  He has to walk | 14:04:17 |
| 7 | along ballast.  He has to carry a brake stick.  A brake | 14:04:20 |
| 8 | stick, I'm going to guess -- estimate, weighs 15 to | 14:04:23 |
| 9 | 20 pounds. | 14:04:26 |
| 10 | He has to carry a light so he can see at | 14:04:29 |
| 11 | night.  So here he's got a brake stick.  He's got a | 14:04:31 |
| 12 | light.  He may have to carry a train list, check a | 14:04:34 |
| 13 | train list.  The entire time he's doing this, he has to | 14:04:37 |
| 14 | check -- walk and check this train. | 14:04:39 |
| 15 | He may be -- if he went in an emergency, which | 14:04:42 |
| 16 | is that is when a train comes to a -- to an unexpected | 14:04:44 |
| 17 | stop, an unscheduled stop, part of his inspection is to | 14:04:48 |
| 18 | check each car's wheel to make sure they are on the | 14:04:51 |
| 19 | ground.  So now he is worried about his toe path.  He's | 14:04:54 |
| 20 | worried about his list.  He's carrying his brake stick. | 14:04:58 |
| 21 | He's got a light at night, and he's checking every | 14:05:01 |
| 22 | wheel of that train for a mile to walk down. | 14:05:03 |
| 23 | I see a dog as a distraction during this time. | 14:05:07 |
| 24 | Q.  Okay. | 14:05:09 |
| 25 | A.  Okay.  That's -- that's -- what -- what | 14:05:11 |

Transcript of Jay Everett
Conducted on April 2, 2019                                    54

| | | |
|---|---|---|
| 1 | people, lay people that aren't from the railroad | 14:05:15 |
| 2 | industry, have to understand is these trains carry | 14:05:17 |
| 3 | hazardous chemicals, and it's very safety-related in | 14:05:20 |
| 4 | the communities that we work through.  He's -- he is | 14:05:24 |
| 5 | professional -- a licensed professional to perform his | 14:05:26 |
| 6 | duty, and he's got to be able to do that safely. | 14:05:29 |
| 7 | Q.   Okay. | 14:05:33 |
| 8 | A.   And I saw the -- a dog, or service animal, as | 14:05:34 |
| 9 | a distraction during that process.  He's got -- he's | 14:05:38 |
| 10 | got to be able to get on and off a locomotive. | 14:05:41 |
| 11 | Q.   Understood. | 14:05:43 |
| 12 | A.   To do that, you got to maintain a three-point | 14:05:44 |
| 13 | stance.  A three-point stance means two hands and a | 14:05:46 |
| 14 | foot or one foot and a hand.  I mean, maybe if the | 14:05:49 |
| 15 | service animal could fit in his pocket, but I don't see | 14:05:53 |
| 16 | a dog doing that, he's got to figure out a way to get | 14:05:57 |
| 17 | that dog on and off that locomotive, that service -- | 14:05:59 |
| 18 | this service animal. | 14:06:02 |
| 19 | There is another crew member, sometimes two | 14:06:04 |
| 20 | crew members, in the cab of that locomotive.  There are | 14:06:07 |
| 21 | people that have allergies to animals, dogs, being | 14:06:10 |
| 22 | specific in this case.  Is Union Pacific expected to | 14:06:16 |
| 23 | make accommodations for them not being able to work | 14:06:22 |
| 24 | with a dog in the cab?  A dog has to go to the bathroom | 14:06:24 |
| 25 | just like human beings.  A dog has to eat, drink water. | 14:06:27 |

Transcript of Jay Everett
Conducted on April 2, 2019                    55

| | | |
|---|---|---|
| 1 | I can't have that spilled in the cab of a locomotive. | 14:06:31 |
| 2 | That's -- it's really just around safety. | 14:06:36 |
| 3 | Q.   Have you given us your best explanation of | 14:06:41 |
| 4 | your reasoning?  Is there anything else you would like | 14:06:48 |
| 5 | to add? | 14:06:51 |
| 6 | A.   Dogs could -- could be distracted by other | 14:06:55 |
| 7 | animals that are out in railyards, by trespassers we | 14:06:58 |
| 8 | have to deal with in railyards.  Dogs, like people, get | 14:07:01 |
| 9 | sick. | 14:07:07 |
| 10 | Q.   Okay. | 14:07:09 |
| 11 | A.   I'm a dog owner.  Dogs get sick.  How do -- | 14:07:10 |
| 12 | what happens -- what do we do then?  I just -- I didn't | 14:07:13 |
| 13 | see that portion of him out on the ground and that dog | 14:07:17 |
| 14 | in a locomotive being a reasonable accommodation. | 14:07:21 |
| 15 | Q.   Left me ask you this:  In terms of these | 14:07:24 |
| 16 | concerns, who, if anyone, discussed them with Perry? | 14:07:26 |
| 17 | In other words, some of the points you raised -- the | 14:07:32 |
| 18 | dog could bite somebody, the dog could be distracted, | 14:07:34 |
| 19 | the dog could be a distraction to somebody else, the | 14:07:36 |
| 20 | dog might cause an allergy -- all of these things you | 14:07:39 |
| 21 | just mentioned, do you know who, if anyone, discussed | 14:07:41 |
| 22 | those concerns with Perry to see whether they're | 14:07:45 |
| 23 | actually real-world concerns or whether they can be | 14:07:48 |
| 24 | mitigated or dealt with in some way? | 14:07:53 |
| 25 | A.   I -- I don't know.  I did not. | 14:07:58 |

