## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**PERRY HOPMAN**                                                                               **PLAINTIFF**

**v.**                                   **Case No. 4:18-cv-00074-KGB**

**UNION PACIFIC RAILROAD**                                                       **DEFENDANT**

## OPINION AND ORDER

Before the Court is a motion for summary judgment filed by defendant Union Pacific Railroad ("Union Pacific") (Dkt. No. 54). Plaintiff Perry Hopman filed a response to this motion (Dkt. No. 59), Union Pacific filed a reply (Dkt. No. 61), and Mr. Hopman filed a sur-reply (Dkt. No. 62). For the following reasons, the Court denies Union Pacific's motion (Dkt. No. 54).

### I.      Factual Background

Mr. Hopman brings this action against Union Pacific under Section 504 of the Rehabilitation Act of 1973, as amended, ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Dkt. No. 4, ¶ 3). Mr. Hopman alleges that he was discriminated against and denied a reasonable accommodation in violation of both the Rehabilitation Act and the ADA (*Id.*, ¶¶ 18-26).

Mr. Hopman joined the U.S. Army in 1993 (Dkt. No. 55, ¶ 1). Mr. Hopman originally served as an active duty service member and spent approximately one and one-half years on duty before joining the National Guard in Arkansas (*Id.*). In 2006, Mr. Hopman deployed to Iraq as a member of the National Guard (*Id.*, ¶ 2). While deployed, Mr. Hopman discussed employment at Union Pacific with one of his fellow guardsmen and was told that it was a great place to work (*Id.*). Mr. Hopman decided to pursue a railroad career at Union Pacific when he returned from his

deployment (*Id.*).  At some point after Mr. Hopman returned to the United States, he was diagnosed with post-traumatic stress disorder ("PTSD") for the first time (*Id.*, ¶ 3).

In May 2008—while still a member of the National Guard but after returning from his deployment—Mr. Hopman accepted employment as a conductor at Union Pacific's North Little Rock service unit (*Id.*, ¶ 4).  Conductors are responsible for train operations and movement, which includes operating locomotive equipment (*Id.*, ¶ 5).  A conductor's duties include, but are not limited to:  pushing, pulling, lifting, and carrying up to 25 pounds frequently, 50 pounds occasionally, and assisting in the infrequent movement of weights of seven up to 83 pounds; riding railcars and climbing onto equipment; applying bilateral use of upper extremities when needed such as maintaining a grip with both hands; maintaining balance and coordination on stairs, ladders, uneven terrain, moving equipment, rails, and ballast; maintaining three-point contact when holding on a ladder or train; working and interacting with others; and riding at the rear of a car on a ladder (*Id.*).  In addition to these duties, the conductor also spends time outside of the train to walk the train and deal with other problems (*Id.*, ¶ 6).  This means the conductor must perform his or her duties in extreme weather and face any dangers the weather may pose (*Id.*).  As a conductor, Mr. Hopman was required to work a variable schedule based on business needs, which included overnight travel (*Id.*, ¶ 7).  This involved Mr. Hopman, as a conductor, pairing up with an engineer to operate Union Pacific's trains (*Id.*).  Due to scheduling limitations, a conductor and engineer team is not constant and usually changes for each run (*Id.*).

In April 2010, Mr. Hopman took a leave of absence from Union Pacific to perform military service (*Id.*, ¶ 8).  This leave of absence ultimately lasted five years (*Id.*).  Mr. Hopman deployed to Kosovo during this time and also spent time at his local armory in Benton, Arkansas (*Id.*).  Mr. Hopman asserts that he suffered a traumatic brain injury during his service in Kosovo and spent

time after his deployment trying to recover from his injuries, during which his PTSD became much worse (Dkt. No. 59-2, ¶ 8).  Mr. Hopman received treatment at Walter Reed in Washington, D.C. and participated in an Army PTSD program in San Diego, California (Dkt. No. 55, ¶ 8).  Mr. Hopman also asserts that he received treatment at the Intrepid Center for his traumatic brain injury and PTSD and the Oasis Center for his PTSD (Dkt. No. 59-2, ¶ 8).  Union Pacific avers that it paid Mr. Hopman approximately $300.00 to $400.00 per month during this leave, which represented the difference between his pay at Union Pacific and the pay he received while serving on military duty, but Mr. Hopman disputes this claim (Dkt. Nos. 55, ¶ 8; 59-2, ¶ 8).  Mr. Hopman medically retired from the Army National Guard in 2015 (Dkt. No. 55, ¶ 8).

Mr. Hopman claims that his medical team recommended that he get a service dog to help mitigate the flashbacks, anxiety, and migraine headaches he suffered (Dkt. No. 59-5, ¶ 5).  In 2014, prior to returning to work at Union Pacific, Mr. Hopman got his dog Atlas, a two-month-old German Rottweiler (Dkt. No. 55, ¶ 9).  Mr. Hopman returned from his military leave of absence on or about May 4, 2015 (*Id.*, ¶ 10).  Mr. Hopman resumed working as a conductor at the North Little Rock Service Unit after his return (*Id.*).  Union Pacific required Mr. Hopman to undergo a fitness-for-duty exam when he returned to work, as it requires all of its employees who work in a safety sensitive position to undergo a fitness-for-duty exam after returning from an absence of one year or longer (*Id.*, ¶ 11).  While Mr. Hopman informed Union Pacific of his PTSD diagnosis at that time, he did not request a reasonable accommodation and returned to work without restrictions (*Id.*).

