**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**PERRY HOPMAN**                                                                                **PLAINTIFF**

**v.**                               **Case No. 4:18-cv-00074-KGB**

**UNION PACIFIC RAILROAD**                                             **DEFENDANT**

**ORDER**

Plaintiff Perry Hopman alleges that Union Pacific Railroad ("Union Pacific") discriminated against him due to his disability and failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA), 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. § 794, *et seq*. A trial in the case is currently scheduled to begin on September 28, 2020. Before the Court are the following pretrial motions: Union Pacific's motion for leave to amend its answer (Dkt. No. 101) and Mr. Hopman's motion to strike Union Pacific's unpled affirmative defense (Dkt. No. 103). Mr. Hopman has responded to Union Pacific's motion for leave to file an amended answer (Dkt. No. 108). Union Pacific has responded to Mr. Hopman's motion to strike (Dkt. No. 122), and Mr. Hopman has replied to the response (Dkt. No. 128). The Court conducted a telephonic hearing on pretrial matters on September 18, 2020.

Union Pacific moves for leave to amend its answer to raise the affirmative defense of direct threat and to assert "all applicable damages caps, including the caps found in 42 U.S.C. § 1981a." (Dkt. No. 101).[1] Union Pacific states that in his trial brief Mr. Hopman noted its failure to plead affirmatively the direct threat affirmative defense in its answer, and it seeks to "remedy this

---

[1] Mr. Hopman does not oppose Union Pacific's attempt to amend its answer to plead the statutory cap on damages. Union Pacific asserts, and the Court agrees, that it is entitled to rely on this defense regardless of whether it is affirmatively pled (Dkt. No. 101, at 6-7).

oversight" by filing an amended answer (*Id*., at 1). Union Pacific contends that it did not waive the affirmative defense but has "constructively pled it" and "once it learned of that error it immediately sought leave to amend." (*Id*., at 1, 5). Union Pacific argues that the amendment is of "vital importance" because it denied Mr. Hopman's request for an accommodation in 2016 and 2017 based on the direct threat defense and because it raised the defense before the Equal Employment Opportunity Commission prior to the lawsuit being filed, which demonstrates according to Union Pacific that Mr. Hopman has known about the defense for "more than four years." (*Id*., at 5-6). It asserts that Mr. Hopman would not be prejudiced by the amendment because he "took extensive discovery on the defense" including deposing Union Pacific's "designated expert" on the defense, Patrick Graham (*Id*., at 2-4).

Mr. Hopman opposes the motion with two filings. First, after receiving Union Pacific's trial brief, Mr. Hopman moved to strike the affirmative defense of direct threat on the grounds that Union Pacific never raised the defense in its answer (Dkt. No. 103). In his motion to strike, Mr. Hopman asserts that Union Pacific's attempt to amend constructively its answer to raise the affirmative defense of direct threat would be futile because at the time it denied the requested accommodation it did not perform an individual assessment of Mr. Hopman's ability to perform safely the essential functions of the job with his requested accommodation (*Id*., at 2). He also argues that there is no version of the defense with a lesser burden, that the assertion of the affirmative defense on the eve of trial is unfair surprise, and that Union Pacific has not shown good cause under *Sherman v. Winco Fireworks, Inc.*, 522 F.3d 709 (8th Cir. 2008), for the Court to allow the amendment at this stage of the litigation (*Id*., at 4-8).

Union Pacific responds arguing: Mr. Hopman is judicially estopped from moving to strike its direct threat affirmative defense or objecting to its motion to amend; Mr. Hopman's reliance on

*Sherman* is misplaced; the amendment is not futile; and safety is already an issue in the case (Dkt. No. 122).

Mr. Hopman also responds to oppose Union Pacific's motion for leave to amend to add the affirmative defense of direct threat (Dkt. No. 108). He argues: Union Pacific has failed to show good cause under *Sherman* to justify the untimely motion; the amendment is futile because Union Pacific did not perform an individualized assessment of Mr. Hopman in order to establish a direct threat; and there is no version of the defense that makes it less futile (*Id.*, at 1-5).

