**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

PERRY HOPMAN                                                                           PLAINTIFF

v.                                          **Case No. 4:18-cv-00074-KGB**

**UNION PACIFIC RAILROAD**                                                  **DEFENDANT**

<u>**ORDER**</u>

Before the Court is defendant Union Pacific Railroad's ("Union Pacific") renewed motion for judgment as a matter of law pursuant Federal Rules of Civil Procedure 50, 39, and 52 (Dkt. No. 193).  At trial, Union Pacific timely moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 prior to submission of the case to the jury.  Fed. R. Civ. P. 50(a)(1)(2). Plaintiff Perry Hopman responded to the motion for judgment as a matter of law at trial and responded to Union Pacific's renewed motion for judgment as a matter of law (Dkt. No. 196).  Mr. Hopman also filed a motion to strike the declaration of Robert Carty and photographs that were attached as an exhibit to Union Pacific's renewed motion for judgment as a matter of law (Dkt. No. 197).  Union Pacific replied in support of its renewed motion for judgment as a matter of law and responded to the motion to strike (Dkt. Nos. 205; 206).  Mr. Hopman replied in support of his motion to strike (Dkt. No. 207).  Also before the Court is Mr. Hopman's motion for equitable relief (Dkt. No. 200).  Union Pacific has responded to Mr. Hopman's motion for equitable relief (Dkt. No. 208).  Mr. Hopman has replied in support of his motion for equitable relief (Dkt. No. 209).

For the reasons stated below, the Court grants Union Pacific's renewed motion for judgment as a matter of law (Dkt. No. 193).  The Court grants Mr. Hopman's motion to strike (Dkt. No. 197).  The Court denies Mr. Hopman's motion for equitable relief (Dkt. No. 200).

I.     **Introduction**

Mr. Hopman brings this action against Union Pacific under Section 504 of the Rehabilitation Act of 1973, as amended, ("Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Dkt. No. 4, ¶ 3).   Mr. Hopman alleges that he was discriminated against and denied a reasonable accommodation in violation of both the Rehabilitation Act and the ADA (*Id.*, ¶¶ 18-26).   Mr. Hopman maintains that he can perform the essential functions of his job (*Id*, ¶ 9).   Mr. Hopman asserts, however, that he needs the requested accommodation of working alongside his service dog, Atlas, in order to enjoy equal benefits and privileges of employment of working without the burden and pain of his post-traumatic stress disorder ("PTSD") (*Id*., ¶ 12).

Union Pacific moved for summary judgment (Dkt. No. 54).   Union Pacific argued that as a matter of law Mr. Hopman was unable to demonstrate that he was entitled to a reasonable accommodation or suffered an adverse employment decision and that Union Pacific should have judgment granted in its favor accordingly (Dkt. No. 54-1, at 17-24).   Mr. Hopman responded premising his claims on a benefits and privileges of employment reasonable accommodation analysis and stating that "[a]ll Hopman seeks is the same right other employees already have – to work without the continual and unrelenting burden and pain of PTSD." (Dkt. No. 59, at 17-21).   Union Pacific in reply argued that Mr. Hopman failed to identify any "benefit" or "privilege" of employment that Union Pacific offered that he could not access without an accommodation (Dkt. No. 61, at 1-9).

The Court denied Union Pacific's motion for summary judgment (Dkt. No. 72).   The Court determined that Mr. Hopman was able to move forward with his reasonable accommodation claim even though he was able to perform the essential functions of his job (*Id.*, at 19-23).   Viewing the

limited record evidence available to the Court at that stage of the litigation in the light most favorable to Mr. Hopman, the Court determined on the record before it that "a reasonable juror could conclude that Mr. Hopman has a disability and requested from Union Pacific a reasonable accommodation to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities" (*Id.*, at 25). Union Pacific filed a motion for reconsideration, or in the alternative, certification under 28 U.S.C. § 1292(b) (Dkt. No. 74). Mr. Hopman opposed the motion (Dkt. No. 78). The Court denied Union Pacific's motion for reconsideration or in the alternative certification under 28 U.S.C. § 1292(b) (Dkt. No. 92).

The case proceeded to a jury trial in July 2021 (Dkt. Nos. 172; 173; 174; 176). Union Pacific filed a timely motion for judgment as a matter of law (Dkt. No. 177). Mr. Hopman orally opposed the motion (Dkt. No. 179). The Court denied Union Pacific' motion for judgment as a matter of law (*Id.*). The case was submitted to the jury on a verdict form that posed ten questions (Dkt. No. 184). The jury returned a verdict in favor of Mr. Hopman (*Id.*).

## II.    Judgment As A Matter Of Law

### A.    Background

In its renewed motion for judgment as a matter of law, Union Pacific makes two arguments (Dkt. No. 193). First, Union Pacific argues that it is entitled to judgment as a matter of law because Mr. Hopman failed to identify any cognizable "benefit or privilege of employment" that his requested accommodation would enable him to access (*Id.*, at 6-27). Second, Union Pacific argues that, as an independent matter, the Court should reject the jury's answer to "Question Seven"[1]

---

[1] "Question Seven" asked the jury: "Do you find from a preponderance of the evidence. . . [t]hat allowing plaintiff Perry Hopman his requested accommodation would be prohibited by a federal law or regulation?" (Dkt. No. 184, at 7).

because "allowing Atlas to ride in the tight quarters of a cab is prohibited by federal railroad safety regulations." (*Id.*, at 27-42).

