# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1881

_____

4:18-cv-00074-KGB

Perry Hopman

*Plaintiff - Appellant*

v.

Union Pacific Railroad

*Defendant - Appellee*

------------------------------

Association of American Railroads;
The Chamber of Commerce of the United States of America

*Amici on Behalf of Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: January 10, 2023
Filed: May 19, 2023

_____

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Perry Hopman, then a conductor now an engineer for Union Pacific Railroad ("Union Pacific"), brought this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a), when Union Pacific refused Hopman's requests that he be allowed to bring his Rottweiler service dog on board moving Union Pacific freight trains as a reasonable accommodation to ameliorate the effects of Hopman's undisputed disabilities, post-traumatic stress disorder (PTSD) and migraine headaches resulting from his prior service in the military. At the end of a week-long trial, the district court[1] denied Union Pacific's motion for judgment as a matter of law. The jury then returned a verdict for Hopman, awarding compensatory but not punitive damages. The district court granted Union Pacific's renewed motion for judgment as a matter of law, concluding there is no legally sufficient evidentiary basis for the jury's verdict. Hopman v. Union Pac. R.R., No. 4:18-cv-00074-KGB, Order (E.D. Ark. Mar. 30, 2022). Hopman appeals. We affirm.

## I. Framing the Regulatory Issue

"The ADA bars private employers from discriminating against a 'qualified individual on the basis of disability.' 42 U.S.C. § 12112(a). Discrimination is defined to include 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability.' 42 U.S.C. § 12112(b)(5)(A)." Faidley v. United Parcel Service, Inc., 889 F.3d 933, 940 (8th Cir. 2018) (en banc). "To prevail on his failure-to-accommodate claim under the ADA, [Hopman] must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." Moses v. Dassault Falcon Jet-Wilminton Corp., 894 F.3d 911, 923 (8th Cir. 2018) (quotation omitted).

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

-2-

Title I of the ADA is titled "Employment." Its obvious focus is employer discrimination that disadvantages the job opportunities of persons with disabilities. Indeed, the statute defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, most failure-to-accommodate cases involve whether the employer "failed to provide reasonable accommodations . . . that would have allowed [the employee] to perform the essential functions of [his] position." Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999). This case does not. From the outset of the litigation, Hopman has conceded that he is able to perform the essential functions of his work on Union Pacific trains with or without the service dog accommodation he seeks. Indeed, Union Pacific promoted Hopman from conductor to engineer during the litigation.

Employers seeking to hire and retain qualified workers offer attractions not directly related to job performance, including "fringe benefits" such as health and retirement benefits, and privileges such as employee lounges and fitness facilities. The question underlying this appeal, which we have not addressed in prior cases, is whether Congress in the ADA also intended to bar employer discrimination that does not directly affect the ability of an employee who is a qualified individual to perform his job's essential functions. The statute contains strong indications that Congress did intend to bar employer discrimination in providing such benefits and privileges.

The discrimination prohibition in § 12112(a) includes discrimination "in regard to . . . other terms, conditions, and *privileges* of employment." The definition of "discriminate" in § 12112(b) includes in subpart (2), subjecting qualified employees with a disability to discrimination by "an organization providing *fringe benefits*" to the employer, and in (4), "excluding or otherwise denying equal jobs *or benefits*." (Emphases added). Subpart (5)(A) defines discrimination as including "not making reasonable accommodations to the known physical or mental limitations of an

otherwise qualified individual with a disability . . . unless . . . the accommodation would impose an undue hardship on the operation of the [employer's] business." The definition of "reasonable accommodation" in § 12111(9)(A) states that it may include "*making existing facilities used by employees readily accessible* to and usable by individuals with disabilities."

The ADA's legislative history confirms that these italicized statutory terms were not inadvertently or carelessly included:

> The phrasing of [42 U.S.C. § 12112(a)] is consistent with regulations implementing section 504 of the Rehabilitation Act of 1973. Consistent with these regulations, the phrase "other terms, conditions, and privileges of employment" includes . . . (5) leaves of absence, sick leave, or any other leave; (6) fringe benefits available by virtue of employment, whether or not administered by the [employer] . . . and (8) employer-sponsored activities, including social or recreational programs.