Transcript of Jay Everett
Conducted on April 2, 2019                                56

| | | |
|---|---|---|
| 1 | Q.   Let me show you what's previously been marked | 14:08:00 |
| 2 | as Exhibit Number 9, and I'm going to ask you to look | 14:08:04 |
| 3 | at the very last page.  And when you are through | 14:08:07 |
| 4 | reading -- or after she's through reading and then you | 14:08:10 |
| 5 | are through reading, let me know when you are ready, | 14:08:13 |
| 6 | and then I'm going to ask you some questions. | 14:08:16 |
| 7 | A.   Again, to ask me what I'm reading? | 14:08:31 |
| 8 | Q.   Look at the -- | 14:08:33 |
| 9 | A.   This whole thing [indicating]? | 14:08:35 |
| 10 | Q.   No, the last page, the -- the paragraph at the | 14:08:35 |
| 11 | bottom of the page. | 14:08:40 |
| 12 | A.   This paragraph [indicating]? | 14:08:41 |
| 13 | Q.   Yes, sir.  And when you are through reading | 14:08:42 |
| 14 | it, I want you to let me know, if that's okay. | 14:08:44 |
| 15 | A.   (Witness complying.) | |
| 16 |      Okay, I've read it. | 14:08:45 |
| 17 | Q.   Until just now, had -- had you ever been | 14:09:51 |
| 18 | provided Mr. Hopman's input with respect to Union | 14:09:54 |
| 19 | Pacific's concerns and -- and objections to his service | 14:10:00 |
| 20 | dog request? | 14:10:04 |
| 21 | A.   I believe I reviewed this yesterday with | 14:10:05 |
| 22 | counsel. | 14:10:07 |
| 23 | Q.   Okay. | 14:10:08 |
| 24 | A.   But that was the first time. | 14:10:09 |
| 25 | Q.   Okay.  Can you share with us, if you don't | 14:10:10 |

| | | |
|---|---|---|
| 1 | done looking at it, I just ask if you've ever seen it | 14:37:01 |
| 2 | before.  And maybe I should ask:  Have you seen it | 14:37:07 |
| 3 | before, before yesterday? | 14:37:09 |
| 4 |     A.   I don't even believe I saw this yesterday. | 14:37:11 |
| 5 |     Q.   Okay.  So you are seeing that document for the | 14:37:14 |
| 6 | first time? | 14:37:16 |
| 7 |     A.   Yeah, I'm seeing this document for the first | 14:37:17 |
| 8 | time. | 14:37:18 |
| 9 |     Q.   Fair enough.  Then I won't question you any | 14:37:18 |
| 10 | more on that document. | 14:37:20 |
| 11 |         Let me show you what's been marked as Everett | 14:37:23 |
| 12 | Number 1 -- | 14:37:26 |
| 13 |         (Exhibit 1 marked.) | |
| 14 | BY MR. GRIFFIN: | |
| 15 |     Q.   -- and ask if you've seen that before. | 14:37:28 |
| 16 |     A.   Yes. | 14:37:37 |
| 17 |     Q.   Okay.  What I have done, the best I can in | 14:37:38 |
| 18 | doing, is sorted through the exhibit and tried to -- to | 14:37:48 |
| 19 | prepare a chronological -- | 14:37:53 |
| 20 |     A.   Okay. | 14:37:55 |
| 21 |     Q.   -- series of e-mails.  And I'm going to ask | 14:37:56 |
| 22 | you, first, if -- if you don't mind, to share with me | 14:38:04 |
| 23 | that if you look on Page 971, in the bottom right-hand | 14:38:11 |
| 24 | corner -- | 14:38:16 |
| 25 |     A.   Okay. | 14:38:16 |

```
1                    REPORTER'S CERTIFICATE

2

3          I, MARYANN H. VALENOTI, RPR, CRR, CSR No.

4     11266, hereby certify:

5          That the foregoing proceedings were taken

6     before me at the time and place therein set forth, at

7     which time the witness was put under oath by me,

8          That the testimony of the witness, the

9     questions propounded, and all objections and statements

10    made at the time of the examination were recorded

11    stenographically by me and were thereafter transcribed;

12         That a review of the transcript was requested;

13         That the foregoing is a true and correct

14    transcript of my shorthand notes so taken.

15         I further certify that I am not a relative or

16    employee of any attorney of the parties; nor

17    financially interested in the action.

18         I declare under penalty of perjury under the

19    laws of California, that the foregoing is true and

20    correct.

21         Dated this 19th day of April, 2019.

22

23    _____

24    Maryann H. Valenoti, RPR, CRR, CSR #11266

25
```