On or about April 1, 2016, after working at Union Pacific for nearly a year after returning from his military leave of absence and approximately eight years after his PTSD diagnosis, Mr. Hopman requested that Union Pacific permit him to bring Atlas to work as a reasonable

accommodation (*Id.*, ¶ 12).  This request is the first time that Mr. Hopman ever sought a reasonable accommodation from Union Pacific (*Id.*).  Mr. Hopman readily admits that from May 4, 2015, to April 1, 2016, prior to requesting this accommodation, he was able to perform safely all functions of his job, though he asserts that he suffered flashbacks, anxiety, and migraine headaches during that time (Dkt. Nos. 55, ¶ 12; 59-2, ¶ 12).  Mr. Hopman made this 2016 request to his supervisor at the time, Josh Davis, and the only disability claimed at the time was his PTSD (Dkt. No. 55, ¶ 13).  Mr. Hopman requested to bring Atlas to work because he believed Atlas would allow him to be more comfortable at work, make working easier, and help him both mentally and physically (Dkt. Nos. 54-6, at 2; 55, ¶ 13).  After reviewing Mr. Hopman's request, Union Pacific denied it because it determined that the accommodation would result in a direct threat to health and safety (Dkt. Nos. 54-7, at 2; 55, ¶ 14).  Specifically, Union Pacific noted that:  (1) it is unclear how a dog would react to the dangerous conditions of the railyard, such as moving cars and locomotives; (2) there was no infrastructure to support a dog in a locomotive or on the road; and (3) the dog would remain unmonitored and could pose a risk to other employees (*Id.*).  Mr. Hopman asserts that Union Pacific refused to communicate with him about any concerns regarding this accommodation, that Union Pacific was not in a position to make a decision about whether Atlas would be or result in a direct threat to health and safety, and that the record shows that Union Pacific only communicated its concerns after it had already denied the accommodation (Dkt. No. 59-2, ¶ 14).

After the denial of this request, Mr. Hopman filed a Charge with the Equal Employment Opportunity Commission ("EEOC") on April 21, 2016 (Dkt. No. 55, ¶ 15).  In his Charge, Mr. Hopman alleged that Union Pacific denied him a reasonable accommodation because of his disability (*Id.*).  In the accompanying Intake Questionnaire, Mr. Hopman indicated the only

discrimination he faced was Union Pacific's denial of a "use of service dog at work" (*Id.*).  Mr. Hopman also indicated that the assistance he sought was "only to allow a service dog to accompany [him] at work" (*Id.*).  At the time Mr. Hopman filed this Charge, Atlas had not completed his training (*Id.*).  Because Mr. Hopman proactively requested an accommodation he would want in the future, the EEOC recommended that Mr. Hopman withdraw his Charge, which he did (*Id.*).

After Atlas completed his 18-month training program in or about April 2017, Mr. Hopman requested again that Union Pacific permit him to bring Atlas to work with him via an email to Pauline Weatherford, one of Union Pacific's senior vocational case managers (*Id.*, ¶ 16).  Union Pacific asserts that Ms. Weatherford's role in accommodation requests is to engage in the interactive process with the employee, clarify what the employee is seeking, and assist the employee in acquiring the desired accommodation request, if possible (*Id.*).  In his email, Mr. Hopman wrote that he now had his service dog full-time and would like to ask for an accommodation enabling him to bring Atlas to work (*Id.*, ¶ 17).

Mr. Hopman completed a reasonable accommodation request intake form which addressed the concerns Union Pacific expressed in denying his 2016 request (*Id.*).  Mr. Hopman claimed that: (1) Atlas was trained to perform necessary tasks in varied environments and trained to focus on his work; (2) Atlas was trained not to relieve himself for 14 straight hours; (3) Atlas was an extension of Mr. Hopman and should be viewed as such; (4) Mr. Hopman suffered physical and mental impairments in the form of anxiety and fatigue; (5) Mr. Hopman's impairments interfered with his job performance in the form of increased fatigue due to difficulty sleeping and a possible impact on his focus; and (6) Mr. Hopman was currently able to function but was fearful his impairments would lead to inability to perform essential functions without the accommodation (Dkt. Nos. 54-11, at 2-4; 55, ¶ 17).  Union Pacific states that Ms. Weatherford assisted Mr. Hopman

5

throughout the life of his accommodation request and beyond (Dkt. No. 55, ¶ 16).  Mr. Hopman challenges this characterization and asserts that Ms. Weatherford did not:  communicate management's concerns about Mr. Hopman's request until she communicated that his request was denied; allow him to address any concerns about the requested accommodation before it was denied; engage in any interactive process with him, meet with him, or speak with him other than by phone or email; assist him or facilitate his request; play any role in the decisions made about his requests; or convey Mr. Hopman's response to Union Pacific's concerns (Dkt. No. 59-2, ¶ 16).

When questioned about this form in his deposition, Mr. Hopman testified that he had no job limitations at the time he requested his accommodation (Dkt. No. 55, ¶ 18).  When asked why Mr. Hopman requested to bring Atlas to work, despite being able to perform all the essential functions of his job, Mr. Hopman claimed that he needed Atlas to assist him by:  "grounding," or sensing Mr. Hopman's anxiety levels and placing pressure on his body; reminding him to take his medications; "hovering," or walking in circles around Mr. Hopman in a crowd to keep the crowd at bay; notifying Mr. Hopman of when a migraine is coming; blocking anyone from approaching Mr. Hopman from behind; finding the closest exit in a building; picking up and retrieving items; waking Mr. Hopman up from nightmares; forcing Mr. Hopman to get out of the house; and helping Mr. Hopman during flashbacks (Dkt. Nos. 55, ¶ 18; 59-2, ¶ 18).  Union Pacific maintains that Atlas needs ongoing training to remain a viable service dog, but Mr. Hopman claims that Atlas only needs additional training because Union Pacific denied his request to bring Atlas to work and Atlas' skills have dulled since he is not working on a daily basis (Dkt. Nos. 55, ¶ 19; 59-2, ¶ 19). Additionally, Mr. Hopman recognizes that Atlas was not trained for the railroad environment, complete with all the smells, noises, and safety hazards a service dog would encounter, though Mr. Hopman claims that Union Pacific's actions are the only reason Atlas has not been exposed to the

railroad environment (*Id.*).   However, Mr. Hopman claims that his lack of training in the railroad environment is not a barrier to him being a service animal supporting Mr. Hopman (Dkt. No. 59-1, ¶ 42).