I.   **Legal Standard**

Federal Rules of Civil Procedure 15 and 16 govern this Court's analysis. Under Rule 15(a)(2), "a party may amend its pleadings only with the opposing party's written consent or the court's leave." The Court should give leave freely when justice so requires, but "parties do not have an absolute right to amend their pleadings . . . ." *Sherman*, 532 F.3d at 715. When the moving party "is guilty of undue delay, bad faith, dilatory motive, or if permission to amend would unduly prejudice the opposing party," then the Court has the discretion to deny the motion. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994). "There is no absolute or automatic right to amend." *Id.*

The Court is required to issue a scheduling order, which includes deadlines to amend the pleadings, complete discovery, and file motions. Fed. R. Civ. P. 16(b)(1), (3)(A). Under Rule 16(b)(4), "a schedule may be modified only for good cause and with the judge's consent." When a party seeks leave to amend a pleading outside the deadline established by the court's scheduling order, the party must satisfy the good-cause standard of Rule 16(b)(4) rather than the more liberal standard of Rule 15(a). *Sherman*, 532 F.3d at 715. The "interplay between Rule 15(a) and Rule 16(b) is settled in this circuit." *Id.* at 716. "If a party files for leave to amend outside of the court's

3

scheduling order, the party *must* show cause to modify the schedule." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008) (citing Fed. R. Civ. P. 16(b)) (emphasis added).  In these circumstances, "the application of Rule 16(b)'s good-cause standard is not optional." *Sherman*, 532 F.3d at 716.  "To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *Id.* (internal quotation marks omitted).

The primary measure of Rule 16's good cause standard is the moving party's diligence in attempting to meet the case management order's requirements.  *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *see also* Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").  "In short, 'good cause' for a belated amendment under Rule 16(b) requires a showing that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner." *Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 590 F. Supp. 2d 1093, 1100 (N.D. Iowa 2008) (citing *Sherman*, 532 F.3d at 716–18).

The existence or degree of prejudice to the party opposing the modification may also be relevant, but the Court need not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.  *Sherman*, 532 F.3d at 717.  The Eighth Circuit's cases reviewing Rule 16(b) rulings "focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order." *Id.* (determining no good cause for defendants' motion to amend to plead an affirmative defense 17 months after the deadline where "no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more

4

viable after the scheduling deadline for amending pleadings."); *Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2005) (affirming the district court's denial of plaintiffs' motion for leave to amend their complaint two months after the deadline because plaintiffs had eight months to request an amendment of the scheduling order and "knew of the claims they sought to add when they filed the original complaint . . . ."); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (affirming the district court's denial of plaintiff's untimely motion to amend her complaint to add a claim for punitive damages because she provided no reason why punitive damages could not have been earlier alleged or why her motion to amend was filed so late).

**II.      Analysis**

    **A.      Good Cause**

Union Pacific acknowledges that Eighth Circuit precedent requires that it show diligence in meeting the Court's scheduling order in order to establish good cause (Dkt. No. 101, at 4-5). Instead of focusing on diligence, Union Pacific asks the Court to follow the "unfair surprise" standard in Federal Rule of Civil Procedure 8(c) (*Id.*, at 2-4). As set forth above, at this stage of litigation the Court must analyze Union Pacific's motion under Federal Rules of Civil Procedure 15 and 16. Union Pacific also asks that this Court base its good cause analysis on a non-binding, unpublished district court opinion to find that it can give equal weight to factors other than diligence to permit amendment beyond the Court's scheduling order (Dkt. No. 101, at 4-5 (citing *Portz v. St. Cloud State Univ.*, No. CV 16-1115 (JRT/LIB), 2017 WL 3332220, at *3) (D. Minn. 2017)). Union Pacific urges the Court to adopt a four-factor test implemented by the Fifth Circuit to analyze good cause (*Id.*, at 5 (citing *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) ("In determining good cause, we consider four factors: '(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential

5

prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.'" (citation omitted)).  The Court declines to adopt the Fifth Circuit's four-factor, good cause test and instead follows Eighth Circuit precedent to determine whether Union Pacific has acted with diligence in order to establish good cause to amend its answer.