Mr. Hopman responds to Union Pacific's renewed motion for judgment as a matter of law (Dkt. No. 196).  Mr. Hopman argues that Union Pacific gives the Court no basis to ignore the controlling statute and well-established case law which hold that employers owe a duty of accommodation for workers with disabilities "when the accommodation will assist them in mitigating the symptoms of a disability." (*Id.*, at 4).  Mr. Hopman contends that the privileges and benefits that workers enjoy do not stem from what the employer chooses to grant as employer-sponsored privileges but from the broad ADA mandate to afford workers with disabilities the same opportunities as those who do not live with disabilities (*Id.*).  As to Union Pacific's second argument, Mr. Hopman contends that Union Pacific did not preserve its challenge to jury "Question Seven" (*Id.*, at 23).

### B.    Legal Standard

Judgment as a matter of law should be rendered when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1); *Stults v. American Pop Corn Co.*, 815 F.3d 409, 418 (8th Cir. 2016).  "In deciding a motion for judgment as a matter of law, the court shall:

> (1) Resolve direct factual conflicts in favor of the nonmovant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

*Stults*, 815 F.3d, at 418 (citing *Jones v. Edwards*, 770 F.2d 739, 740 (8th Cir. 1985)).

C.      Analysis

1.      The Statute And Regulations

The ADA prohibits employers from discriminating against disabled employees "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges or employment." 42 U.S.C. § 12112(a). Under the ADA employers must, among other things, accommodate an employee's known physical or mental limitations. 42 U.S.C. § 12112(b)(5)(A). The ADA does not define "reasonable accommodation." The statute does, however, provide two illustrative examples.

The term "reasonable accommodation" may include—

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.A. § 12111.

Both examples place the burden on the employer to provide an accommodation, and neither example mentions an accommodation to permit an employee to be free from mental or psychological pain as a benefit or privilege of employment.

In passing the ADA, the Senate defined the phrase "other terms, conditions, and privileges of employment" as follows:

(1) recruitment, advertising, and the processing of applications for employment; (2) hiring, upgrading, promotion, awarding of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring; (3) rates of pay or any other form of compensation and changes in compensation; (4) job assignment, job classification organizational structures, position descriptions, lines of progression,

5

and seniority lists; (5) leaves of absence, sick leave or any other leave; (6) fringe benefits available by virtue of employment, whether or not administered [sic] by the covered entity; (7) selection and financial support for training, including apprenticeship, professional meetings, conferences, and other related activities, and selection for leaves of absence to pursue training; and (8) employer-sponsored activities, including social or recreational programs.

This legislative history does not support Mr. Hopman's claim that freedom from mental or psychological pain caused by PTSD is a benefit or privilege of employment that legislators envisioned employers being required to offer employees.

The legislative history also makes clear that reasonable accommodation does not extend to adjustments or modifications for the personal benefits of the individual with a disability nor is an adjustment or modification required to be provided that will assist an individual throughout his or her daily activities on or off the job.  For example, an employer would not have to provide as an accommodation "any amenity or convenience that is not job-related. . ."  29 C.F.R. § Pt. 1630, App. § 1630.9 "Section 1630.9 Not Making Reasonable Accommodation" (citing Senate Report at 31; House Labor Report at 62).

The ADA's implementing regulations provide the following three definitions of the term reasonable accommodation:

(i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or

(ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or

(iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal *benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities*.

29 C.F.R. § 1630.2(o)(1)(i)-(iii) (emphasis added).  Mr. Hopman has consistently argued, and he testified at trial, that he is able to perform the essential functions of his job.  Accordingly, the parties agree that this action involves only the reasonable accommodation definition relating to benefits and privileges of employment.

According to the regulations, the obligation to make reasonable accommodation applies to all services and programs provided in connection with employment and to all non-work facilities provided or maintained by an employer for use by its employees.  Accordingly, the obligation to accommodate is applicable to *employer sponsored* placement or counseling services, and to *employer provided* cafeterias, lounges, gymnasiums, auditoriums, transportation and the like.  29 C.F.R. § Pt. 1630, App. § 1630.9 "Section 1630.9 Not Making Reasonable Accommodation" (emphasis added).  The Equal Employment Opportunity Commission ("EEOC") has also issued a compliance manual which provides examples of what may constitute benefits and privileges of employment.  Each example relates to an employer-sponsored program that the employer offers to its employees.  *See* EEOC Compliance Manual § 902 Introduction, "Reasonable Accommodation Related to the Benefits and Privileges of Employment,"  2006 WL 4673363 at *9-10 (2006).

### 2.    Cases Interpreting The Statute And Regulations

Mr. Hopman contends that the Eighth Circuit has recognized the broad remedial nature of the accommodation obligation including an opportunity to attain "the same level of performance, benefits, and privileges that is available to similarly situated employees who are not disabled." (Dkt. No. 196, at 9 (citing *Keil v. Select Artificials, Inc*., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc) (emphasis added)).  Mr. Hopman also asserts that courts have found that the term benefits and privileges is an expansive rather than restrictive term (*Id*.) (citing *Exby-Stoley v. Bd. of Cnty.*

*Commissioners*, 979 F.3d 784, 818 (10th Cir. 2020) *cert. denied*, No. 20-1357, ___ S.Ct. ___, 2021 WL 2637869 (June 28, 2021), in which the Tenth Circuit Court of Appeals stated that the language "terms, conditions, and privileges of employment" in 42 U.S.C. § 12112(a) "signals that actionable discrimination must 'affect employment or alter the conditions of the workplace,' . . . that the discrimination must relate to some aspect of employment, and also that the ADA's discrimination proscription reaches 'the *entire spectrum*' of employment-based disability discrimination.'" (emphasis in original) (citations omitted)).