S. Rep. No. 101-116, at 25 (1989); see H.R. Rep. No. 485 pt. 2, at 54-55 (1990). Likewise, the EEOC's implementing regulations define the term "reasonable accommodation" as including three distinct requirements:

> (i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
>
> (ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or
>
> (iii) Modifications or adjustments that enable a covered entity's employee with a disability *to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities*.

29 C.F.R. § 1630.2(o)(1) (emphasis added).  Hopman's Opening Brief states that he "sought the kind of modification or adjustment of policies envisioned by . . . 29 C.F.R. § 1630.2(o)(1)(iii)."

## II. Background

Hopman served two military tours as a flight medic -- in Iraq from 2006-2008, where he responded to scenes of catastrophic injury and death from IEDs that wreaked havoc on our troops, and in Kosovo in 2010, a tour that ended when he suffered traumatic brain injury after falling 50 feet out of a helicopter.  Hopman testified that these experiences left him with anxiety, depression, sleeplessness, nausea-inducing migraines, flashback triggers from loud noises or certain sights and smells, and difficulties concentrating.  Union Pacific concedes he is a qualified individual with a disability, post-traumatic stress disorder.

Hopman started working for Union Pacific as a train conductor in 2008, between his tours of duty.  He returned to this job in May 2015, after reconstructive surgery, lengthy treatment for PTSD and traumatic brain injury, and extensive physical and occupational therapy. He successfully passed Union Pacific's fitness re-entrance test but suffered at work from flashbacks and migraine headaches with nausea.  Helped by public funding, Hopman purchased a service dog, "Atlas," and secured an experienced service dog trainer.  In April 2016, Union Pacific denied Hopman's request to bring Atlas to work.  The written denial explained that a service dog would result in a direct threat to the health and safety of employees because "the railroad environment is constantly shifting and changing," "it is unclear how a service dog would adapt to moving box cars, locomotives and oftentimes loud and dangerous conditions," and an unmonitored service dog "may pose a risk to co-workers" when Hopman "is performing his essential duties."

Union Pacific later denied Hopman's renewed request after Atlas was fully trained but offered him alternative accommodations -- take FMLA leave, or accept transfer to a yard position that does not require overnight stays.  Hopman temporarily transferred to a yard position "that paid road money."  But he returned to his job as a conductor because the yard is "a frenzied environment" that created more frequent flashback triggers.  He was subsequently promoted to freight train engineer.

The district court denied Union Pacific's motion for summary judgment. Quoting 29 C.F.R. § 1630.2(o)(1)(iii), the court found "that the ADA permits Mr. Hopman to seek from Union Pacific a reasonable accommodation to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities," despite his being able to perform the essential functions of his job.  Hopman v. Union Pacific R.R., 462 F. Supp. 3d 913, 926 (E.D. Ark. 2020) (quotation omitted).  The court noted Union Pacific's argument that a "benefit" or "privilege" must be a "tangible service offered by an employer."  But viewing the summary judgment record in the light most favorable to Hopman, the non-moving party, the court stated it "is not inclined to grant judgment as a matter of law . . . on this point at this stage of the litigation."  Id. at 928.

At trial, Hopman ignored the essential terms of the EEOC regulation on which his claim was based even though these terms were incorporated in jury Instruction No. 10 that set forth the elements of his failure-to-accommodate claim:

> Fourth, allowing Mr. Hopman his requested accommodation was (1) reasonable and (2) a modification or adjustment to enable Mr. Hopman with a disability to enjoy equal benefits and privileges of employment as are enjoyed by Union Pacific Railroad's other similarly situated employees without disabilities.

During Hopman's closing arguments, the only mention of benefits and privileges of employment came at the very end of his rebuttal:

-6-

> It seems like the only benefit o[r] privilege of employment [Union Pacific] think[s] Mr. Hopman is entitled to is money. They want to be sure to tell you how much money he makes. But you've already heard he works extremely hard. . . . Let him do it without the pain and suffering. Let him do it as he can if he's allowed to really flourish and not throw up out of the window every day.