After Mr. Hopman submitted his 2017 request for an accommodation, Ms. Weatherford and Mr. Hopman discussed Mr. Hopman's request and his needs (Dkt. No. 55, ¶ 20).   Ms. Weatherford also researched cases and other information helpful to Mr. Hopman and his request (*Id.*).   Mr. Hopman broadly asserts for many of the reasons cited that, through Ms. Weatherford, Union Pacific did not appropriately engage in the interactive process with him (Dkt. No. 59-2, ¶ 20).   He claims that Ms. Weatherford did not communicate any suggestions or options to him but instead just issued the rejection (*Id.*).   Mr. Hopman asserts that Ms. Weatherford did not deliberate with, make suggestions to, or even supply the decision-makers with his input (*Id.*).   Mr. Hopman reasserts that Ms. Weatherford never shared with him any of management's concerns until his request was rejected (*Id.*).   However, Mr. Hopman did testify that Ms. Weatherford was responsive to him, that she seemed concerned and compassionate, and that he had no complaints about the way that Ms. Weatherford treated him (Dkt. No. 54-2, at 47).   Union Pacific claims that it memorialized Ms. Weatherford's process with Mr. Hopman using its internal reasonable accommodation request forms, though Mr. Hopman states that he only saw these forms after his request was rejected and denies that they substitute in some way for an interactive process (Dkt. Nos. 55, ¶ 20; 59-2, ¶ 20).

Union Pacific forwarded Mr. Hopman's accommodation request on to the General Superintendent of his service unit, Jay Everett, for review (Dkt. No. 55, ¶ 21).   Mr. Everett reviewed the request and conferred with Union Pacific's internal legal counsel and safety department (*Id.*).   Mr. Everett and members of Union Pacific's legal team and safety department

collaborated on whether Union Pacific could safely accommodate Mr. Hopman's request (*Id.*). Union Pacific claims that it took these actions pursuant to its routine process, but Mr. Hopman asserts that Union Pacific has produced no proof that it has a routine practice for handling accommodation requests or that it followed one in his case (Dkt. Nos. 55, ¶ 21; 59-2, ¶ 21). Union Pacific maintains that the decision as to whether Union Pacific could provide Mr. Hopman with his requested accommodation rested in Mr. Everett alone, though Mr. Everett could rely on those resources available to him to make the decision (Dkt. No. 55, ¶ 22).

Union Pacific states that Ms. Weatherford advocated on Mr. Hopman's behalf and explained to Mr. Everett, among others, how well a service animal is trained and a service animal's capabilities (*Id.*). Union Pacific states that Mr. Everett determined that Atlas' presence would constitute a direct threat to health and safety and made the decision to deny Mr. Hopman's request (*Id.*). Union Pacific claims that this decision was based, in part, on an assessment performed by Union Pacific's Assistant Vice President of Safety, Rod Doerr (*Id.*). Union Pacific asserts that Mr. Doerr believed that Mr. Hopman would violate a number of safety rules in bringing Atlas aboard a train (*Id.*). Union Pacific maintains that it memorialized its decision by providing Mr. Hopman with a document describing the resolution of his reasonable accommodation request (*Id.*). Mr. Hopman claims broadly that there is clearly a fact issue about who made the decision regarding his accommodation, on what basis that decision was made, and why that decision was made (Dkt. No. 59-2, ¶¶ 21-22).

Separately, Mr. Doerr testified to the following facts: Union Pacific had no rule against employees bringing service animals to work; a Union Pacific engineer named Paul Birchfield had previously been permitted by supervisors to bring his service dog to work with him, including aboard Union Pacific trains; in Mr. Birchfield's case, Mr. Doerr ultimately determined that it was

not feasible to accommodate animals in the work environment of an engineer; Union Pacific has its own canine units, and the dogs in those units work on and off of Union Pacific trains; and none of those dogs have misbehaved in a way that caused Union Pacific to reevaluate any of its policies (Dkt. No. 59-8, at 8-13, 17-18, 37-38).  Relatedly, Brian Seibert, testified that he has seen stray dogs or yard dogs in multiple Union Pacific locations, that Union Pacific has no rule prohibiting those dogs' presence in its yard, and that Union Pacific has no rule prohibiting its own canine dogs from being aboard its trains (Dkt. No. 59-13, at 7-8).  Mr. Birchfield testified that he brought his service dog, Jack, to work with him on a regular basis, including on Union Pacific's trains, for a period of over four years to prevent the worst symptoms of his anxiety and panic attacks; that Jack never caused a problem, created any danger, or posed a threat to anyone else in his presence; and that he was given an ultimatum that he either give up asking Jack to be at work with him or he not go back to work (Dkt. No. 59-10).

Union Pacific maintains that Ms. Weatherford contemplated alternative forms of accommodation and that Union Pacific offered Mr. Hopman a reasonable accommodation in the form of a yard job which would prevent him from having to spend nights away from home and Atlas (Dkt. No. 55, ¶ 23).  Mr. Hopman had approximately 25 yard jobs to choose from, though Mr. Hopman claims that these jobs were not all comparable and that he found one job that did not entail a huge pay cut (Dkt. Nos. 55, ¶ 23; 59-2, ¶ 23).  Union Pacific states that its involvement in the process ensured Mr. Hopman would keep that job and not be bumped from the job by another union-represented employee with greater seniority (Dkt. No. 55, ¶ 23).  Mr. Hopman disputes this, asserts that the yard job was not a reasonable accommodation, and asserts that it was not effective, making things worse for him because it was a more dangerous and more stressful job that did not address working with PTSD day in and day out (Dkt. No. 59-2, ¶ 23).