The Court issued a scheduling order in this case requiring amendments to pleadings no later than July 2, 2018 (Dkt. No. 13, at 1).  Union Pacific's motion to amend comes more than two years after the deadline set by the Court and only two weeks prior to trial.  Union Pacific states that it believed it had asserted a direct threat defense and that, once it learned of its error after reading Mr. Hopman's trial brief, it immediately sought leave to amend.  The record does not support Union Pacific's version of the facts.  Union Pacific filed a motion for summary judgment in June 2019 in which it stated that it did "not move for summary judgment under a theory of direct threat," and that "Hopman cannot meet his initial burden and there is no need to reach the direct threat inquiry." (Dkt. No. 54-1, at 6 n.1).  In his response to the motion for summary judgment filed July 18, 2019, Mr. Hopman stated, "[a]lthough UP continually states that Hopman was a 'direct threat,' it did not plead this affirmative defense in this case and the time for adding claims and defenses expired long ago.  This affirmative defense is not in the case." (Dkt. No. 59, at 8 n.2).

Mr. Hopman notified Union Pacific as early as July 18, 2019, that it had not pled the affirmative defense of direct threat, yet Union Pacific waited over a year to move to amend its answer.  The Court finds based on the record that Union Pacific did not act with the diligence required for the Court to find good cause to grant its request for the untimely amendment.  Having found that Union Pacific did not act diligently in meeting the Court's deadline for amendments, the Court need not consider prejudice.  *Sherman*, 532 F.3d at 717.

### B. Other Considerations

Mr. Hopman also asserts that Union Pacific's proposed amended answer to assert the affirmative defense of direct threat would be futile. *See U.S. ex rel. Lee v. Fairview Health System*, 413 F.3d 748, 749 (8th Cir. 2005) (futility is a valid basis for a court to deny leave to amend); *see also Trademark Medical, LLC v. Birchwood Laboratories, Inc.*, 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014) ("A court may properly deny a motion to amend a pleading if the amendment would be futile.") (citing *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)). An amendment is futile, for example, if the amended pleading could not withstand a motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure. *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 784 (8th Cir. 2008).

To establish the affirmative defense of direct threat, Union Pacific must prove a significant risk of substantial harm to the health or safety of Mr. Hopman or other persons that cannot be eliminated by reasonable accommodation. 42 U.S.C. § 12111(3); 29 C.F.R. § 1630.2(r); *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571 (8th Cir. 2007). The party asserting the affirmative defense of direct threat must prove that, at the time it took the action that it justifies with the defense, it had conducted "an individualized direct threat analysis" that relied on "the 'best current medical or other objective evidence' in order to 'protect disabled individuals from discrimination based on prejudice, stereotypes, or unfounded fear.'" *E.E.O.C. v. Wal-Mart Stores, Inc.*, 477 F.3d at 571 (quoting *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1248 (9th Cir. 1999)(citing *Bragdon v. Abbott,* 524 U.S. 624, (1998); *Sch. Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, (1987))). Factors an employer must consider in performing an individualized direct threat analysis include the duration of risk, the nature and severity of the potential harm, the likelihood that the potential harm will occur, and the imminence of the potential harm. *Id.*

In his motion to strike the affirmative defense of direct threat, Mr. Hopman points to four Union Pacific witnesses who testified that Union Pacific did not conduct an individualized assessment of Mr. Hopman's request for an accommodation before denying the request (Dkt. No. 103, at 3-4). Rodney Doerr testified at his Federal Rule of Civil Procedure 30(b)(6) deposition that Union Pacific never conducted an assessment of Mr. Hopman's service dog Atlas to see whether he was a risk to anybody (Dkt. No. 103-1, at 5). When asked whether he was aware of anyone at Union Pacific who conducted an individualized assessment of Mr. Hopman and Atlas, Mr. Doerr stated, "I am not aware of an individual that provided such an assessment, or conducted, excuse me, such an assessment." (Dkt. No. 108-1, at 2). Mr. Doerr went on to testify than no one analyzed the probability that something bad would happen when measured against the seriousness of the harm (Dkt. No. 108-1, at 1). He clarified that, "[t]hat group that I keep talking about, we offered all of our expert opinions to arrive at a decision. That is an assessment as I define it." (*Id*.).