The ADA is not, however, without limits. *See Durand v. Fairview Health Servs.*, 902 F.3d 836, 842 (8th Cir. 2018) (determining that, in a case brought under ADA Title III, even though the ADA and Rehabilitation Act are "intentionally broad in scope, . . . they do not require institutions to provide *all* requested auxiliary aids and services." (quoting *Argenyi v. Creighton Univ.*, 703 F.3d 441, 446 (8th Cir. 2013)); *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 430 (6th Cir. 2017) ("The fact that a statute has a broad remedial structure does not allow us to interpret its text in a way that conflicts with its plain language."); *Noeal v. New York City Taxi & Limousine Comm'n*, 687 F.3d 63, 68-69, 71 (2d Cir. 2012) ("Although the ADA is to be interpreted broadly, 'the scope of Title II is not limitless.'") (quoting *Reeves v. Queen City Transp., Inc.,* 10 F. Supp. 2d 1181, 1185 (D. Col. 1998)).  As the Sixth Circuit has stated, "[t]he ADA is not a weapon that employees can wield to pressure the employers into granting unnecessary accommodations or reconfiguring their business operations.  Instead, it protects disabled employees from disability-related mistreatment—no more, no less." *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 809 (6th Cir. 2020).

Union Pacific argues that "benefits and privileges of employment" do not include working without mental or psychological pain (Dkt. No. 193, at 9-15).  At the summary judgment stage,

Union Pacific argued that Mr. Hopman could prove no set of fact or circumstances to support his claim that Atlas was needed to permit Mr. Hopman to enjoy "equal benefits and privileges of employment as are enjoyed by Union Pacific's other similarly situated employees without disabilities." (Dkt. No. 61).   The Court found that Union Pacific did not carry its burden on that point at summary judgment, in part, because there was evidence in the record that Union Pacific had permitted an emotional support animal to accompany an engineer in California on the train in the past, but the record on that point was not developed as to how or why.   As a result, the Court found that Union Pacific had not meaningfully distinguished Mr. Hopman's case from other cases in which other courts had permitted claims like Mr. Hopman's to proceed to trial.

At trial, Mr. Hopman pursued the theory that the benefit and privilege of employment that he is seeking is to work without mental and psychological pain caused by his PTSD and traumatic brain injury.   Unlike in the cases relied on by Mr. Hopman, at trial Mr. Hopman did not identify a corresponding benefit or privilege of employment offered to Union Pacific employees.   There was no evidence presented at trial that Union Pacific offers service animals to its non-disabled employees as a benefit and privilege of employment.   Mr. Hopman's case is distinguishable from the cases in other courts relied upon by Mr. Hopman, and Mr. Hopman has not pointed the Court to any cases to support a claimed right to work without mental or psychological pain.

For example, in *Hill v. Assoc. for Renewal in Educ., Inc.*, 897 F.3d 232, 239 (D.C. Cir. 2018), the employer provided classroom aides to all of the teachers but the disabled plaintiff.   The D.C. Circuit Court of Appeals stated:

> We conclude Hill sufficiently alleged a connection between his disability and the assistance a classroom aide could provide while Hill supervised his students to present a triable issue of fact as to whether A[ssociation for] R[enewal in] E[ducation]'s denial of an aide violated the ADA.   The ADA's purpose in requiring reasonable accommodations is reducing barriers to employment for persons with disabilities.   Therefore, to be "reasonable" under the ADA, an accommodation must

be related to the disability that creates the employment barrier and must address that barrier; the ADA does not make employers responsible for alleviating any and all challenges presented by an employee's disability. *See Nuzum*, 432 F.3d at 848 ("[T]here must be a causal connection between the major life activity that is limited and the accommodation sought."); *Felix v. New York City Transit Auth.*, 324 F.3d 102, 107 (2d Cir. 2003) ("Adverse effects of disabilities and adverse or side effects from the medical treatment of disabilities arise 'because of the disability.' However, other impairments not caused by the disability need not be accommodated."); EEOC's Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. Pt. 1630, App. (2016) ("[A]n employer [does not] have to provide as an accommodation any amenity or convenience that is not job-related" and "that is not provided to employees without disabilities."). Hill satisfied these requirements by alleging that he experienced a hazard of pain and bruising on his stump while standing for long periods of time, and by specifically connecting that hazard to supervising his class without assistance. Construing Hill's *pro se* submissions liberally and with all reasonable inferences drawn in his favor, a reasonable jury could find that if ARE provided Hill a classroom aide as it did for his colleagues, that aide could help Hill supervise students in the classroom and during outdoor activities, reducing his need for prolonged standing and mitigating the alleged "hazard of pain and bruising."

*Hill*, 897 F.3d at 238 (D.C. Cir. 2018).