From Hopman's perspective, this is certainly a fair point. But it is a job performance argument, and Hopman did not claim denial of a job performance accommodation under 29 C.F.R. § 1630.2(o)(1)(ii), presumably because he is able to perform the essential functions of his conductor and engineer jobs with or without the requested service dog accommodation.

The district court granted Union Pacific's renewed motion for judgment as a matter of law. The court rejected Hopman's claim "that freedom from mental or psychological pain caused by PTSD is a benefit or privilege of employment that [Congress] envisioned employers being required to offer employees." At issue is the employer obligation in 29 C.F.R. § 1630.2(o)(1)(iii) to make reasonable accommodation relating to benefits and privileges of employment. This obligation "is applicable to *employer sponsored* placement or counseling services, and to *employer provided* cafeterias, lounges, gymnasiums, auditoriums, transportation and the like." Order at 7 (emphasis in original), citing 29 C.F.R. Pt. 1630 App. § 1630.9. Hopman at trial "did not identify a corresponding benefit or privilege of employment offered to Union Pacific employees." Id. at 9. The service dog accommodation case on which he relies, Alonzo-Miranda v. Schlumberger Tech. Corp., No. 5:13-cv-1057, 2015 WL 13768973 (W.D. Tex. June 11, 2015), "is an essential function case, not solely a benefit and privilege of employment case." Id. at 15. Evidence and argument that Hopman's job performance will be better if he "not be burdened with the symptoms of PTSD and migraines" during work days support a job performance accommodation claim that Hopman did not assert. Id. at 18-19. Accordingly, the court concluded, "[t]here is no legally sufficient evidentiary basis for a reasonable

-7-

jury to find that Mr. Hopman has identified a cognizable benefit or privilege of employment that he is entitled to as a reasonable accommodation."[2] Id. at 23.

### III. Discussion

"We review *de novo* the grant of a renewed motion for judgment as a matter of law, viewing the evidence in the light most favorable to the verdict." Monohon v. BNSF Ry. Co., 17 F.4th 773, 780 (8th Cir. 2021). "Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party." Mattis v. Carlon Elec. Prods., 295 F.3d 856, 860 (8th Cir. 2002). "[C]onflicts in the evidence must be resolved in favor of the verdict." S. Wine & Spirits of Nevada v. Mountain Valley Spring Co., 646 F.3d 526, 533 (8th Cir. 2011).

Though Hopman restates his job performance arguments on appeal, in the district court he explicitly limited his failure-to-accommodate claim to one of the three subsections of the applicable EEOC regulation: "Modifications or adjustments that enable a [Union Pacific] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities." 29 C.F.R. § 1630.2(o)(1)(iii). Thus, whether Hopman might have had a job performance accommodation claim is not before us. Ruling on the claim that is before us, the district court concluded that "benefits and privileges of employment" (1) refers only to employer-provided services; (2) must be offered to non-disabled individuals in addition to disabled ones; and (3) does not include freedom from mental or psychological pain. We agree.

---

[2]The district court did not rule on Union Pacific's alternative defense that Union Pacific and the American Association of Railroads as *amicus* argue on appeal -- that "allowing Atlas to ride in the tight quarters of a [freight train] cab is prohibited by federal railroad safety regulations." See 49 C.F.R. § 229.119(c). As we are affirming on another ground, we decline to consider this complex question.

-8-

The argument section of Hopman's Opening Brief begins by arguing the district court made a slew of procedural errors -- misstating the nature of the accommodation he requested, improper fact-finding, and citing "irrelevant cases." We disagree. The district court recognized that Hopman had limited his failure-to-accommodate claim to the denial of equal benefits and privileges of employment, interpreted what the ADA and the implementing EEOC regulations require to prove that claim, gave Hopman notice of what must therefore be proved in its summary judgment order and in jury Instruction No. 10, and then held that Hopman had failed to introduce the evidence needed to prove that claim. That Hopman chose to ignore the district court's repeated warning of what he needed to prove was hardly procedural error by the court.