Mr. Hopman disagreed with Union Pacific's decision (Dkt. No. 55, ¶ 24).  Mr. Hopman stated that the yard job accommodation provided a more dangerous working environment, multiple new stressors, paid less than his current position, felt more like a punishment than a solution, and that Atlas was a medical necessity prescribed by a doctor to perform certain tasks that allowed him to be a productive person (Dkt. Nos. 54-14, at 5; 55, ¶ 24).  In a follow-up email to Ms. Weatherford, Mr. Hopman conveyed his disagreement with Union Pacific's decision (Dkt. Nos. 54-15; 55, ¶ 25).  Mr. Hopman claimed that his request for accommodation was in no way approved for the original request; that the yard option was not a viable option for him; that Atlas helped him with much more than sleeping and that overnight stays were not his sole need for Atlas; that he had PTSD which provided part of his need for Atlas; that the yard job provided myriad stressors; and that Atlas would not assist him in his essential functions while on duty (Dkt. No. 54-14, at 2).

Union Pacific elevated Mr. Hopman's request to Ms. Weatherford's supervisor, Peggy Grosskopf, director of clinical services, and Union Pacific's internal Equal Employment Opportunity ("EEO") team (Dkt. No. 55, ¶ 26).  Ms. Grosskopf and the EEO team reviewed Mr. Hopman's objections to determine if Union Pacific could alter its decision but reached the same conclusion as Mr. Everett (*Id.*).  Mr. Hopman claims that he directly asked to appeal each of the decisions and that he has no idea if the people identified were involved in considering his appeals or, if they were, on what basis they decided to deny his appeal (Dkt. No. 59-2, ¶ 26).

Mr. Hopman testified that he pursued the yard job offered to him and eventually accepted a job as a conductor which was classified as a yard job (Dkt. No. 54-2, at 29-30).  Mr. Hopman's pay did not radically change, and he testified that his fears about a dramatic pay decrease were not realized (Dkt. Nos. 54-2, at 31; 55, ¶ 27).  Union Pacific characterizes Mr. Hopman's actions as his agreeing to pursue the alternative accommodation offered to him, but Mr. Hopman disputes

that account (Dkt. Nos. 55, ¶ 27; 59-2, ¶ 27).   Mr. Hopman claims that he did not accept any

alternative accommodation and that Union Pacific never offered him any accommodation (Dkt.

No. 59-2, ¶ 27).   Mr. Hopman asserts that Union Pacific offered only Family Medical Leave Act

("FMLA") leave, to which he was already entitled, and use of his seniority to move to the yard,

which is a right every worker has regardless of disability (*Id.*).

Despite agreeing to accept it, Mr. Hopman did not like the yard conductor job (Dkt. No.

55, ¶ 28).   Mr. Hopman felt that this new position placed more stress on him because the yard job

conductor is a dangerous job in a dangerous environment (*Id.*).   Mr. Hopman states that he did not

voluntarily accept this "reasonable accommodation" and that it did not address the burden of his

PTSD day in and day out (Dkt. No. 59-2, ¶ 28).   Mr. Hopman tried the yard job for a time because

he could be with Atlas at night (*Id.*).   However, Mr. Hopman realized that the additional stress of

the job made his life worse, and he decided to return to his previous job and resumed working as

a conductor on the road (Dkt. Nos. 55, ¶ 28; 59-2, ¶ 28).

Mr. Hopman filed a second Charge against Union Pacific for its failure to accommodate

his second request to permit him to bring his dog to work (Dkt. No. 55, ¶ 29).   In this Charge, Mr.

Hopman claimed that he "requested to be allowed to use a service dog to accompany [him] when

walking train; ride within locomotive in down stay command or could be tethered or crated while

switching and be allowed to travel to rest location" (*Id.*).   In the associated Intake Questionnaire

form, Mr. Hopman claimed that his disability was migraines, PTSD, anxiety, and depression (Dkt.

No. 54-16, at 5).   After receiving Notice of his Right to Sue, Mr. Hopman filed this lawsuit on

January 26, 2018 (Dkt. No. 55, ¶ 30).   Mr. Hopman's only claimed disability in this case is PTSD

(*Id.*).   Mr. Hopman has maintained, in testimony and otherwise, that he is able to perform the

functions of his job safely and that he has never reached a point where he is unable to perform the

essential functions of his job (*Id.*, ¶ 31).   Mr. Hopman asserts, however, that he sought an accommodation to allow him to enjoy equal access to the benefits and privileges of employment by preventing the worst symptoms of his PTSD (Dkt. No. 59-2, ¶ 31).

Since Mr. Hopman filed his Charge and this lawsuit, Union Pacific has promoted him to engineer (Dkt. No. 55, ¶ 32).   He underwent training to become an engineer, which he was set to complete in or about April 2019 (*Id.*).   Mr. Hopman requested that Union Pacific permit him to bring Atlas to the classroom portion of the engineer training, and Union Pacific states that it granted him this request (*Id.*).   However, Atlas injured himself prior to the training and was unable to accompany Mr. Hopman (*Id.*).   Further, Mr. Hopman disputes Union Pacific's account and claims that the request was granted by the community college where the training occurred, not by Union Pacific (Dkt. No. 59-2, ¶ 32).   Mr. Hopman claims that Union Pacific demurred when he asked whether he was allowed to bring Atlas to his engineer training (*Id.*).

In mid-2018, Mr. Doerr and his safety team agreed to travel to Arkansas to meet with Mr. Hopman to discuss Atlas (Dkt. No. 55, ¶ 33).   Union Pacific states that the intent of this meeting was to allow Mr. Hopman to demonstrate how he would mitigate the safety concerns associated with Atlas' presence onboard a locomotive, but Mr. Hopman cancelled the meeting the day before it was set to occur (*Id.*).   Mr. Hopman states that the meeting was part of settlement discussions and purposed to allow a give and take discussion of Union Pacific's concerns and Mr. Hopman's responses (Dkt. No. 59-2, ¶ 33).   Union Pacific states that Ms. Weatherford continued to work with Mr. Hopman on his request for an accommodation and exchanged emails with him as recently as September 2018 about the potential for Atlas to accompany him at work (Dkt. No. 55, ¶ 34).   In these emails, Mr. Hopman and Ms. Weatherford discussed how he planned to overcome issues

presented by Atlas's presence (Dkt. No. 54-18).  The parties have not agreed upon a workplace demonstration with Atlas to date (Dkt. No. 55, ¶ 34).