Union Pacific employee Jay Everett, who made the decision to reject Mr. Hopman's request for an accommodation, testified that he made his decision without having met, discussed, e-mailed, or communicated with Mr. Hopman in any way (Dkt. No. 103-2, at 2). Mr. Everett further testified that, to his knowledge, no one else from Union Pacific performed any kind of a fitness-for-duty evaluation of how well Mr. Hopman and his service dog would work together on the railroad (*Id*., at 3). Union Pacific employee Debra Gengler testified in response to a question about whether Union Pacific ever conducted an individualized assessment of Perry and Atlas that, "[s]o if – of that means, in your question, that did we observe Mr. Hopman and the dog together at any point in time, I would say that didn't occur, by what I'm reading on the eHealthSafe." (Dkt. No. 103-3, at 2). Finally, Union Pacific's designated expert on health and safety issues in the railroad environment, John Holland, M.D., testified that to his knowledge no one at Union Pacific

8

ever conducted any kind of individualized assessment with Perry Hopman and his service dog, Atlas, to determine the extent of the help that the service dog gives to Mr. Hopman (Dkt. No. 103-4, at 2).

Union Pacific argues that Mr. Hopman's requested accommodation, rather than his disability, presents the direct threat and that it can prove the affirmative defense by showing that Mr. Hopman's proposed accommodation would jeopardize the health or safety of its employees (Dkt. No. 90 at 10-11). Union Pacific points to *Turner v. Hershey Chocolate United States*, 440 F.3d 604, 615 (3d Cir. 2006), to support its position (*Id.*, at 11).

In *Turner*, the district court granted the defendant's motion for summary judgment. The Third Circuit Court of Appeals reversed the district court's grant of summary judgment, concluding in pertinent part that the record supporting defendant Hershey's defense that the proposed accommodation was unreasonable or would cause an undue hardship because of safety and health-related implications was not well developed. In assessing whether Turner's proposed accommodation was "reasonable," it found, based on the record as it existed, that it could not conclude as a matter of law that the proposed accommodation posed a "'direct threat' to its employees or place[d] an 'undue hardship' on Hershey." *Turner*, 440 F.3d at 615. The court found that it was an "open question" of material fact that must be decided at trial whether Turner could perform the "essential functions of her position with reasonable accommodation," and Hershey would have an opportunity at trial to defeat the claim by showing that her proposed "accommodation would jeopardize the health or safety of its employees." *Id.*

The Court is not willing to find that the non-binding *Turner* decision set a new standard for proving the affirmative defense of direct threat in the Eighth Circuit that eliminates the requirement for an employer to perform an individualized assessment prior to denying a reasonable

9

accommodation. *See* 8th Cir. Civil, Jury Instr., § 9.61 (2013) ("The determination that a direct threat exists must be based on an individualized assessment of the plaintiff's present ability to safely perform the essential functions of the job."). Importantly, the *Turner* court's discussion of "direct threat" came in the context of its larger discussion regarding whether Hershey had met its burden to demonstrate that the requested accommodation was "unreasonable or would cause an undue hardship." *Id.* at 614. Additionally, the *Turner* court cites to *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78-79, 84-85 (2002), to define direct threat to health and safety consistently with the regulatory definition of "significant risk of substantial harm." *Turner*, 440 F.3d at 615 (citing *Echazabal*, 536 U.S. at 78-79, 84-85) (an employer is not required to accommodate an employee if the accommodation threatens the health or safety of that employee or other employees) (other citation omitted)).