Mr. Hopman's case is not like *Hill*. Unlike Mr. Hill, who showed at the summary judgment stage that teacher aides – the benefit or privilege being requested – were being provided to other non-disabled teachers, Mr. Hopman did not show at trial that service animals are being provided to other similarly situated non-disabled Union Pacific employees as a benefit and privilege of employment. Here, the only evidence presented at trial that other Union Pacific employees worked with an animal similar to the one that Mr. Hopman is requesting is that Paul Birchfield, a Union Pacific engineer in California, testified that he brought his emotional support animal ("ESA") to work with him on the train for four years (Plaintiff's Exhibit 42, at 12, 14-16).[2] When Union Pacific received a complaint about Mr. Birchfield's dog, it investigated the matter, discovered that

---

[2] Union Pacific witness Rodney Doerr disputed this fact and testified that his managers told him that it had only been two to three weeks that Mr. Birchfield brought his dog (Dkt. No. 189, at 119). The Court gives Mr. Hopman the benefit of this disputed evidence.

a supervisor had never approved the practice, and notified Mr. Birchfield that he must no longer bring his ESA to work with him (Dkt. No. 189, at 61-62; 115-120).

Even considering Mr. Birchfield's experience at Union Pacific, however, Mr. Hopman's case is not like *Hill*.  At trial, Mr. Hopman presented evidence that Mr. Birchfield brought his ESA to work with him at Union Pacific without the permission of his supervisors and was asked to stop bringing the dog as soon as a complaint was lodged with his supervisor and Union Pacific investigated the matter.  In *Hill*, ARE provided teacher aides, the accommodation Mr. Hill was requesting, to *all* other non-disabled teachers at ARE as a benefit of employment but did not provide a teacher aide to the disabled teacher, Mr. Hill.  Additionally, unlike the other non-disabled teachers in *Hill*, Mr. Birchfield appears to have been disabled with anxiety and panic attacks.  The facts of *Hill* are not similar to the facts established at the trial of Mr. Hopman's case.

Further, Mr. Hopman's case is distinguishable from *Gleed v. AT&T Mobility Servs., LLC*, 613 Fed. App'x  535, at 539 (6th Cir. 2015).  In *Gleed*, the Sixth Circuit Court of Appeals considered and rejected AT&T's argument on summary judgment that, if plaintiff "was physically capable of doing his job – no matter the pain or risk to his health – then it had no obligation to provide him with any accommodation, reasonable or not."  Mr. Gleed requested a chair at work and AT&T admitted that it allowed a pregnant coworker to have a chair at work, which suggested that it could have provided one to Mr. Gleed.  The Sixth Circuit Court of Appeals stated, "the ADA's implementing regulations require employers to provide reasonable accommodations not only to enable an employee to perform his job, but also to allow the employee to 'enjoy equal benefits and privileges of employment as are enjoyed by . . . similarly situated employees without disabilities.' 29 C.F.R. § 1630.2(o)(1)(iii).  Here, taking the evidence in the light most favorable to Gleed, he needed a chair to work—as other employees do—without great pain and a heightened

risk of infection." *Id*. at 539.  In *Gleed*, the employer permitted non-disabled workers to work with a chair, the benefit or privilege of employment that the disabled employee was requesting.  Unlike in *Gleed*, Mr. Hopman has not demonstrated that Union Pacific provided service animals as a benefit and privilege of employment for any other similarly situated non-disabled employee.

Similarly, in *Sanchez v. Vilsack*, 695 F.3d 1174, 1176 (10th Cir. 2012), an employee sought an accommodation of a hardship transfer to access medical treatment after a brain injury.  The employer regularly offered hardship transfers to other non-disabled employees but denied a hardship transfer to the disabled plaintiff.  *Id*., at 1182.  Unlike in *Sanchez*, Mr. Hopman has not demonstrated that Union Pacific provided service animals as a benefit and privilege of employment for any other similarly situated non-disabled employee.

In *Branson v. West*, Case No. 97 C 3538, 1999 WL 311717 (N.D. Ill. May 11, 1999), the United States District Court for the Northern District of Illinois granted partial summary judgment to a doctor who had been denied the right to bring her service dog to work.  *Id*. at *15.  Dr. Branson maintained that the service dog could benefit her by "pulling her wheelchair, opening and closing doors and holding doors open, picking up dropped items, retrieving items, and bracing for her when she must lean out of her wheelchair." *Id*. at *11.  The court determined that the employer had construed its obligations under the law too narrowly when it stressed that Dr. Branson could "perform all the functions of her job without the accommodation of her service dog." *Id*. at *12.  The court determined that no reasonable jury could conclude that the employer made reasonable efforts to determine an appropriate accommodation, so it denied the employer's motion for summary judgment.   *Id*. at *15.   In *Branson,* the court did not analyze the requested accommodation as a benefit and privilege of employment under the regulation.  The court's analysis largely centered around the essential functions of the job, the assistance the requested

accommodation would give Dr. Branson with accessing her employer's facilities, and the interactive process between Dr. Branson and her employer in determining whether a reasonable accommodation existed. The circumstances in *Branson* are not similar to those here where Mr. Hopman steadfastly maintains his ability to perform the essential functions of the job and is specifically seeking solely an accommodation of a benefit and privilege of employment.