A. Turning to the merits of the district court's legal conclusions, Hopman argues the district court erred in concluding that a failure-to-accommodate claim under 29 C.F.R. § 1630.2(o)(1)(iii) requires proof of an employer-sponsored or employer-provided benefit or privilege that is provided to workers without disabilities. We first note that the district court's interpretation, as reflected in the above-quoted portion of jury Instruction No. 10, is consistent with the plain text of the regulation, which includes only benefits and privileges "enjoyed by its other similarly situated employees without disabilities." Unless we conclude that a regulation is contrary to the commands of the statute it is interpreting -- which Hopman intimates but does not argue -- "we must give controlling weight" to its plain text. Berndsen v. N. Dakota Univ. Sys., 7 F.4th 782, 789 (8th Cir. 2021).

As we have explained, although "benefits and privileges of employment" is not a term used and defined in the ADA, the statutory meaning of those terms -- fringe benefits, access to recreational programs and facilities, and other employer-provided workplace advantages not directly related to job performance -- can be derived from various provisions of the statute, confirmed by its legislative history. The EEOC has

-9-

consistently defined the terms in this fashion. Importantly, the agency's Interpretive Guidance on Title I, Appendix to 29 C.F.R. Part 1630, addresses this issue:

> The obligation to make reasonable accommodation is a form of non-discrimination. . . . [It] applies to all services and programs provided in connection with employment, and to all non-work facilities *provided or maintained by an employer* for use by its employees. Accordingly, the obligation to accommodate is applicable to *employer sponsored* placement or counseling services, and to *employer provided* cafeterias, lounges, gymnasiums, auditoriums, transportation and the like.

Part 1630 App., § 1630.9 (emphasis added). In Morriss v. BNSF Ry. Co., 817 F.3d 1104, 1108-09 (8th Cir. 2016), we relied on another section of this Interpretive Guidance in holding that obesity is not a physical disorder under the ADA unless it occurs as a result of a physiological disorder.

Similarly, an EEOC "Technical Assistance Manual," in addressing the issue of "Accommodations to Ensure Equal Benefits of Employment," stated that "[e]mployees with disabilities must have equal access to lunchrooms, employee lounges, rest rooms, meeting rooms, and other *employer-provided or sponsored* services such as health programs, transportation, and social events." EEOC, Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act § 3.3 (1992).³

Hopman argues that the district court's interpretation (and therefore the EEOC regulation) is a "perverse view . . . firmly at odds with disability law." But he cites no case, and we have found none, where an employee's failure-to-accommodate claim was based entirely on the benefits and privileges of employment duty in 29 C.F.R. § 1630.2(o)(1)(iii), and the court held that the duty was not limited to employer

---

³https://www.eeoc.gov/laws/guidance/technical-assistance-manual-employment-provisions-title-i-americans-disabilities-act.

provided or sponsored services and programs. We agree with the district court that the employer duty to provide "equal benefits and privileges of employment" defined in § 1630.2(o)(1)(iii) is limited by the plain text of the regulation.

B. At trial, counsel argued "that Mr. Hopman should not have to endure 'physical and emotional pain' his episodes bring him at work." Hopman, Order at 17. The district court noted that "Mr. Hopman has not pointed the Court to authority where a court has articulated a right to work without mental or psychological pain." Id. On appeal, without stating this is an issue presented, Hopman asserts the court misstated the nature of the accommodation requested and then argues the merits of whether the ability to work with reduced pain is a benefit or privilege of employment that is part of an employer's duty to provide accommodations under § 1630.2(o)(1)(iii). This will not do. See Fed. R. App. P. 28(a)(5); Fed. Ins. Co. v. Axos Clearing LLC, 982 F.3d 536, 542 n.5 (8th Cir. 2020).

On the merits of this question, mitigating pain is not an employer sponsored program or service. But even putting that formidable obstacle aside, the EEOC's Interpretive Guidance addresses this issue more fundamentally:

> The obligation to make reasonable accommodation . . . does not extend to the provision of adjustments or modifications that are primarily for the personal benefit of the individual with a disability. Thus, if an adjustment or modification is job-related, *e.g.*, specifically assists the individual in performing the duties of a particular job, it will be considered a type of reasonable accommodation. On the other hand, if an adjustment or modification assists the individual throughout his or her daily activities, on and off the job, it will be considered a personal item that the employer is not required to provide. Accordingly, an employer would generally not be required to provide an employee with a prosthetic limb, wheelchair, or eyeglasses.