## II.     Legal Standard

Summary judgment is appropriate if there is no genuine issue of material fact for trial. *UnitedHealth Grp. Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Fed. R. Civ. P. 56).  Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In ruling on a motion for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'"  *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923-24 (8th Cir. 2004) (internal citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Johnson Reg'l Med. Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that

there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008), *cert. denied*, 522 U.S. 1048 (1998).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

Importantly, "[t]here is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (citing *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010)).  "Although employment discrimination cases are 'often fact intensive and dependent on nuance in the workplace, they are not immune from summary judgment.'"  *Trierweiler v. Wells Fargo Bank*, 639 F.3d 456, 459 (8th Cir. 2011) (quoting *Fercello*, 612 F.3d at 1077).  "An employer is entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision."  *Ross v. Kan. City Power & Light Co.*, 293 F.3d 1041, 1047 (8th Cir. 2002) (internal quotations and citations omitted).

### III.    Failure To Accommodate

#### A.    Legal Standard

Mr. Hopman brings identical claims of disability discrimination and failure to accommodate under the ADA and the Rehabilitation Act (Dkt. No. 4, ¶¶ 18-26).  The Court notes that "[t]he ADA and the RA are 'similar in substance' and, with the exception of the RA's federal funding requirement, 'cases interpreting either are applicable and interchangeable.'"  *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999) (quoting *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998)); *see also Durand v. Fairview Health Servs.*, 902 F.3d 836, 841 (8th Cir. 2018) (same); *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir. 1996) (noting that "the same basic standards

and definitions are used under both Acts").  The only relevant difference between the claims is the burden of proof imposed on the plaintiff.  "Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff." *Amir v. St. Louis Univ.*, 183 F.3d 1017, 1029 n.5 (8th Cir. 1999).  Accordingly, the Court generally addresses Mr. Hopman's ADA and Rehabilitation Act claims together, recognizing these differences.

"In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty—the failure to reasonably accommodate the disabled individual's limitations." *Peebles v. Potter*, 354 F.3d 761, 767 (8th Cir. 2004).  As the Eighth Circuit has held, an employer commits unlawful discrimination if the employer does not make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the employer. *See Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002); *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999) (quoting 42 U.S.C. § 12112(b)(5)(a)).  "A reasonable accommodation should provide the disabled individual an equal employment opportunity, including an opportunity to attain the same level of performance, benefits, and privileges that is available to similarly situated employees who are not disabled." *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) (citation omitted).  "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).  With a reasonable accommodation claim, "the employer's intent is not

determinative." *Withers v. Johnson*, 763 F.3d 998, 1004 (8th Cir. 2014). "Rather, discrimination occurs when the employer fails to abide by a legally imposed duty." *Peebles*, 354 F.3d at 767.

To prevail on a failure to accommodate claim, a plaintiff "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015); *see also Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 923-24 (8th Cir. 2018) (affirming summary judgment on plaintiff's failure to accommodate claim because plaintiff failed to show that he was a qualified individual); *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016) (affirming summary judgment on plaintiff's failure to accommodate claim because plaintiff failed to show that she suffered an adverse employment action). A *prima facie* case requires a plaintiff to demonstrate that he or she: (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of that disability. *Jeseritz v. Potter*, 282 F.3d 542, 546 (8th Cir. 2002). Upon establishing a prime facie case of discrimination, the plaintiff must show, "that the requested accommodation is 'reasonable on its face, *i.e.*, ordinarily or in the run of cases.'" *Peebles*, 354 F.3d at 768 (quoting *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002)). "Upon such a showing, the employer is left to 'show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances.'" *Id.* (quoting *Barnett*, 535 U.S. at 402). In practice, the Eighth Circuit has articulated a four-part test for evaluating these claims, under which the plaintiff must demonstrate: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Ballard*, 284 F.3d at 960 (internal quotations and citations omitted).

16

B.      Analysis

Union Pacific makes several arguments in support of its motion for summary judgment. Union Pacific asserts that:  (1) Mr. Hopman cannot demonstrate that he needed the requested accommodation; (2) Mr. Hopman cannot present a prima facie case of discrimination because he suffered no adverse employment action; and (3) Mr. Hopman's requested accommodation was not reasonable as a matter of law (Dkt. No. 54-1, at 17-24).  Mr. Hopman responds that:  (1) Union Pacific failed to engage in the interactive process with him; (2) Union Pacific's failure to grant him the requested accommodation represents an adverse employment action; (3) the issue of whether Mr. Hopman needed a reasonable accommodation is broader than whether he had the ability to perform the essential functions of his job; (4) the yard job did not represent a reasonable accommodation; and (5) Mr. Hopman's requested accommodation was not unreasonable (Dkt. No. 59, at 14-25).

Union Pacific maintains that Eighth Circuit precedent bars Mr. Hopman from arguing that he is entitled to an accommodation if he is capable of performing the essential functions of his job and that Mr. Hopman has not identified any "benefit" or "privilege" of employment that he cannot access without an accommodation (Dkt. No. 61, at 1-9).  Mr. Hopman responds that Union Pacific misrepresents Eighth Circuit precedent and that Mr. Hopman's accommodation request is a request to work without the pain or symptoms of PTSD which represents a "benefit" or "privilege" of employment (Dkt. No. 62).

For purposes of summary judgment only, Union Pacific assumes that Mr. Hopman can show that he is disabled within the meaning of the ADA and is a qualified individual under the ADA (Dkt. No. 54-1, at 20).  Union Pacific also acknowledges that, at this stage, it does not move for summary judgment on the issue of the interactive process (*Id.*, at 9 n.2).  Instead, Union Pacific

asserts that as a matter of law Mr. Hopman cannot demonstrate that he is entitled to a reasonable accommodation or suffered an adverse employment decision (*Id.*, at 20).