In raising the issue of judicial estoppel in its response to the motion to strike, Union Pacific urges the Court to place great weight on an email written by Mr. Hopman's counsel during discovery in March, 2019. In the email, counsel stated, "I think that Perry will need to see the Birchfield records before he testifies, since he will be asked about the reasonableness of the accommodation, and UP's claim of undue burden and direct threat." (Dkt. Nos., 122 at 2-4, 43-3, at 2). Union Pacific takes the position that the email is relevant to the unpled affirmative defense of direct threat and asserts that the email is Mr. Hopman's admission that the direct threat defense "was being litigated and that Hopman required discovery to litigate it fully." (Dkt. No. 122, at 3). Essentially, Union Pacific contends that the Court granted Mr. Hopman certain discovery based on this position. There are several factors for a court to consider in determining whether judicial estoppel applies. *See Schaffart v. ONEOK, Inc.*, 686 F.3d 461, 469 (8th Cir. 2012).

The Court finds Union Pacific's argument on judicial estoppel in this context is misplaced. Union Pacific takes the position that inquiry into safety threats remains relevant, regardless of the Court's ruling on the direct threat affirmative defense (Dkt. No. 122, at 2).  This belies Union Pacific's assertion that Mr. Hopman somehow gained an unfair advantage by conducting discovery on this matter.  Further, as Mr. Hopman explains, in 2016 and 2017, prior to the lawsuit being filed, Union Pacific denied Mr. Hopman's request for an accommodation based on its conclusion that the accommodation would result in a direct threat to health and safety (Dkt. Nos. 54 at 6, 10, 101 at 5-6).  Accordingly, the Court finds that it was reasonable for Mr. Hopman to want to conduct limited discovery on these issues, even though Union Pacific had not raised the direct threat affirmative defense in its answer in the litigation.  The Court also finds that it was also reasonable for Mr. Hopman to conclude, after he made Union Pacific explicitly aware of its failure to plead the affirmative defense in his response to the motion for summary judgment and after deposing several witnesses who stated that Union Pacific did not conduct an individualized assessment of Mr. Hopman's requested accommodation, that Union Pacific did not intend to pursue the affirmative defense of direct threat.  Mr. Hopman's counsel's email requesting records prior to a discovery deposition was not an admission that Union Pacific had pled the affirmative defense of direct threat.

In an apparent effort to cure what Mr. Hopman characterizes as Union Pacific's failure to conduct an individualized assessment of Mr. Hopman's accommodation request prior to rejecting his requested accommodation, Union Pacific argues that "[t]here is ample evidence in the record that Union Pacific conducted an extensive analysis of Hopman's requested accommodation and the safety threat that it posed to Union Pacific and the public." (Dkt. No. 122, at 5 (citing Dkt. No. 55, ¶¶ 20-27)).  Union Pacific does not explain to the Court how it should reconcile the under-oath

statements of Union Pacific's corporate and Federal Rule of Civil Procedure 30(b)(6) witnesses cited by Mr. Hopman with Union Pacific's passing reference to paragraphs in a prior Court filing. Union Pacific also points to Union Pacific employee Rodney Doerr's offer in mid-2018 to "meet with Hopman to see how he would address specific safety concerns, but he cancelled the meeting." (Dkt. No. 122, at 5-6 (citing Dkt. No. 55, ¶ 33)). The meeting proposed by Mr. Doerr cannot serve as an attempt by Union Pacific to conduct an individualized assessment of Mr. Hopman's accommodation request, because Union Pacific did not propose such a meeting until well after it made its decision to deny the accommodation and months after Mr. Hopman filed this lawsuit in January 2018 (Dkt. Nos. 1, at 1; 55, ¶ 33). The parties did not address this issue at the summary judgment stage, and they are set to begin the trial Monday, September 28, 2020.

Having found that Union Pacific did not act diligently in meeting the Court's deadline for amendments with respect to its proposed direct threat affirmative defense, the Court need not consider prejudice or futility. *Sherman*, 532 F.3d at 717. The Court declines to do so here, except to the extent addressed in this Order.

### III.    Conclusion

Consistent with the terms of this Order, the Court denies Union Pacific's motion for leave to amend its answer (Dkt. No. 101) and grants Mr. Hopman's motion to strike Union Pacific's unpled affirmative defense of direct threat (Dkt. No. 103).

So ordered this 24th day of September, 2020.

*/s/ Kristine G. Baker*
Kristine G. Baker
United States District Judge