After the parties filed their briefs, the Court received correspondence from counsel for Mr. Hopman pointing the Court to the recent decision of *Schroeder v. AT&T Mobility Services, LLC*, ___ F. Supp. 3d ___, 2021 WL 4942870 (M.D. Tenn 2021). Mr. Schroeder, a veteran suffering from PTSD, claimed that AT&T failed to accommodate his mental health condition by refusing to alter his job requirements and company vehicle to permit his service dog to work alongside him. *Id*. at *1. The United States District Court for the Middle District of Tennessee denied AT&T's motion for summary judgment. *Id*. at *2-*4. Among other things, the court rejected AT&T's argument that the accommodation Mr. Schroeder requested was automatically unreasonable because Mr. Schroder could perform his job duties without his service animal and noted that accommodation may be required to allow an employee to enjoy equal benefits and privileges of employment as are enjoyed by similarly situated employees without disabilities. *Id*. at *3. The court also found that several questions of fact remained relevant to whether Mr. Schroeder's requested accommodations were reasonable. *Id*. Like this Court, *Schroeder* affirms that a remedy is available for a plaintiff who can establish the need for a reasonable accommodation to enjoy equal benefits and privileges of employment as are enjoyed by similarly situated employees without disabilities, but it goes no further because fact issues remained at the summary judgment stage. *Id*.; *see also Adams v. Crestwood Medical Center*, 504 F. Supp. 3d 1263, 1302 (N.D. Ala. 2020) (citing 29 C.F.R. § 1630.2(o)(1)(iii) and determining that fact issue remained on defendant

employer's motion for summary judgment as to whether serving meal trays constituted an essential function of employee's job and whether eliminating meal tray duty was a reasonable accommodation that would have enabled employee to enjoy equal benefits and privileges of employment).

Mr. Hopman points to several cases where courts analyze whether the requested accommodation is reasonable to assist the employee in performing the essential functions of the job.  For example, in *Alonzo-Miranda v. Schlumberger Tech. Corp.*, 2015 WL 13768973, *2 (W.D. Tex. 2015), the issue was whether a service dog was a reasonable accommodation for a disabled employee with PTSD so that he could perform the essential functions of his mechanic job (Dkt. No. 196, at 19).  The United States District Court for the Western District of Texas considered Schlumberger's renewed motion for judgment as a matter of law, or alternatively, motion for a new trial.  The court found that the jury's verdict in favor of Mr. Alonzo-Miranda was supported by evidence "showing the accommodation would help Alonzo-Miranda avoid and mitigate flashbacks and panic attacks that sometimes prevented him from performing *any* of the essential functions of his job." *Id*. (emphasis in original).  The court went on to point out that the employer "misstated Fifth Circuit precedent" when it claimed, "that the ADA requires accommodations only when they are necessary to perform essential functions of the job."  It pointed out that in *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 453 (5th Cir. 2013), the Fifth Circuit Court of Appeals held that "an accommodation may enable the employee to 'enjoy equal benefits and privileges of employment' even if it has no effect on the employee's ability to do the job."[3]

---

[3]  In *Feist*, the Fifth Circuit Court of Appeals remanded the case which involved an on-site parking space, which would have given the employee access to the employer's facilities because the district court overlooked the "benefits and privileges" definition in the regulation.  730 F.3d at 454 (citing the EEOC's interpretive guidance).  The employer was granted summary judgment after remand because the employee caused a breakdown in the interactive process.  *Feist v.*

Finally, the district court remarked, in what appears to be dictum, that "[s]ubstantial evidence at trial established that a service dog mitigated the effects of Alonzo-Miranda's PTSD by reducing the pain and hardship of his disability while at work." *Alonzo-Miranda* is distinguishable from the instant case.  There is no indication that *Alonzo-Miranda* went to the jury solely on the theory that Schlumberger denied Mr. Alonzo-Miranda a benefit and privilege of employment.  *Alonzo-Miranda* is an essential function case, not solely a benefit and privilege of employment case.  Moreover, dictum from an unreported district court decision from another Circuit is not binding on this Court.

In *Nawrot v. CPC Int'l*, 259 F. Supp. 2d 716, 726 (N.D. Ill. 2003), a diabetic employee, who sometimes became unable to think clearly and care for himself at work, asked his employer for an accommodation of periodic breaks to check his blood-sugar levels, eat certain foods, and administer insulin injections.  *Id*., at 719-720.  Unlike Mr. Hopman, Mr. Nawrot claimed that he needed the accommodation to perform the essential functions of his job.  *Id*. at 725.  The employer moved for summary judgment, but the United States District Court for the Northern District of Illinois denied the motion concluding that there were disputed facts about whether the accommodation would enable Mr. Nawrot to perform the essential functions of his job, and, in the alternative, the court noted that there was a question whether Mr. Nawrot might be entitled to his accommodation even if he could perform his job without it.  *Id*.  The court quoted the three categories of accommodations and noted that category three "benefits and privileges" shows that "accommodations are required [for] reasons other than essential job functions."  *Id*. at 726.  The court went on to suggest "providing additional unpaid leave for necessary treatment" as an

*Louisiana Dep't of Justice, Off of Atty. Gen.*, Case Nos. 09-7060, 11-1585, 2014 WL 2979623 (E.D. La. Jul. 1, 2014).

example of an accommodation that enables an employee with disabilities to enjoy equal benefits and privileges of employment as are enjoyed by employees without disabilities. *Id.*, at 726 (citing 29 C.F.R. § 1630(o) app.).