\* \* \* \* \*

> It should be noted that it would not be a violation of this part for an employer to provide any of these personal modifications or adjustments, or to engage in supported employment or similar rehabilitative programs.

29 C.F.R. Part 1630 App., § 1630.9. The district court noted there is strong judicial support for this interpretation of the statute. As a unanimous Supreme Court said in interpreting Section 504 of the Rehabilitation Act of 1973, "[a]ny interpretation of § 504 must therefore be responsive to two powerful but countervailing considerations -- the need to give effect to the statutory objectives and the desire to keep § 504 within manageable bounds." Alexander v. Choate, 469 U.S. 287, 299 (1985); see Cannice v. Norwest Bank Iowa N.A., 189 F.3d 723, 728 (8th Cir. 1999) (the obligation to make reasonable accommodation in Title I of the ADA does not "extend[] to providing an aggravation-free environment.") Providing a service dog at work so that an employee with a disability has the same assistance the service dog provides away from work is not a cognizable benefit or privilege of employment.

C. For these reasons, we affirm the district court's decision to grant Union Pacific's renewed judgment as a matter of law. We have considered the cases cited by Hopman from outside the circuit and conclude most are distinguishable, as the district court carefully reasoned, and the rest are non-binding and unpersuasive.[4] We also emphasize that ADA failure-to-accommodate cases are fact- and context-specific, and this opinion should be applied accordingly. Therefore, at least in the

---

[4]Compare Burnett v. Ocean Props., Ltd., 987 F.3d 57, 68-69 (1st Cir. 2021), Hill v. Assocs. for Renewal in Educ., Inc., 897 F.3d 232, 239 (D.C. Cir. 2018), Gleed v. AT & T Mobility Servs., LLC, 613 F. App'x 535, 538-39 (6th Cir. 2015), and Feist v. Louisiana, Dep't of Just., Off. of the Att'y Gen., 730 F.3d 450, 453 (5th Cir. 2013), with Brumfield v. City of Chicago, 735 F.3d 619 (7th Cir. 2013), and Holly v. Clairson Indus., L.L.C., 492 F.3d 1247 (11th Cir. 2007). See also Nawrot v. CPC Int'l, 259 F. Supp. 2d 716, 726 (N.D. Ill. 2003); Alonzo-Miranda, 2015 WL 13768973 at *2 (W.D. Tex. June 11, 2015).

context presented by this case, for reasons we have explained, we reject the alternative argument of Union Pacific and its supporting *amici* that the ADA "requires employers to provide reasonable accommodations only when necessary to enable employees to perform the essential functions of their jobs." There are conflicting views, or at least contrary reasoning, among the many circuit opinions addressing this issue, but it is often possible to reconcile apparent circuit conflicts by careful attention to distinguishing facts and contexts in the various cases.

Another issue is lurking here that we need not resolve in this case. The district court derived jury Instruction No. 10, to which no party objected, from Eighth Circuit Model Civil Jury Instruction 9.42, entitled Elements of Claim: Reasonable Accommodation. The model instruction seems to ignore our holdings in many panel decisions, endorsed by the court en banc in Faidley, that an ADA failure-to-accommodate claim requires proof of a prima facie case of discrimination, which in turn requires proof that the employee "suffered an adverse employment decision because of the disability." Moses, 894 F.3d at 923. Whether a failure-to-accommodate claim requires proof of an adverse employment action has generated sharp controversy elsewhere. See, e.g., the Tenth Circuit's 7-6 en banc decision in Exby-Stolley v. Bd. of Cnty. Comm'rs, 979 F.3d 784 (10th Cir. 2020). We have not applied this principle to a failure-to-accommodate claim under 29 C.F.R. § 1630.2(o)(1)(iii). At first glance, the shoe does not seem to fit if the benefit or privilege of employment at issue is not directly job-related.

The judgment of the district court is affirmed.