The Court considers the legal requirements of the type of ADA claim Mr. Hopman brings and whether, based on the record evidence, a reasonable juror could conclude that Mr. Hopman was "in need of assistance" and "denied a reasonable accommodation." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1060 (8th Cir. 2016).

### 1.    Necessity Of Requested Accommodation

Union Pacific argues that Mr. Hopman cannot meet the requirement of showing he needs an accommodation, that nothing suggests that he cannot perform the essential functions of his job as a conductor without an accommodation, and that he cannot demonstrate that there are any equal benefits of employment that he is unable to enjoy without an accommodation  (Dkt. No. 54-1, at 19).  Moreover, citing *Lowery v. Hazelwood School District*, 244 F.3d 654, 660 (8th Cir. 2001), and the Eighth Circuit Pattern Jury Charge, Union Pacific claims that Eighth Circuit precedent limits reasonable accommodations to instances where a plaintiff is incapable of performing the essential functions of his position (Dkt. No. 61, at 2-5).  Mr. Hopman asserts that he needs the requested accommodation to enjoy equal benefits and privileges of employment, including the right to work without the burden and pain of PTSD (Dkt. No. 59, at 16-21).  Mr. Hopman further argues that Union Pacific misstates Eighth Circuit precedent and disability law more generally and that working without the pain of PTSD qualifies as enjoying the same benefits and privileges as an employee without a disability (Dkt. No. 62, at 1-2).

The Court rejects Union Pacific's efforts to narrow as a matter of law the types of claims that may be brought under the ADA.  The ADA's implementing regulations provide the following three definitions of the term reasonable accommodation:

(i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

(ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

(iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o)(1)(i)-(iii).  Mr. Hopman has consistently testified that he remains able to perform the essential functions of his job and maintains that this action involves the third definition of reasonable accommodation (Dkt. Nos. 55, ¶ 31; 59, at 15).  Thus, Mr. Hopman argues that he needs the requested accommodation to enjoy equal benefits and privileges of employment as are enjoyed by Union Pacific's other similarly situated employees without disabilities.

The Court finds unconvincing Union Pacific's argument that Mr. Hopman may only bring a reasonable accommodation claim if he is unable to perform the essential functions of his job for several reasons (Dkt. No. 61, at 1).  First, the facts of *Lowery* upon which Union Pacific purports to rely differ from Mr. Hopman's case.  The Eighth Circuit found that the *Lowery* plaintiff requested the accommodation in "response to [a] suspension" and "[did] not argue that he indicated that he needed an accommodation for his disability."  *Lowery*, 244 F.3d at 660.  Thus, the *Lowery* plaintiff did not "request[] that his disability be accommodated."  *Id.*  The record evidence supports that Mr. Hopman requested an accommodation due to his disability, and Mr. Hopman has maintained throughout that this request stands independent of his ability to perform the essential functions of his job.

Second, Union Pacific misconstrues the thrust of the Eighth Circuit's Manual of Model Civil Jury Instructions as they relate to reasonable accommodations.  Union Pacific notes that these

instructions provide, in part, that to bring a reasonable accommodation claim, a plaintiff must demonstrate that he "could have performed the essential functions of the (specify job held or position sought) at the time the defendant (specify action(s) taken with respect to the plaintiff) if the plaintiff had been provided with (specify accommodation(s) identified by the plaintiff)." Model Civ. Jury Instr. 8th Cir. 9.42 (2019).  However, Union Pacific fails to acknowledge that the instructions explicitly note that "[t]his [essential functions] element is designed to submit the issue of whether the plaintiff is a 'qualified individual' under the ADA."  *Id.* at 9.42 n.5.  Here, in its moving papers, Union Pacific states that it has expressly assumed the issue of whether Mr. Hopman is a "qualified individual" under the ADA for purposes of summary judgment, so the Court is not inclined to examine this issue at this stage of the litigation (Dkt. No. 54-1, at 20). Further, based on the language quoted above and persuasive cases examining these types of claims, it is not all together clear that this requirement applies to the type of ADA claim Mr. Hopman brings.

Regardless, the Committee Comments to the instructions explicitly define the term "accommodation" as "making modifications to the work place that allows a person with a disability to perform the essential functions of the job *or allows a person with a disability to enjoy the same benefits and privileges as an employee without a disability*."  Model Civ. Jury Instr. 8th Cir. 9.42 (2019) (emphasis added).  This definition makes plain that an accommodation need not be related to the essential functions of an employee's job and aligns with Mr. Hopman's request for an accommodation that allows him to enjoy equal benefits and privileges of employment, which he contends here includes the right to work without the burden and pain of PTSD (Dkt. No. 59, at 16-21).

Third, normal statutory construction indicates that reasonable accommodation requests are not solely tied to the essential functions of an employee's job. The ADA's implementing regulations provide three possible definitions of the term "reasonable accommodation." 29 C.F.R. § 1630.2(o)(1)(i)-(iii). The second definition states that a reasonable accommodation means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The other two definitions do not reference essential functions. *See id.* § 1630.2(o)(1)(i), (iii). The Court finds that the ADA permits Mr. Hopman to seek from Union Pacific a reasonable accommodation "to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." *Id.* § 1630.2(o)(1)(iii). Interpreting "reasonable accommodation" to relate necessarily to the essential functions of an employee's job would render the other definitions meaningless, and the Court will not adopt an interpretation "to render general words meaningless." *United States v. Alpers*, 338 U.S. 680, 682 (1950); *see also Nachman Corp. v. Pension Ben. Guar. Corp.*, 446 U.S. 359, 384-85 (1980).