*Nawrot* is not like Mr. Hopman's case. Mr. Nawrot did not claim that he could preform the essential functions of his job, and Mr. Nawrot did not assert solely that he was entitled to a reasonable accommodation of a benefit and privilege of employment to be free from mental or psychological pain. Further, *Nawrot* does not establish, as Mr. Hopman suggests, that a proposed accommodation can be reasonable even if it is not an employer sponsored benefit. In fact, in *Nawrot* the court suggested unpaid leave, which is part of an employer sponsored leave program, might be a reasonable accommodation for Mr. Nawrot.

In *McDonald v. Department of Environmental Quality*, 351 Mont. 243, 246 (2009), the employee used a service dog at work to support her body, help her navigate the office building, and calm her down during "dissociative episodes." Ms. McDonald asked her employer for an accommodation to install nonskid flooring to keep the service animal from loosing traction on slick floors. *Id.* at 247. In *McDonald*, the court assessed the requested accommodation's ability to provide Ms. McDonald access to her employer's facilities and to allow her to avoid "dissociative episodes" that "impacted her ability to do her job," in contrast to Mr. Hopman who by his own admission can effectively do his job by performing the essential functions and access his employer's facilities without his service animal. *Id.* at 258.

### 3.     Right To Work Free From Mental Or Psychological Pain

At the summary judgment stage, Mr. Hopman asserted that he had a right to work without the "continual and unrelenting burden and pain of PTSD." (Dkt. Nos. 59, at 21). In his trial brief, Mr. Hopman asserted that a jury would consider "whether or not the proposed accommodation

would do what Congress intended, to assist a worker with a disability so that worker can be mainstreamed and avoid symptoms and pain not suffered by those without disabilities." (Dkt. No. 145, at 5-6).  At trial, Mr. Hopman's counsel argued that Mr. Hopman should not have to endure "physical and emotional pain" his episodes bring him at work  (Dkt. No. 192, at 93).

Mr. Hopman has not pointed the Court to authority where a court has articulated a right to work without mental or psychological pain.  A number of cases from the Eighth Circuit and others suggest, however, that employees do not have a right to work free from mental or psychological pain.  *See e.g. Cannice v. Norwest Bank Iowa N.A.*, 189 F.3d 723, 728 (8th Cir. 1999) (affirming district court's grant of judgment as a matter of law for the employer who refused to provide unmonitored phone near employee's desk to accommodate his depression stating that "[w]e do not believe, however, that the obligation to make reasonable accommodation extends to providing an aggravation-free environment."); *Gonzagowski v. Widnall*, 115 F.3d 744, 747-48 (10th Cir. 1997) (affirming district court's grant of summary judgment in favor of employer who denied employee with anxiety alterations to his work environment to reduce stress and criticism triggered by his supervisor concluding that "[w]hile specific stressors in a work environment may in some cases be legitimate targets of accommodation, it is unreasonable to require an employer to create a work environment free of stress and criticism."); *Pesterfield v. Tennessee Valley Auth.*, 941 F.2d 437 442 (6th Cir. 1991) (affirming district court judgment for employer because employee with depression and severe anxiety was not capable of performing the essential functions of his job, and "it would be unreasonable to require that TVA place plaintiff in a virtually stress-free environment and immunize him from any criticism in order to accommodate his disability."); *Carozza v. Howard Cty., Md.*, 45 F.3d 425 (4th Cir. 1995) (affirming district court grant of summary judgment against employee with bipolar affective disorder because the undisputed facts "ineluctably lead to

the conclusion" that the employee's proposed accommodations "for job restructuring, alleviation of stress, and exemption from normal performance reviews" that would require her employer to change the very essence of her job are unreasonable); *Marino v. U.S. Postal Serv.*, 25 F.3d 1037 (1st Cir. 1994) (citing *Pesterfield* the First Circuit Court of Appeals upheld district court's grant of summary judgment in favor of employer and dismissed as unreasonable a Vietnam veteran's accommodation request that he be protected from stress-producing situations at work); *Tomlinson v. Wiggins*, Case No. 12-CV-1050, 2013 WL 2151537, at *4 (W.D. Ark. May 16, 2013) (emails employee sent explaining his depression and complaining about his boss's harsh management style were not a reasonable request for an accommodation because "[t]he Eighth Circuit has found that an employer's obligation to make a reasonable accommodation does not extend to 'providing an aggravation-free environment.'") (citing *Schwarzkopf v. Brunswick Corp.,* 833 F. Supp. 2d 1106, 1123 (D. Minn. 2011) (quoting *Cannice v. Norwest Bank Iowa, N.A.,* 189 F.3d 723, 728 (8th Cir. 1999)).  Further, Mr. Hopman has not established that Union Pacific has offered its similarly situated non-disabled employees the benefit and privilege of working without mental or psychological pain.

### 4.    Enhanced Job Performance

Mr. Hopman has asserted throughout the case that he can perform the essential functions of his job.  He testified to the same at trial (Dkt. Nos. 190, at 179-180; 191, at 9, 27, 32).  Mr. Hopman's character witnesses also expressed confidence in Mr. Hopman's job performance (Dkt. No. 190, at 55, 104-106).  In spite of his assertions about the adequacy of his job performance, in his trial brief, Mr. Hopman stated that, if granted his accommodation request, his "performance will be better when he is able to avoid the symptoms of his disability with an accommodation" and that "his 'level of performance' will be higher, given that he will not be burdened with the

symptoms of PTSD and migraines that otherwise plague him during the days." (Dkt. No. 91, at 6). Mr. Hopman continued this argument at trial, where he asserted that his job performance would be enhanced when he was able to avoid the symptoms of his PTSD and traumatic brain injury (Dkt. Nos. 184, at 1; 196, at 5).  In closing argument, his counsel argued that "there is a no-cost solution . . . to allow [Mr. Hopman] to work better, safer and without pain and without flashbacks" (Dkt. No. 192, at 93-94).  This argument may be appropriate for an essential functions reasonable accommodation analysis, but it is not appropriate for a benefits and privileges of employment reasonable accommodation analysis.