_____

-13-

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

May 19, 2023

Mr. John W. Griffin Jr.
MAREK & GRIFFIN
203 N. Liberty Street
Victoria, TX  77901

RE:  22-1881  Perry Hopman v. Union Pacific Railroad

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

CRJ

Enclosure(s)

cc:   Mr. Tyler S. Badgley
      Mr. William A. Brasher
      Ms. Katherine L. Butler
      Mr. Robert J. Carty Jr.
      Ms. Tammy H. Downs
      Mr. Torriano N. Garland
      Mr. Paul R. Harris
      Mr. Anthony R. Jadick
      Mr. Bryan Michael Killian
      Ms. Kathryn D. Kirmayer
      Mr. Brian Andrew Kulp
      Ms. Stephanie A. Maloney

Mr. Michael H. McGinley
Mr. Michael Neuerburg
Mr. Gregory G. Paul
Ms. Amanda Leigh Salz
Mr. Daniel Saphire
Ms. Linda Cooper Schoonmaker
Ms. Stephanie Schuster

District Court/Agency Case Number(s):   4:18-cv-00074-KGB

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

May 19, 2023

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE: 22-1881 Perry Hopman v. Union Pacific Railroad

Dear Sir or Madam:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellant and appeared on the appellant's brief, was John W. Griffin, Jr., of Victoria, TX. The following attorney(s) also appeared on the appellant's brief;  Katherine L. Butler, of Houston, TX.,  Michael Neuerburg, of Cedar Rapids, IA.

     Counsel who presented argument on behalf of the appellee and appeared on the appellee's brief, was Stephanie Schuster, of Washington, DC. The following attorney(s) also appeared on the appellee's brief;  Amanda Leigh Salz, of Washington, DC.,  Bryan Michael Killian, of Washington, DC.,  Linda Cooper Schoonmaker, of Houston, TX.

     Counsel who appeared on the amicus brief of The Association of American Railroads, was William A. Brasher, of Saint Louis, MO.,  Kathryn D. Kirmayer, of Washington, DC.,  Daniel Saphire, of Washington, DC.

     Counsel who appeared on the amicus brief of The Chamber of Commerce of the United States of America was Stephanie A. Maloney, of Washington, DC.,  Tyler S. Badgley, of Washington, DC.,  Michael H. McGinley, of Philadelphia, PA.,  Brian Andrew Kulp, of Philadelphia, PA.,  Anthony R. Jadick, of Philadelphia, PA.

     The judge who heard the case in the district court was Honorable Kristine G. Baker.

     If you have any questions concerning this case, please call this office.

                                         Michael E. Gans
                                         Clerk of Court

CRJ

Enclosure(s)

cc: MO Lawyers Weekly

District Court/Agency Case Number(s): 4:18-cv-00074-KGB

# Forrest Dunn

| | |
|---|---|
| **From:** | ca08ml_cmecf_Notify@ca8.uscourts.gov |
| **Sent:** | Friday, May 19, 2023 10:00 AM |
| **Subject:** | 22-1881 Perry Hopman v. Union Pacific Railroad "signed opinion filed" (4:18-cv-00074-KGB) |

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

## Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 05/19/2023

**Case Name:** Perry Hopman v. Union Pacific Railroad
**Case Number:** 22-1881
**Document(s):** Document(s)

**Docket Text:**
OPINION FILED - THE COURT: Lavenski R. Smith, Roger L. Wollman and James B. Loken AUTHORING JUDGE:James B. Loken (PUBLISHED) [5278815] [22-1881] (Clifford Jackson)