Fourth, many courts have recognized, in accordance with the ADA and its implementing regulations, that an employee ably performing the essential functions of his job might still need a reasonable accommodation to enjoy equal benefits and privileges of employment. *See, e.g.*, *Hill v. Assocs. for Renewal in Educa., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018), *cert denied*, 139 S. Ct. 1201 (2019) ("A reasonable jury could conclude that forcing [plaintiff] to work with pain when that pain could be alleviated by his requested accommodation violates the ADA."); *Gleed v. AT&T Mobility Servs., LLC*, 613 Fed. App'x 535, 538-39 (6th Cir. 2015) (rejecting an employer's argument that providing a chair to an employee who experienced pain from prolonged standing

was not a reasonable accommodation because "the ADA's implementing regulations require employers to provide reasonable accommodations not only to enable an employee to perform his job, but also to allow the employee to 'enjoy equal benefits and privileges of employment as are enjoyed by . . . similarly situated employees without disabilities.'" (quoting 29 C.F.R. § 1630.2(o)(1)(iii)); *Sanchez v. Vilsack*, 695 F.3d 1174, 1182 (10th Cir. 2012) ("[W]e conclude that a transfer accommodation for medical care or treatment is not per se unreasonable, even if an employee is able to perform the essential functions of her job without it."); *Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir. 1993) ("[E]mployers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job."); *Martin v. Neb. Methodist Health Sys., Inc.*, No. 8:17-CV-121, 2019 WL 802743, at *6 (D. Neb. Feb. 21, 2019) ("The need for a reasonable accommodation is not to be viewed narrowly by considering only an employee's ability to perform the essential functions of employment. A reasonable accommodation may also be necessary to allow a disabled employee 'to enjoy equal benefits and privileges of employment as are enjoyed by [the employer's] other similarly situated employees without disabilities.'" (quoting 29 C.F.R. § 1630.2(o)(1)(iii))); *Alonzo-Miranda v. Sclumberger Tech. Corp.*, No. 5:13-CV-1057, 2015 WL 13768973, at *2 (W.D. Tex. June 11, 2015) ("[A]n accommodation may enable the employee to 'enjoy equal benefits and privileges of employment' even if it has no effect on the employee's ability to do the job."). These courts' opinions accord with the third definition of "reasonable accommodation" in the ADA's implementing regulations and Mr. Hopman's stated reason for seeking an accommodation. *See* 29 C.F.R. § 1630.2(o)(1)(iii). Accordingly, the Court concludes that it cannot find in favor of Union Pacific as a matter of law on this issue. Despite being able to perform the essential functions of his job, Mr. Hopman may request an accommodation from Union Pacific to enjoy equal benefits

22

and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

Separately, Union Pacific argues that Mr. Hopman has not demonstrated that there are any equal benefits or privileges of employment that he is unable to enjoy without an accommodation and that his alleged disability does not prevent him from enjoying anything Union Pacific has to offer (Dkt. Nos. 54-1, at 19; 61, at 5-9). The EEOC has provided some guidance as to what "equal benefits and privileges of employment" means:

> The ADA requires employers to provide reasonable accommodations so that employees with disabilities can enjoy the "benefits and privileges of employment" equal to those enjoyed by similarly-situated employees without disabilities. Benefits and privileges of employment include, but are not limited to, employer-sponsored: (1) training, (2) services (e.g., employee assistance programs (EAP's), credit unions, cafeterias, lounges, gymnasiums, auditoriums, transportation), and (3) parties or other social functions (e.g., parties to celebrate retirements and birthdays, and company outings). If an employee with a disability needs a reasonable accommodation in order to gain access to, and have an equal opportunity to participate in, these benefits and privileges, then the employer must provide the accommodation unless it can show undue hardship.

Enforcement Guidance: Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (2002), https://www.eeoc.gov/policy/docs/accommodation.html. The definition of "equal benefits and privileges of employment" in these guidelines aligns with the examples of "equal access to the benefits and privileges of employment" found in Union Pacific's Reasonable Accommodation Policy, which include "training, attending company sponsored events, [and] access to lunch and coffee rooms" (Dkt. No. 59-6, at 12). Here, Union Pacific specifically argues that a "benefit" or "privilege" must be "a tangible service offered by an employer – such as training – that the employee cannot access without an accommodation." (Dkt. No. 61, at 2).

The Court is not inclined to grant judgment as a matter of law in favor of Union Pacific on this point at this stage of the litigation. Though the EEOC has identified some examples of equal benefits and privileges of employment, that list is not all-inclusive. Union Pacific does not cite controlling authority for this proposition and does not meaningfully distinguish the holdings from other courts that have permitted claims like Mr. Hopman's to proceed. Mr. Hopman contends that he seeks the equal benefit and privilege of employment of working without suffering the worst symptoms of his disability. The record evidence offers numerous examples of the ways in which Mr. Hopman contends that Atlas helps to alleviate Mr. Hopman's pain and suffering from his PTSD. Mr. Hopman contends that, due to his disabilities, he needed Atlas with him to work—as other employees do—without suffering from the flashbacks, migraines, anxiety, and depression that have accompanied his PTSD. Even though Mr. Hopman is able to perform the essential functions of his job without accommodation, from the record evidence before it, the Court finds that "[a] reasonable jury could conclude that forcing [Mr. Hopman] to work with pain when that pain could be alleviated by his requested accommodation violates the ADA." *Hill*, 897 F.3d at 239 (determining that "ARE's assertion that Hill did not need the accommodation of a classroom aide because he could perform the essential functions of his job without accommodation 'but not without pain,' [wa]s unavailing. A reasonable jury could conclude that forcing Hill to work with pain when that pain could be alleviated by his requested accommodation violates the ADA." (citations omitted)); *see also Gleed*, 613 Fed. App'x at 539 (rejecting the employer's argument that, as a matter of law, if plaintiff "was physically capable of doing his job – no matter the pain or risk to his health – then it had no obligation to provide him with any accommodation, reasonable or not"); *Alonzo-Miranda*, 2015 WL 13768973, at *2 (rejecting the employer's argument post-trial that the ADA requires accommodations only when they are necessary to perform essential

functions of the job; concluding that "an accommodation may enable the employee to 'enjoy equal benefits and privileges of employment' even if it has no effect on the employee's ability to do the job").