The EEOC Enforcement Guidance discusses "job performance" as part of the "essential functions" reasonable accommodation analysis when it states, "[a]n accommodation also must be effective in meeting the needs of the individuals.  In the context of job performance, this means that a reasonable accommodation enables the individual to perform the essential functions of the position."  EEOC Enforcement Guidance at *3.  The EEOC's Interpretive Guidance similarly provides that level of performance and benefits and privileges of employment are two separate areas of employment in which a disabled employee may obtain equal employment opportunity. The Interpretive Guidance provides:

> Equal employment opportunity means an opportunity to attain the same level of performance, *or* to enjoy the same level of benefits and privileges of employment as are available to the average similarly situated employee without a disability. Thus, for example, an accommodation made to assist an employee with a disability in the performance of his or her job must be adequate to enable the individual to perform the essential functions of the relevant position.

"Interpretive Guidance on Title I of the Americans With Disabilities Act," 29 C.F.R. Pt. 1630, App. § 1630.9, "Section 1630.9 Not Making Reasonable Accommodation" (emphasis added).

Mr. Hopman points to *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999), to support his position and particularly to the Eighth Circuit Court of Appeals's statement that a

reasonable accommodation "should provide the disabled individual an equal employment opportunity, including an opportunity to attain the same *level of performance*, benefits, and privileges that is available to similarly situated employees who are not disabled." *Id*. at 1136-37 (citing 29 C.F.R. § 1620.9 (Appendix (1998)) (emphasis added). In *Kiel*, however, the Eighth Circuit Court of Appeals affirmed the district court's grant of summary judgment in favor of Mr. Kiel's employer denying his requested accommodation in an essential functions case. *Id*. at 1139.

Mr. Kiel was deaf and employed by Select as a billing clerk. Mr. Kiel requested as an accommodation a telecommunications device ("TDD") that would have enabled him to make business and personal telephone calls at work and an interpreter for staff meetings and social gatherings. *Id*. at 1134. Select denied the request for a TDD and chose to have Mr. Kiel's supervisor make minimal client telephone calls required rather than provide the TDD. *Id*. at 1137. Select also found that an interpreter was not required for Mr. Kiel to perform the essential functions of his position, and on one occasion that a training session was relevant to Mr. Kiel's position, Select provided him an interpreter. *Id*. The district court granted summary judgment in favor of Select on Mr. Kiel's failure to accommodate claim. *Id*. The Eighth Circuit Court of Appeals affirmed concluding that the accommodation Select provided "restructuring the billing clerk position" allowed Kiel an equal employment opportunity at Select. *Id*. The Eighth Circuit Court of Appeals did not analyze benefits or privileges of employment.

To the extent that Mr. Hopman seeks an accommodation to assist him with performing duties above and beyond the core essential functions of his job, the Eighth Circuit has held, in the essential functions context, that accommodations are not reasonable unless they help the employee in "performing the duties of her particular job . . . ." *Rask v. Fresenius Med. Care N. Am.*, 509 F.3d 466, 471 (8th Cir. 2007); *see also Hatchett v. Philander Smith Coll*., 251 F.3d 670, 675 (8th

Cir. 2001) ("A reasonable accommodation is one which enables a[n] individual with a disability to perform the essential functions of the position.") (citing 29 C.F.R. § 1630.2(o)(1)(i)).  Similarly, the Sixth Circuit has stated that "[t]he ADA is not a weapon that employees can wield to pressure the employers into granting unnecessary accommodations or reconfiguring their business operations.  Instead, it protects disabled employees from disability-related mistreatment—no more, no less." *Tchankpa v. Ascena Retail Group, Inc.*, 951 F.3d 805, 809 (6th Cir. 2020).

In *Arndt v. Ford Motor Co.*, 247 F. Supp. 3d  832, 855-56 (E.D. Mich. 2017), the United States District Court for the Eastern District of Michigan granted summary judgment in favor of an employer and against an Army Veteran with PTSD who worked as a process coach on the factory floor.  The evidence in the record on summary judgment indicated that Mr. Arndt had PTSD and wanted to bring his service dog, Cadence, to work with him on the factory floor where he encountered "stressors related to his PTSD." *Id*. at 857.  The service dog was trained specifically for the "betterment of Plaintiff's life." *Id*. at 855.  The court determined that, while the service dog may have been trained to better Mr. Arndt's life, that was "simply not sufficient to carry Plaintiff's burden to establish, by a preponderance of the evidence, that having Cadence by his side in all aspects of his job as a process coach would have enabled him to perform the essential functions of that high stress supervisory job" on the factory floor. *Id.*  In the context of an essential functions case, the United States District Court for the Eastern District of Michigan determined that Mr. Arndt had not established that his service dog helped him perform the essential functions of his job.