**Notice will be electronically mailed to:**

Mr. William A. Brasher: wbrasher@rhpfirm.com, lbecherer@rhpfirm.com, npetty@rhpfirm.com
Mr. Torriano N. Garland, Senior Counsel: tngarlan@up.com, trpotter@up.com
Mr. Bryan Michael Killian: bryan.killian@morganlewis.com
Mr. Gregory G. Paul: gregpaul@paullaw.com
Ms. Linda Cooper Schoonmaker: lschoonmaker@seyfarth.com, bmaxwell@seyfarth.com, houdocket@seyfarth.com
Ms. Stephanie Schuster: stephanie.schuster@morganlewis.com, ecf-597225d7d7a4@ecf.pacerpro.com, elizabeth.hong@morganlewis.com, wacalendardepartment@morganlewis.com
Ms. Kathryn D. Kirmayer: kkirmayer@aar.org, kbirch@aar.org
Ms. Stephanie A. Maloney: smaloney@uschamber.com
Mr. Robert J. Carty, Jr.: rcarty@nicholsbrar.com
Mr. John W. Griffin, Jr.: jwg@lawmgk.com, becca@lawmgk.com
Ms. Katherine L. Butler: Kathy@butlerharris.com
Mr. Michael Neuerburg: mneuerburg@spmblaw.com, ltaylor@spmblaw.com
Mr. Paul R. Harris: pharris@eeoc.net
Ms. Amanda Leigh Salz: amanda.salz@morganlewis.com, ecf-597225d7d7a4@ecf.pacerpro.com, elizabeth.hong@morganlewis.com, wacalendardepartment@morganlewis.com
Mr. Brian Andrew Kulp: brian.kulp@dechert.com
Mr. Michael H. McGinley: michael.mcginley@dechert.com
Mr. Anthony R. Jadick: anthony.jadick@dechert.com
Mr. Tyler S. Badgley: tbadgley@uschamber.com

Ms. Tammy H. Downs, Clerk of Court: ared_appeals@ared.uscourts.gov
West Publishing: us.coa.8@content.thomsonreuters.com
MO Lawyers Weekly: michaelh@mesjassociates.com, slauck@molawyersmedia.com

**Notice will be mailed to:**

Mr. Daniel Saphire
ASSOCIATION OF AMERICAN RAILROADS
425 Third Street, S.W.
Washington, DC 20024

The following document(s) are associated with this transaction:
**Document Description:** Counsel Opinion Letter
**Original Filename:** /opt/ACECF/live/forms/CliffordRJackson_221881_5278815_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/19/2023] [FileNumber=5278815-1]
[6afb4d6fc9e22ff903c40e7b870745e78f6c19d4ae285555ba46416d6b168470d74a2d122cef92b84904b40cab40675db26
6236432dab9a1f99e9abcb4545aae]]
**Recipients:**

- Mr. Tyler S. Badgley
- Mr. William A. Brasher
- Ms. Katherine L. Butler
- Mr. Robert J. Carty, Jr.
- Ms. Tammy H. Downs, Clerk of Court
- Mr. Torriano N. Garland, Senior Counsel
- Mr. John W. Griffin, Jr.
- Mr. Paul R. Harris
- Mr. Anthony R. Jadick
- Mr. Bryan Michael Killian
- Ms. Kathryn D. Kirmayer
- Mr. Brian Andrew Kulp
- Ms. Stephanie A. Maloney
- Mr. Michael H. McGinley
- Mr. Michael Neuerburg
- Mr. Gregory G. Paul
- Ms. Amanda Leigh Salz
- Mr. Daniel Saphire
- Ms. Linda Cooper Schoonmaker
- Ms. Stephanie Schuster

**Document Description:** Letter To Publishing
**Original Filename:** /opt/ACECF/live/forms/CliffordRJackson_221881_5278815_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/19/2023] [FileNumber=5278815-2]
[c5474998a527f820652698c40f3c6394adca638b3064eab436b2f50705728c863c875f0b501370a7c98bc0be2faddf6286e
d43d63d0535c7e3969805c6d71be7]]
**Recipients:**

- MO Lawyers Weekly
- West Publishing

**Document Description:** Published Opinion
**Original Filename:** 221881P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/19/2023] [FileNumber=5278815-0]
[0a4c0f8a7624c554eb0e2bdf024cc37f41d34bc5eeaa68c7c0ed48298bcd804f66b0471f92db71ad434e39862920cff48eb5
9fc87050e286cf7952446c9dd54d]]

The following information is for the use of court personnel:


**DOCKET ENTRY ID:** 5278815
**RELIEF(S) DOCKETED:**
   for publication
**DOCKET PART(S) ADDED:** 7281351, 7281352, 7281353

3