Viewing the record evidence in the light most favorable to Mr. Hopman, the Court finds that a reasonable juror could conclude that Mr. Hopman has a disability and requested from Union Pacific a reasonable accommodation to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.  Accordingly, at this stage of the litigation, the Court denies Union Pacific's motion for summary judgment, rejecting Union Pacific's arguments that Mr. Hopman was not entitled to request and did not need as a matter of law the requested accommodation.

### 2.    Reasonableness Of Requested Accommodation

Union Pacific also argues that Mr. Hopman's requested accommodation was not reasonable as a matter of law (Dkt. No. 54-1, at 23-24).  Specifically, Union Pacific maintains that a reasonable accommodation must assist the plaintiff in performing the duties of his job, rendering Mr. Hopman's requested accommodation unreasonable as it is unrelated to his limitations or his ability to perform his job duties because he has no limitations (*Id.*, at 23).  Mr. Hopman counters whether an accommodation is reasonable is ordinarily a fact issue for the jury and that the record evidence demonstrates the reasonableness of his request (Dkt. No. 59, at 23-25).

Employers are "only obligated to provide a *reasonable* accommodation, not the particular one that [an employee] request[s]."  *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 942 (8th Cir. 2019) (emphasis in original) (citations omitted).  However, upon an employer's motion for summary judgment an employee "need only show that an 'accommodation' seems reasonable on its face, *i.e.*, ordinarily or in the run of cases."  *Barnett*, 535 U.S. at 401 (citations omitted).  "[I]n

order for the accommodation to be reasonable, the request must relate to the individual's disability." *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 410 (8th Cir. 2018) (citations omitted). "A reasonable accommodation [also] imposes no undue burden on the employer." *Peebles*, 354 F.3d at 767; *see also Gardea v. JBS USA, LLC*, 915 F.3d 537, 541 (8th Cir. 2019) ("Accommodations are not reasonable if an employer 'can demonstrate that the accommodation would impose undue hardship on the operation of the business.'" (quoting 42 U.S.C. § 12112(5)(A)).

To the extent Union Pacific argues that a reasonable accommodation to permit an employee to enjoy the benefits and privileges of his job must as a matter of law relate to the essential functions of the job, the Court rejects that argument for the reasons explained.  Likewise, to the extent Union Pacific asserts that as a matter of law the accommodation Mr. Hopman seeks does not qualify as one to permit him to enjoy equal benefits and privileges of employment, the Court rejects that argument for the reasons explained.

Here, the Court must view the record evidence in the light most favorable to Mr. Hopman and, in doing so, determines that there is record evidence from which a reasonable juror could conclude the following:  Mr. Hopman's requested accommodation costs no money and violates no rule; Union Pacific granted Mr. Birchfield the same accommodation Mr. Hopman seeks for several years, and it created no problems; Mr. Birchfield used his dog successfully to mitigate his anxiety disorder; Union Pacific uses its own dogs to assist personnel on and around trains; Union Pacific performs a thorough individualized assessment of its dogs and handlers before approving them and could conduct such an assessment with Mr. Hopman and Atlas; Union Pacific's dogs have caused no problems; yard dogs or stray dogs are common at Union Pacific worksites and not

prohibited; and Union Pacific has not demonstrated any undue hardship it would suffer in accommodating Mr. Hopman's request.

Given this record evidence, the Court finds that a reasonable juror could conclude that Mr. Hopman's requested accommodation "seems reasonable on its face." *Barnett*, 535 U.S. at 401. Accordingly, the Court denies Union Pacific's motion for summary judgment on the grounds that Mr. Hopman's requested accommodation was not reasonable as a matter of law.

### 3.      Requisite Adverse Employment Action

Union Pacific also suggests that, as a matter of law, Mr. Hopman cannot demonstrate the requisite adverse employment action to maintain his claims. The Eighth Circuit has held that in failure to accommodate cases "there is no requirement to demonstrate any adverse action other than the failure to accommodate itself." *Mershon v. St Louis Univ.*, 442 F.3d 1069, 1077 n.5 (8th Cir. 2006) (citing *Peebles*, 354 F.3d at 766). "An employer is also liable for committing an adverse employment action if the employee in need of assistance actually requested but was denied a reasonable accommodation." *Dick*, 826 F.3d at 1060 (citing *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 675 (8th Cir. 2001)). Union Pacific denied Mr. Hopman's request to bring Atlas to work with him on the grounds that his request was neither necessary nor reasonable, and record evidence construed in the light most favorable to Mr. Hopman creates disputed genuine issues of material fact regarding Union Pacific's assertions.

To the extent Union Pacific also asserts that it offered to Mr. Hopman an alternative reasonable accommodation in the form of a yard job which would prevent him from having to spend nights away from home and Atlas and that Mr. Hopman took that job, the Court cannot grant Union Pacific judgment as a matter of law based on the record before it. Based on the record evidence before the Court construed in favor of Mr. Hopman, at a minimum, there are genuine

issues of material fact in dispute regarding whether this was a reasonable alternative offer on the part of Union Pacific based on Mr. Hopman's request, what Mr. Hopman made known to Union Pacific, and what the record evidence demonstrates about Union Pacific's decision making process.  Further, there are genuine issues of material fact in dispute regarding whether Union Pacific granted to Mr. Hopman with the yard-job offer anything over-and-above that to which Mr. Hopman already was entitled by virtue of his position.  For these reasons, the Court denies summary judgment as a matter of law in favor of Union Pacific on this point.

### IV.    Conclusion

The Court finds, based on the record evidence, that a reasonable juror could conclude that Mr. Hopman has demonstrated a prima facie case of discrimination by requesting a reasonable accommodation to enable him with his disability to enjoy equal benefits and privileges of employment at Union Pacific as are enjoyed by its other similarly situated employees without disabilities.  Accordingly, the Court denies Union Pacific's motion for summary judgment (Dkt. No. 54).

So ordered this 26th day of May, 2020.

Kristine G. Baker
United States District Court Judge

28