Similarly, to the extent that Mr. Hopman's trainer testified that Atlas was trained to assist Mr. Hopman with getting on a plane, going to an amusement park, going out to dinner, and attending a cheer competition and to the extent that Mr. Hopman testified that Atlas makes him "a

better Perry 100 percent of the time," that testimony does not establish a claim to a benefit and privilege of employment that Mr. Hopman has identified (Dkt. No. 190, at 74-76, 139).

Mr. Hopman also cites to two hypotheticals from the EEOC's Enforcement Guidance that both address performance. The first hypothetical involves a cashier who becomes fatigued because of lupus and requests a stool because sitting greatly reduces fatigue and "enables her to perform her job." (Dkt. No. 196, at 14-15). The guidance provides that the "accommodation is reasonable because it is a commonsense solution to remove a workplace barrier—being required to stand—when the job can be effectively performed sitting down. This 'reasonable' accommodation is effective because it addresses the employee's fatigue and enables her to perform her job." (*Id.*, at 15).

The second hypothetical from the EEOC's Enforcement Guidance Mr. Hopman points to involves a crew member for a cleaning company with a psychiatric disability who requests changes to permit him to have fewer alterations in his daily routine by either staying on one floor permanently, staying on one floor for two months and then rotating, or allowing a transition period to adjust to change in floor assignments (*Id.*, at 15). The guidance provides that "these accommodations are reasonable because they appear to be feasible solutions to this employee's problems dealing with changes to his routine. They also appear to be effective because they would enable him to perform his cleaning duties." (*Id.*)

These hypotheticals address requests for accommodations needed to perform the essential functions of the job. Neither hypothetical provides guidance regarding equal access to employer-sponsored benefits and privileges of employment. Additionally, the hypotheticals do not suggest that freedom from mental and emotional pain constitutes such a benefit or privilege.

###### D.      Conclusion

There is no legally sufficient evidentiary basis for a reasonable jury to find that Mr. Hopman has identified a cognizable benefit or privilege of employment that he is entitled to as a reasonable accommodation.  Accordingly, the Court grants Union Pacific's renewed motion for judgment as a matter of law (Dkt. No. 193).  Having determined that Mr. Hopman does not have a cognizable claim for relief under the Rehabilitation Act or ADA, the Court need not address Union Pacific's second argument on its federal-conflict defense regarding federal safety regulations prohibiting Atlas from being in the cab of a locomotive.

###### III.      Motion For Equitable Relief

Also before the Court is Mr. Hopman's motion for equitable relief (Dkt. No. 200).  Because the Court grants Union Pacific's motion for judgment as a matter of law, the Court denies Mr. Hopman's motion for equitable relief (*Id.*)

###### IV.      Motion To Strike

Before the Court is Mr. Hopman's motion to strike the declaration of Robert Carty and attached photographs that are Exhibit 4 to Union Pacific's renewed motion for judgment as a matter of law (Dkt. Nos. 197; 193-4).  Mr. Hopman contends that Union Pacific is attempting to introduce into evidence photographs that it neglected to offer into evidence at trial (Dkt. No. 197, at 1).  The photographs are of a demonstrative that Union Pacific created on the floor of the courtroom during trial in an effort to show the size of the cab of a locomotive (*Id.*).  Mr. Hopman argues that the record is closed, the demonstrative is not part of the record, and Union Pacific provides no authority for reopening the trial record and made no motion to reopen the record (*Id.*, at 2).  Union Pacific responds that Mr. Hopman does not challenge the authenticity or accuracy of the photographs attached to Mr. Carty's declaration, and both the jury and the Court had the benefit

of the images contained in the photographs during trial (Dkt. No. 206, at 1).  Union Pacific contends that appellate courts may take demonstrative exhibits into account when reaching determinations (*Id*., at 2).

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading. . . any redundant, immaterial, impertinent, or scandalous matter."  An allegation contained in a pleading is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded."  *CitiMortgage, Inc. v. Just Mortgage, Inc.*, Case No. 4:09 CV 1909 DDN, 2013 WL 6538680, at *7 (E.D. Mo. Dec. 13, 2013) (internal quotations omitted).  An allegation is impertinent if it "consists of statements that do not pertain, and are not necessary, to the issues in question."  *Id*.  While Rule 12(f) is understood to provide courts with "liberal discretion," the Eighth Circuit Court of Appeals has stated that "striking a party's pleadings is an extreme measure, and, as a result, we have previously held that '[m]otions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted.'"  *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)).

The Court grants the motion to strike the declaration of Robert Carty and attached photographs that is Exhibit 4 to Union Pacific's renewed motion for judgment as a matter of law (Dkt. Nos. 197).  Union Pacific did not present the photographs for admission into evidence at trial, and the Court has not considered the declaration or attached photographs in ruling on Union Pacific's renewed motion for judgment as a matter of law.

## V.    Conclusion

The Court grants Union Pacific's renewed motion for judgment as a matter of law (Dkt. No. 193).  The Court will enter judgment for Union Pacific as a matter of law on Mr. Hopman's claims.  Mr. Hopman's motion for equitable relief is denied (Dkt. No. 200).  The Court grants Mr.

Hopman's motion to strike (Dkt. No. 197).  The Court orders the Clerk to strike docket number 193-4 from the record.

It is so ordered this 30th day of March, 2022.

_Kristine G. Baker_

Kristine G. Baker
United States District Judge